**RECORD OF PROCEEDINGS**

In the Matter of

ROBERT ALBERT GEORGE, SR.

**PETITION FOR REINSTATEMENT**
Supreme Judicial Court No. BD-2012-050

**TABLE OF CONTENTS**

1.    Docket Sheet

2.    Petition for Reinstatement (5/21/20)

3.    Reinstatement Questionnaire, Part I (5/21/20)

4.    Agency letters (6/15/20)

5.    Bar Counsel's Motion to Continue Reinstatement Hearing
      (6/17/2020)

6.    Petitioner has no objection to continuation motion
      (6/17/2020)

7.    Objection letter from the Clients' Security Board
      (6/18/2020)

8.    Motion for continuation allowed (Bagger, P.)(6/23/2020)

9.    Petitioner's request for rescheduling prehearing conference
      and allowance (Bagger, P.)(6/25/2020)

10.   Amendment to Part I of Reinstatement Petition Questionnaire
      (7/17/2020)

11.   Corrected Amendment to Part 1 of the Reinstatement Petition
      questionnaire (7/20/2020)

12.   Prehearing Order (7/29/2020)

13.   Prehearing Order on Remote Proceedings (7/29/2020)

14.   Hearing dates notice (8/7/2020)

15.   Petitioner's Motion to Extend Deadline for Motions
      regarding opposition of Clients' Security Board (8/7/2020)

ROBERT ALBERT GEORGE, SR.
PETITION FOR REINSTATEMENT
Supreme Judicial Court No. BD-2012-050
Page 2


16.  Extension allowed (Bagger, P.) (8/10/2020)

17.  Petitioner's Motion in Limine and Affidavit of Thomas F.
     Maffei in support of motion (8/20/2020)

18.  Petitioner's Preliminary List of Proposed Witnesses
     (8/20/2020)

19.  Letter from Clients' Security Board withdrawing its
     opposition to petitioner's reinstatement (8/27/2020)

20.  Petitioner's Motion in Limine denied as moot (Bagger,
     P.)(8/30/2020)

21.  Assented-to Motion to Extend Deadline for subpoena
     requests, final witness list, submission of agreed-upon
     exhibits and stipulations (9/11/2020)

22.  Joint Motion of the Parties to Impound Documents
     (10/8/2020)

23.  Ruling – Motion to Impound allowed as per Board Chair
     Jeffrey R. Martin (10/9/2020)

24.  Final Exhibits List
          1.  Petitioner's Questionnaire Answers (Part I) with
              attachments
          2.  Corrected Amendment to Answers to Questionnaire
              (Part I)
          3.  Petitioner's Questionnaire Answers (Part II) with
              attachments (Impounded)
          4.  IRS Extension Approval for 2019 return due Oct
              15, 2020.
          5.  Grand Jury Indictment April 7, 2011
          6.  Jury Verdict June 11, 2012
          7.  Government's Sentencing Memorandum
          8.  Defendant's Sentencing Memorandum
          9.  Transcript of Hearing on Sentencing
          10. US v. Robert A. George  Judgment in Criminal Case
          11. Amended Judgment in  United States v. Robert A.
              George
          12. US v. Robert George, Appellant's Brief First

ROBERT ALBERT GEORGE, SR.
PETITION FOR REINSTATEMENT
Supreme Judicial Court No. BD-2012-050
Page 3

           Circuit August 8, 2013
13.  US v. Robert George, Appellee's Brief First
      Circuit January 8, 2014
14.  US v. Robert A. George, Appellant's Reply Brief
15.  Opinion of First Circuit Court of Appeals,  US v.
      Robert A. George
16.  Petition for Discipline, Nov. 5, 2012
17.  Judgment of Disbarment
18.  Admonition No. 07-08
19.  Ernest S. Abdalah
20.  Mohammad Al-Suqi
21.  Justin T. Aptt
22.  Richard B. (Brad) Bailey
23.  James Beauregard
24.  Antonio M. Bravata
25.  James J. Brennan (Ret.), Chief Probate Officer,
      Quincy District Court
26.  Eric L. Brown, Psy.D.
27.  Michael J. Choi
28.  Donald Cox
29.  David Cuesta, General Manager, Balise Auto Group
30.  John A. Cunha
31.  Neil Doig
32.  Raymond L. Douglas
33.  Daniel P. Fitzgerald
34.  Mark Gannon, Chief Court Officer, Middlesex County
35.  Robert A. George, Jr.
36.  Meghan George Deschamps
37.  Meredith George Wieland
38.  Richard Gutkowski
39.  Peter P. Harrington, Jr.
40.  Francis E. Hartig
41.  Christopher C. Henes
42.  Sam Hyder
43.  Mark and Judy Lambert
44.  Andrew Langley
45.  Robert N. Launie
46.  Timothy Long
47.  Christopher M. Markey
48.  Deborah May-George
49.  Steven A. Meyer
50.  James O'Bara
51.  Francis O'Bryant

ROBERT ALBERT GEORGE, SR.
PETITION FOR REINSTATEMENT
Supreme Judicial Court No. BD-2012-050
Page 4

    52. Gary G. Pelletier
    53. Fr. Joseph F. Purpura
    54. Thomas P. Shamshak, Police Chief (Ret.)
    55. Peter J. Stelzer
    56. Dennis Teehan, Police Chief (Ret.)
    57. Donna and Keith White
    58. 2019 Federal Income Tax Return (Impounded)
    59. 2019 Massachusetts Income Tax Return (Impounded)
    60. Amendment to Part II of Reinstatement
        Questionnaire Part II (Impounded)
    61. Hon. Isaac Borenstein (ret) Letter Robert A.
        George, Sr.
    62. Collection of emails
    63. Copy of check no. 3669
    64. Documents RAG HP002-HP013-Angel Transcript March
        4, 2011
    65. Deposit slip, $9,000
    66. Deposit Slip, $8,000
    67. Form 1040, 2011 Income Tax Return
    68. Schedule E, 2011 Income Tax Return
    69. Form 1120S, 2011 Income Tax Return

25. Hearing Transcript Day 1 (October 20, 2020)

26. Hearing Transcript, Day 2 (October 21, 2020)

27. Order and Notice of Reopened Hearing (12/15/2020)

28. Hearing Transcript, Day 3 (October 23, 2020)

29. Hearing Panel Report (3/23/21)

30. Bar Counsel will not oppose Hearing Panel Report
    (3/31/2021)

31. Hearing Transcript, Day 4, January 22, 2021

32. Vote of the Board of Bar Overseers of April 12, 2021

April 30, 2021

1

Board of Bar Overseers
of the
Supreme Judicial Court

Bar Counsel v. Robert Albert George
File #: BD-2012-050

*Bar Counsel, Petitioner*

Dorothy Anderson, Assistant Bar Counsel
Office of the Bar Counsel
99 High Street, Second Floor
Boston, MA 02110
617-728-8750

Rodney S. Dowell, Bar Counsel
Office of the Bar Counsel
99 High Street, Second Floor
Boston, MA 02110
617-728-8750

*Respondent/Petitioner,* BBO# 189400
Robert Albert George
Robert A. George & Associates, P.C.

The Prudential Center, 111 Huntington Avenue
Boston, Massachusetts 02199

(617) 262-6900
rgeorgelaw@gmail.com

*Counsel,* BBO# 313220
Thomas Francis Maffei
Sherin And Lodgen
101 Federal Street
Boston, Massachusetts 02110

(617)646-2220
tmaffei@sherin.com

|   | Docket Date | Docket | Description |
|---|---|---|---|
| 1 | 5/21/2020 | PREI | Pet. Reinstatement, Q'aire, Affidavit & Fee |
| 2 | 6/8/2020 | LETHC | Letter to Hearing Committee & ptys assigning matter for hrg |
| 3 | 6/15/2020 | HP | Hearing Panel Assigned [Bagger, Hill & LeBlanc] |
| 4 | 6/15/2020 | NTCA | Notices sent-MBA, CSB, MALW, AG, BBA, MAC, Cty Bar |
| 5 | 6/17/2020 | MTOTH | BC's Mt to Continue Hearing |
| 6 | 6/17/2020 | EMR | Email from P's counsel - no objection to BC's Mt to Continue |
| 7 | 6/18/2020 | RFA | Response from Agencies and Organizations - CSB - outstanding claim |
| 8 | 6/23/2020 | MTDEC | BC's Mt to Continue PHC allowed by HP Chair |
| 9 | 6/25/2020 | MTOTH | P's Mt to Continue PHC |
| 10 | 6/25/2020 | MTDEC | P's request to continue PHC allowed by HP Chair |
| 11 | 7/13/2020 | PHCH | Prehearing Conference - 10:00 AM - via video conference |
| 12 | 7/17/2020 | SPECL | Amended Part 1 of Questionnaire and certificate of service |
| 13 | 7/20/2020 | SPECL | Corrected Amended Part 1 Reinstatement Questionnaire |
| 14 | 7/29/2020 | LETBC | Letter to Bar Counsel and Petitioner's Counsel serving PHO, Remote HRG PHO and other information regarding remote hearings |
| 15 | 7/29/2020 | PHORR | Prehearing Order Received |

Board of Bar Overseers
of the
Supreme Judicial Court

Bar Counsel v. Robert Albert George
File #: BD-2012-050

|  | Docket Date | Docket | Description |
|---|---|---|---|
| 16 | 7/29/2020 | PHORR | Remote Hearing Prehearing Order Received |
| 17 | 7/31/2020 | SPECL | Email to MLW forwarding Notice of Public Hearing |
| 18 | 7/31/2020 | SPECL | EM to Boston Hearld forwarding Notice of Public Hearing |
| 19 | 8/4/2020 | PNHLN | Publish Notice of Hearing in Local Newspaper |
| 20 | 8/7/2020 | LETBC | Letter to Bar Counsel and P's counsel confirming hearing dates |
| 21 | 8/7/2020 | MTOTH | P's Mt to Ext Deadline for Motions regarding CSB |
| 22 | 8/10/2020 | MTDEC | P's Req for extension allowed by HP Chair |
| 23 | 8/20/2020 | MTLIM | P's Motion in Limine and Affidavit in support |
| 24 | 8/20/2020 | PROWT | P's Proposed Witness List |
| 25 | 8/27/2020 | RFA | Response from Agencies and Organizations - CSB withdraws opp to P's PREI |
| 26 | 8/30/2020 | MTDEC | R's Mt in Limine Denied as Moot |
| 27 | 9/11/2020 | MEXT | P's assented-to Mt to Ext Deadline for subpoena requests, final witness lists and submission of agreed upon exhibits |
| 28 | 9/14/2020 | MTDEC | P's Mt to Extend Deadlines allowed by HP Chair, Paula Bagger |
| 29 | 10/8/2020 | MTOTH | Joint Mt to Impound |
| 30 | 10/9/2020 | MTDEC | Joint Mt to Impound Documents allowed by Board Chair |
| 31 | 10/13/2020 | FINEX | Final Exhibit List and Exhibits - IMPOUNDED |
| 32 | 10/13/2020 | SPECL | Final Agreed Exhibits - UNIMPOUNDED |
| 33 | 10/13/2020 | SPECL | IMPOUNDED EXHIBIT 3 |
| 34 | 10/13/2020 | SPECL | Impounded Exhibit 58 |
| 35 | 10/13/2020 | SPECL | Impounded Exhibit 59 |
| 36 | 10/19/2020 | SPECL | Replacement of Exhibit 13 |
| 37 | 10/20/2020 | HRGH | Hearing - 10:00 AM - remotely |
| 38 | 10/21/2020 | HRGH | Hearing - 10:00 AM - remotely |
| 39 | 10/23/2020 | HRGH | Hearing - 10:00 AM - remotely |
| 40 | 11/5/2020 | TRREC | Transcript Received by Board-10-21-20 |
| 41 | 11/5/2020 | TRREC | Transcript Received by Board-10-23-20 |
| 42 | 11/16/2020 | TRREC | Transcript Received by Board-10-20-20 |
| 43 | 11/16/2020 | TRS | Transcripts Served-10-20, 21 & 23-20 to BC |
| 44 | 11/17/2020 | TRS | Transcripts Served-to BC & HP |
| 45 | 12/15/2020 | SPECL | Order and Notice of Reopened the Hearing |
| 46 | 1/22/2021 | HRGH | Hearing - 12:00 PM - remotely |
| 47 | 1/22/2021 | SPECL | Exhibits 63-69 admitted at hearing |
| 48 | 1/28/2021 | TRREC | Transcript Received by Board-1-22-21 |

Board of Bar Overseers
of the
Supreme Judicial Court

Bar Counsel v. Robert Albert George
File #: BD-2012-050

|    | Docket Date | Docket | Description |
|----|-------------|--------|-------------|
| 49 | 1/29/2021   | TRS    | Transcript Served to HP & BC - 1-22-21 |
| 50 | 3/23/2021   | HPRPF  | Hearing Panel Report Filed |
| 51 | 3/23/2021   | HPRPS  | Hearing Panel Report Served |
| 52 | 3/24/2021   | LETHP  | Letter to Hearing Panel serving Report |
| 53 | 3/31/2021   | EMBC   | Email from Bar Counsel - not appealing HP Report |
| 54 | 4/12/2021   | BDA    | On BBO Agenda |
| 55 | 4/12/2021   | BRREI  | Board Recommends Reinstatement |
| 56 | 4/21/2021   | VLET   | Letter Serving Vote Sent |

2



Thomas F Maffei
617.646.2220
tfmaffei@sherin.com

May 19, 2020

**VIA ELECTRONIC MAIL AND FIRST CLASS MAIL**

Board Of Bar Overseers
99 High Street #2
Boston, MA  02110

     **Re:**    **Robert A. George, Sr.**
            **Docket No. BD 2012-50**

Dear Sir/Madam:

I enclose for filing in the above-entitled matter the following:

1. A copy of the Petition for Reinstatement on behalf of Robert George, the original of which was filed today with the Supreme Judicial Court for Suffolk County Clerk's office.

2. Four (4) copies of Part I of the Questionnaire completed by Mr. George;

3. Certificate of Service

4. A check in the amount of $500.00.

Copies of the petition and of Parts I and II of the Questionnaire were also served on Dorothy Anderson, First Assistant Bar Counsel.

All of our stationery is printed on 100% PCW recycled paper.

SHERIN AND
LODGEN

Board of Bar Overseers
May 19, 2020
Page - 2 -

Thank you very much for your attention.

Very truly yours,

/s/ Thomas F. Maffei

Thomas F. Maffei

TFM:jv
Enclosure
cc:  Dorothy Anderson, Assistant Bar Counsel (w/enc.)

## COMMONWEALTH OF MASSACHUSETTS

Suffolk S.S.

Supreme Judicial Court
For Suffolk County
Docket No. BD 2012-50

### IN RE: ROBERT A. GEORGE, SR.

---

### PETITION FOR REINSTATEMENT

---

Pursuant to S.J.C. Rule 4:01 §18, Robert A. George, Sr. ("Mr. George") hereby petitions the Court for reinstatement to the bar of the Commonwealth of Massachusetts.

In support of the petition, Mr. George states the following:

1.       Mr. George currently resides in East Dennis, MA 02660.

2.       Mr. George filed an Affidavit of Resignation and, on March 19, 2015, retroactive to June 21, 2012 (the date of Mr. George's temporary suspension), Mr. George was disbarred by order of the Single Justice (Botsford, J.) of the Supreme Judicial Court.  A copy of the Affidavit and the Order of the Court are attached hereto as Exhibits A and B.

3.       Pursuant to S.J.C. Rule 4:01, §18(3), on July 12, 2019, Mr. George petitioned the Court for permission to work as a paralegal at Jackson Lewis, LLP under the supervision of Paul V. Kelly, Esquire.  Bar Counsel assented to the petition and it was allowed by the Single Justice (Cypher, J.) on July 23, 2019.  A copy of the Order is attached hereto as Exhibit C.  On January 31, 2020, a further amended order of the Single Justice (Cypher, J.), additionally with the assent of Bar Counsel, permitted Mr. George to work as a paralegal at an additional law office, Brad Bailey Law Office, LLC under the supervision of R. Bradford Bailey, Esquire.  A copy of the Amended Order is attached hereto as Exhibit D.

00969505.1

4.      Mr. George has complied with the terms and conditions of the order disbarring him from the practice of law in Massachusetts and with the rules applicable to disbarred lawyers.

5.      Mr. George has also complied with the terms and conditions of the orders permitting him to work as a paralegal.

6.      Mr. George has taken and passed the Multi-State Professional Responsibility Examination (MPRE).  A copy of the MPRE score is attached hereto as Exhibit E.

7.      Mr. George was not ordered to, and did not, pay restitution to any client since no client was involved in the misconduct that led to his disbarment nor has Mr. George made any payments to the Client Security Board.

8.      Mr. George was not ordered to post any bond as a condition of his reinstatement.

9.      Mr. George has paid any costs ordered by the Court to defray the costs of the disciplinary process.

10.     Mr. George has filed with the board and served upon Bar Counsel copies of the completed questionnaire and petition required by the rules required by the board.

Dated:  May 19, 2020                          Respectfully submitted,

                                              Robert A. George,
                                              By his attorney,

                                              /s/ Thomas F. Maffei
                                              _____
                                              Thomas F. Maffei (BBO 313220)
                                              Sherin and Lodgen, LLP
                                              101 Federal Street
                                              Boston, Massachusetts 01801
                                              (617) 646 2220

00969505.1

**Certificate of Service**

On this 19th day of May 20220, I hereby certify that I served a copy of this Petition, by electronic mail, on Dorothy Anderson, Esq., First Assistant Bar Counsel for the Commonwealth of Massachusetts.

/s/ Thomas F. Maffei
Thomas F. Maffei

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

AFFIDAVIT OF RESIGNATION SUBMITTED BY
ROBERT ALBERT GEORGE
PURSUANT TO SUPREME JUDICIAL COURT RULE 4:01, § 15

I, Robert Albert George , who was duly admitted to practice in the Commonwealth on December 18, 1980, hereby state that I desire to resign from the practice of law pursuant to S.J.C. Rule 4:01, § 15.

I further aver and attest as follows:

1.   My resignation is freely and voluntarily rendered, I am not being subjected to coercion or duress, and I am fully aware of the implications of submitting my resignation. I understand that, by submitting this affidavit of resignation, I have waived evidentiary proceedings before a hearing committee, the Board of Bar Overseers, and the Supreme Judicial Court; my name will be stricken from the roll of attorneys; my resignation or disbarment will be made public and will be reported to courts and disciplinary authorities in this and other jurisdictions; a summary of the proceedings, including the identity of the lawyer and the factual and legal basis for the sanction, will be published by the Board of Bar Overseers, sent to media outlets, and posted on the Board's website; I will not be eligible to apply for reinstatement before eight years have passed from the effective date of the judgment of resignation or disbarment; and I may never be reinstated to the practice of law in the Commonwealth.

2.   I am aware that there is presently pending an investigation and proceedings into allegations that I have been guilty of misconduct. The nature of this misconduct is set forth in Petition for Discipline, attached hereto and incorporated herein as Exhibit One.

3.   I do not wish to contest any bar discipline now pending, and I understand that a judgment for my disbarment would likely result if the matters were litigated.

4.   I acknowledge freely and voluntarily that I was convicted of assisting an individual in money laundering who was a former client. I agree not to contest either the facts set forth in the Petition for Discipline or that my conduct violated Mass. R. Prof. C. 1.2(d) and 8.4(a), (b), (c), and (h). My agreement not to contest the facts or the violations

extends to this or any other bar discipline in this Commonwealth or in any other jurisdiction, to any reinstatement proceeding in this Commonwealth or in any other jurisdiction, and to any admission proceeding in any jurisdiction.

5. I acknowledge that Bar Counsel will recommend that the affidavit of resignation ~~be accepted and that an order of disbarment enter~~ and that the effective date of the resignation or disbarment be retroactive to June 21, 2012, the date of my temporary suspension. I understand that I may also make recommendations regarding these matters but that neither the Board of Bar Overseers nor the Supreme Judicial Court is bound to adopt such recommendations or my resignation, that the Board of Bar Overseers may recommend my disbarment, and that the Supreme Judicial Court may disbar me without any further proceedings.

6. I understand and acknowledge that I have the right to be represented by counsel in these proceedings, and I acknowledge that I am represented by counsel in these proceedings.

7. I understand and acknowledge that the Bar Counsel has made no representations or promises to me whatsoever regarding the effects of executing this affidavit other than what is stated in this affidavit.

8. I understand and acknowledge that there have been no representations or promises made to me regarding any present or future criminal or civil proceedings against me or as to the effect of this affidavit on my privilege against self-incrimination.

9. I am not now suffering from any physical disability or condition which would impair my understanding of the allegations and proceeding against me, the voluntariness of this action, or my full understanding of the consequences of the execution of this affidavit.

10.     I am currently admitted to practice before the following courts and tribunals: Massachusetts.

11. I filed my affidavit of compliance as required by the order of temporary suspension on July 13, 2012.

I hereby request that I be permitted to resign from the practice of law. I understand that the affidavit of resignation and its attachment will not be impounded.

2

Signed and sworn to under the penalties of perjury this _9th_ day of

_January_ ,~~2014~~ 2015.

Robert Albert George

3

# EXHIBIT B



# The Commonwealth of Massachusetts

## SUPREME JUDICIAL COURT
### FOR SUFFOLK COUNTY
### JOHN ADAMS COURTHOUSE
ONE PEMBERTON SQUARE, SUITE 1300
BOSTON, MASSACHUSETTS 02108-1707
WWW.SJCCOUNTYCLERK.COM

**MAURA S. DOYLE**
CLERK

CASE INFORMATION (617) 557-1100
FACSIMILE (617) 557-1117

ATTORNEY SERVICES (617) 557-1050
FACSIMILE (617) 557-1055

March 19, 2015

Robert A. George
c/o Thomas J. Butters, Esq
699 Boylston Street - 12th fl.
Boston, MA 02116

. RE:  No. BD-2012-050

IN RE: Robert A. George

### NOTICE OF DOCKET ENTRY

You are hereby notified that on March 19, 2015, the following was entered onto the docket of the above referenced case:

Judgment of Disbarment, effective retroactive to June 21, 2012 the date of his temporary suspension, and Affidavit of Resignation accepted. (Botsford, J.).

Maura S. Doyle, Clerk

To:  Constance Vecchione, Bar Counsel
     Michael Fredrickson, Board Counsel
     Thomas J. Butters, Esquire
     Robert A. George

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
NO:  BD-2012-050

---

IN RE: Robert Albert George

### JUDGMENT OF DISBARMENT

This matter came before the Court, Botsford, J., on an
Affidavit of Resignation submitted by Robert Albert George pursuant
to S.J.C. Rule 4:01, § 15, a letter from assistant bar counsel to
general counsel of the Board of Bar Overseers (Board) dated
January 30, 2015, requesting a recommendation from the Board that
the Supreme Judicial Court accept Robert Albert George's affidavit of
resignation and that a judgment of disbarment enter, effective
June 21, 2012, and the Recommendation and Vote of the Board filed on
March 12, 2015.

Upon consideration thereof, it is ORDERED and ADJUDGED that:

The Affidavit of Resignation be accepted and ROBERT ALBERT
GEORGE is hereby disbarred from the practice of law in the
Commonwealth retroactive to June 21, 2012, the date of his

temporary suspension and the lawyer's name is forthwith stricken from

the Roll of Attorneys.

By the Court, (Botsford, J.)

_____
Assistant Clerk

Entered: March 19, 2015

## IN RE:  ROBERT ALBERT GEORGE

### NO. BD-2012-050

**S.J.C. Judgment of Disbarment entered by Justice Botsford on March 19, 2015.[1]**

### SUMMARY[2]

On June 8, 2012, Robert Albert George, the respondent, was convicted after trial by jury in the United States District Court for the District of Massachusetts of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), five counts of money laundering in violation of 18 U.S.C. § 1956(a)(3), and structuring to evade reporting requirement in violation of 31 U.S.C. § 5324.  The respondent was temporarily suspended from the practice of law pending sentencing on June 21, 2012.  On October 31, 2012, the respondent was sentenced to a term of forty-two months of imprisonment on each count, to be served concurrently; twelve months of supervised release on each count, to be served concurrently; and a fine of $12,500, consisting of $2,000 on counts one through six and $500 on count seven.

On November 5, 2012, bar counsel filed with the Board of Bar Overseers a petition for discipline.  Further proceedings were deferred pending the respondent's appeal of his conviction, which was affirmed by the United States Court of Appeals For the First Circuit on July 30, 2014.  On January 30, 2015, the respondent submitted to the board an affidavit of resignation in which he acknowledged the conviction and that he was convicted of assisting an individual in money laundering who was a former client.

On February 23, 2015, the board voted to recommend to the Court that the respondent's resignation be accepted and that he be disbarred.  On March 19, 2015, the Supreme Judicial Court for Suffolk County (Botsford, J.) so ordered, with the disbarment retroactive to June 21, 2012, the date of the respondent's temporary suspension.

---

[1] The complete Order of the Court is available by contacting the Clerk of the Supreme Judicial Court for Suffolk County.

[2] Compiled by the Board of Bar Overseers based on the record filed with the Supreme Judicial Court.

# EXHIBIT C





# The Commonwealth of Massachusetts

## SUPREME JUDICIAL COURT

### FOR SUFFOLK COUNTY

### JOHN ADAMS COURTHOUSE

ONE PEMBERTON SQUARE, SUITE 1300
BOSTON, MASSACHUSETTS 02108-1707
WWW.SJCCOUNTYCLERK.COM

CASE INFORMATION (617) 557-1100
FACSIMILE (617) 557-1117

ATTORNEY SERVICES (617) 557-1050
FACSIMILE (617) 557-1055

MAURA S. DOYLE
CLERK

July 23, 2019

Thomas F. Maffei, Esquire
Sherin & Lodgen, LLP
101 Federal Street
Boston, MA 02110

. RE:  No. BD-2012-050

IN RE: ROBERT A. GEORGE

NOTICE OF DOCKET ENTRY

You are hereby notified that on July 23, 2019, the following was
entered onto the docket of the above referenced case:

ORDER Allowing Employment as a Paralegal, as on file. (Cypher, J.)

Maura S. Doyle, Clerk

To:  Dorothy Anderson, Acting Bar Counsel
     Joseph S. Berman, Board Counsel
     Thomas F. Maffei, Esquire
     Robert A. George, Sr.
     Paul V. Kelly

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                           SUPREME JUDICIAL COURT
                                       FOR SUFFOLK COUNTY
                                       No:  BD-2012-050

### IN RE: ROBERT A. GEORGE

### ORDER ALLOWING EMPLOYMENT AS A PARALEGAL

This matter came before the Court, Cypher, J., on the lawyer's motion to engage in employment as a paralegal pursuant to S.J.C. Rule 4:01, §18(3), along with the affidavit of Attorney Paul V. Kelly filed on July 12, 2019.  On July 17, 2019, acting bar counsel filed her response assenting to the motion.

Upon consideration thereof, it is ORDERED that the motion be, and the same hereby is, allowed subject to the following conditions and limitations:

1.  Robert A. George is authorized to engage in paralegal work for Attorney Paul V. Kelly, Jackson Lewis, 75 Park Plaza, 4th floor, Boston, MA 02116.  Attorney Kelly is authorized to employ Robert A. George as a paralegal.  No other lawyer may employ Robert A. George in any capacity without the permission of this Court.

2.  Attorney Kelly will personally supervise Robert A. George's employment as a paralegal.

3.  Robert A. George will have no direct communication or contact with clients without Attorney Kelly, or another lawyer

within the Practice Groups present. The employing lawyer will tell the clients that Robert A. George is not a lawyer and will disclose his disciplinary status.

4.   Robert A. George will have no access to, and will not handle, any client funds, or funds belonging to the firm.

5.   Robert A. George will perform general duties expected of a paralegal, with an emphasis on legal research, review of documents, and the drafting of legal memoranda, along with the interviewing of witnesses and participating in investigations.

6.   Robert A. George will work as a paralegal for Attorney Kelly approximately eight (8) to twelve (12) hours per week.

7.   If Robert A. George should accompany Attorney Kelly, or another lawyer in Attorney Kelly's firm to court, Mr. George shall attend only as an observer and will not sit within the bar enclosure.

8.   Attorney Kelly will promptly notify the Office of Bar Counsel of any violations of the Massachusetts Rules of Professional Conduct by Robert A. George and if the employment is terminated, the reasons for the termination.

By the Court, (Cypher, J.)

Assistant Clerk

Entered:   July 23, 2019

# EXHIBIT D

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                SUPREME JUDICIAL COURT
                                            FOR SUFFOLK COUNTY
                                            No:  BD-2012-050

IN RE: ROBERT A. GEORGE

ORDER AMENDING THE JULY 23, 2019
ORDER ALLOWING EMPLOYMENT AS A PARALEGAL

This matter came before the Court, Cypher, J., on the lawyer's assented to motion to amend this Court's July 23, 2019 Order Allowing Employment as a Paralegal.  The motion seeks to amend the Order by permitting Robert A. George to engage in paralegal work for Brad Bailey Law, LLC, under the direct supervision of Attorney R. Bradford Bailey, while continuing to work as a paralegal for Attorney Paul V. Kelly, of Jackson Lewis, PC.

Upon consideration thereof, it is ORDERED that the motion be, and the the same hereby is, allowed.  The July 23, 2019 Order shall be amended as follows:

Robert A. George shall be allowed to engage in paralegal work for Attorney R. Bradford Bailey, Brad Bailey Law, LLC, 44 School Street, Ste 1000B, Boston, Massachusetts 02108, and shall continue to work as a paralegal for Attorney Paul V. Kelly.  No other

lawyers may employ Robert A. George in any capacity without permission of this Court.

It is FURTHER ORDERED that the conditions and limitations set forth in the July 23, 2019 Order shall remain in effect. Attorney Kelly and Attorney Bailey, as well as Robert A. George shall abide by the conditions and limitations of the July 23, 2019 Order Allowing Employment as a Paralegal.

The supervising attorneys may file a motion with this court requesting any further modification to the Order.

By the Court, (Cypher, J.)

Assistant Clerk

Entered: January 31, 2020

# EXHIBIT E

## MPRE Score

Name: ROBERT GEORGE
NCBE Number: N10369436
Date of Birth: ██████████

Your score on the Multistate Professional Responsibility Examination (MPRE) administered on 11/04/2017 is as follows:

Scaled Score: 92

The score shown above has been reported to MASSACHUSETTS as you requested when you registered for the MPRE.

**Your MPRE score will be available on your NCBE account only until the next MPRE test date. If you want to obtain your score after that, you will need to request a score transcript, and pay the required fee. Therefore, we recommend that you save this page and/or print it for your records.**

Each jurisdiction determines its own passing score on the MPRE. You may find a jurisdiction's passing score, as well as contact information for its bar admission agency, by selecting the jurisdiction from the interactive map. Any questions about admission requirements pertaining to MPRE scores should be directed to the bar admission agency in the jurisdiction to which you are applying.

The MPRE scaled score is a standard score. Standard scaled scores range from 50 (low) to 150 (high).

**MPRE Score Services: All MPRE score services listed below must be requested under the Score Services tab or from the File Cabinet of your NCBE account.**

- MPRE Score Report: If you would like to have your MPRE score sent to another jurisdiction, you must submit a request to NCBE for a score report. Score reports are sent to jurisdictions by secure transfer.
- MPRE Score Verification: If you would like to have the scoring of your MPRE answer sheet rechecked by hand, you must request a score verification. **Score verification requests must be submitted to NCBE within two months of the original test date.**
  Note: See link in File Cabinet to request a MPRE Score Verification. This link is only visible when the service is available.
- MPRE Unofficial Score Transcript: If you would like a replacement copy of your MPRE score after it is no longer available on this page, you must submit a request to NCBE for an MPRE Unofficial Score Transcript. The transcript will include all the MPRE scores you earned from 1999 to the present. All scores on the MPRE Unofficial Score Transcript are duplicative of score information provided following the exam. MPRE Unofficial Score Transcripts will be available in the File Cabinet of your NCBE account, and are not sent by mail.

**3**

COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

_____

In Re Robert A. George. Sr.                    In re Application for
                                               Reinstatement as an
                                               Attorney at Law
                                               S.J.C. No. 2012-050

_____

REINSTATEMENT QUESTIONNAIRE PART I

1.      Personal Information

A.      Full Name:

        Answer:  Robert A. George, Sr.

B.      Current Mailing Address

        Answer:  P.O. Box 1477
        South Dennis, Massachusetts 02660

C.      Telephone Number(s):

        Answer:  617-438-5669

D.      E-Mail Address:

        Answer:  rgeorgesenior@gmail.com

2.      Professional Status

A.      List each jurisdiction, court, and tribunal to which you have been
        admitted to practice with the dates of each admission. State your
        current status in each jurisdiction listed and state whether or not the
        jurisdiction was advised of the disciplinary action or transfer to
        disability inactive status ordered by the Supreme Judicial Court for the
        Commonwealth of Massachusetts.

        Answer:  Massachusetts Bar, December 1980
        Disbarred 6/21/12

        United States District Court for Massachusetts
        Disbarred

1

United States Court of Appeals for First Circuit
Disbarred

United States Supreme Court Bar
Disbarred

A.    Describe the misconduct that led to your suspension, disbarment, or
resignation from the practice of law.  If you were transferred to disability inactive
status, describe the physical or mental disability which led to your transfer to
disability inactive status.  Attach to this Questionnaire a copy of the order of
disbarment, suspension, acceptance of resignation, or transfer to disability
inactive status entered by the Supreme Judicial Court together with the opinion of
the Court or the summary published by the Board of Bar Overseers.

Answer:  I was convicted in federal court in Boston of assisting a
former client in laundering illegally-gotten money in violation of
either 18 U.S.C. §1956 and/or §1957, all in violation of 18 U.S.C.
§1956(h) and 18 U.S.C. §1956(a) (3) (C).  On October 31, 2012, the
District Court sentenced me to a term of 42 months' imprisonment.
There was no restitution ordered as there were no victims involved,
but I paid a court-ordered fine in the amount of $13,200.00.  My
conviction was affirmed by the United States Court of Appeals for the
First Circuit on July 30, 2014.  United States v. George, 761 F. 3d. 42
(2014). I returned directly home from the Bureau of Prisons on
October 6, 2015 and successfully finished probation on January 29,
2017.

B.    Attach to this Questionnaire a copy of all orders of reprimand,
suspension, disbarment, acceptance of resignation, or transfer to disability
inactive status entered by any other jurisdiction or tribunal together with the
published opinion or summary.

Answer:  In addition to the Commonwealth of Massachusetts, the
United States District Court for Massachusetts and the United
States Court of Appeals disbarred me.

Copies of my Resignation, Compliance Affidavit, and the Order
disbarring me are attached as Exhibits A, B and C, respectively.

Prior to my disbarment, on October 5, 2005, I received an admonition from the
Board of Bar Overseers as a result of my neglect of a medical malpractice matter.

A copy of the admonition is attached hereto as Exhibit D.

C.    If the sanction was imposed following the conviction of a crime, attach a copy
of the judgment of conviction.  Provide the name and address of your probation or parole

2

officer, if any.  If you have been discharged from probation or parole, attach the order or
certificate of   release.

> Answer:   Frederick Lawton
> United States Probation Officer
> 104 Dean Street
> Suite 102
> Taunton, MA 02780-2714
> 508-828-5072

Probation discharged on or about January 29, 2017.

Judgment of Conviction and Probation Discharge attached as
Exhibits E and F, respectively.

### 3.  Conduct since sanction imposed

*Unless otherwise specified, this section pertains to conduct during
the period of disbarment, suspension, resignation or disability
inactive status.*

A.   Describe in detail your occupation or employment and provide the
name and address of each employer, together with the name of each of
your immediate supervisor(s), a description of each employment and
the dates of each, and the reason(s) for leaving;

> Answer:   Central Motors, Inc.
> 56 Providence Highway
> Norwood, Massachusetts 02062
> December 2017 to February 2020
> Business Manager
>
> This management position had many responsibilities, including,
> but not limited to, dealing with customers, handling their personal
> information, building and assessing their credit profiles,
> negotiating with financial institutions, advocating product sales,
> and preparing error-free paperwork necessary for tax, insurance,
> registration, and maintaining compliance and ethics standards,
> tracking inventory, and processing clear ownership.  It was a high-
> level management position in this five-dealership group.  My
> supervisors were Peter Catanese II (Owner/principal) and Justin
> Aptt (Finance Director).  I left this employment because of the
> long-distance commute and my promotion to a higher-level
> position at another dealership group.

3

Balise Motor Sales Company, Inc.
122 Doty Circle
West Springfield, MA 01089
February 2020 to present
Finance Director

I am presently employed at Balise Motor Sales Company, a third-generation family-owned company founded in 1919, comprised of 24 new and pre-owned car dealerships, two credit-assisting pre-owned car outlets, four collision repair centers, and three car washes. The Balise Corporation is one of the largest automotive dealers in New England and in the United States. My responsibilities include discussing vehicle financing and protection options for customers, providing a thorough explanation of aftermarket products, extended warranties, manufacturer and service procedures, and dealership policies. I am charged with maintaining an understanding and compliance with federal, state and local regulations that affect new and used vehicles and the finance department. I maintain good working relationships to secure competitive interest rates and financing programs. I accurately process financing and leasing deals and secure approval through financial sources and the proper federal, state and corporate channels. My supervisor is David Cuesta (General Manager).

1. If self-employed, name and address of each business or occupation, together with a description of each such business or occupation and the dates of each;

   Answer:      None.

B.   List and describe all charitable endeavors, community work, and other activities in which you have engaged which you consider relevant to your current moral character and fitness to practice law.

   Answer:      Brewster Ladies Library

   I shelved and organized returned books, pulled together deliveries for housebound patrons, and assisted in the relocation of thousands of volumes for book sales and for book donations to schools and communities.

   Habitats for Humanity

   I assisted at the construction site for five new affordable homes located on Paul Hush Way in Brewster, Massachusetts.

4

Family Food Pantry of Cape Cod

I lead a weekly warehouse crew which physically unloads tons of food deliveries distributed by the Greater Boston Food Bank. Each month four tractor trailer loads of food are brought to the Pantry and distributed to the various pantries across the Cape. As the cross-dock facility for the 30 pantries/soup kitchens on the Cape and Islands, the Pantry serves over 9,300 clients and distributes over 1.5 million meals and over 30 tons of gently used clothing. I have also run the mobile food pantry programs in Chatham, Brewster, and Provincetown.

Cape Cod Military Support Foundation

I have assisted in food, toy, and clothing drives during their outreach programs for this group, which is responsible for the welfare of Cape Cod Military Support Foundation Inc., provides programs and services that support the more than five thousand military service members and families of U.S. Air Force, U.S. Air National Guard, U.S. Coast Guard, U.S. Army and U.S. Army National Guard and their families who are assigned to the Joint Base Cape Cod, and US Coast Guard Sector Southeastern New England Woods Hole.

Community Development Corporation of Boston

I have assisted this organization through online real estate research and planning for their CDL program for inner city women. This group seeks to partner with other non-profit corporations to build, manage, and lease both affordable and workforce housing in Boston. The CDC is an investor in the Melnea Partners project on Melnea Cass Boulevard in Roxbury, as well in potential acquisitions in Dorchester, Roxbury, and the South End neighborhood of Boston.

Cape Cod Literacy Foundation

I have been certified as a Citizenship, High School Equivalency and English as a Second Language Volunteer Tutor by the Cape Cod Literacy Council and the Commonwealth Campaign.

Francis O'Bryant Mentorship Program

I have also worked with this Dorchester-based mentorship program, which aims to improve the quality of life of young men within its inner-city communities. I have assisted with planning for programs such as its Men's Think Tank, Fathers Forums, Sports Camps, Scholarship, Life Skills, Goal Setting, Career Exploration and Economic Empowerment classes.

C.    State whether any charges, formal or informal, of fraud, malpractice, or errors or omissions were made, or claimed, against you.  For each such charge or claim, state the date it was made, the name and current address of the claimant(s), the substance of the claims or charge, the forum where the charges are being or were considered, if any, and its current status.

Answer:    Patricia Donahue v. Sloane and Walsh, LLP and
Robert A. George
Suffolk/Plymouth Superior Courts
No.1484CV03233, No.1483CV00601
Claim of Legal Malpractice.

Patricia Donahue
33 High Pines Drive
Kingston, MA 02364

I referred a wrongful death case to the law firm of Sloane and Walsh, LLP.  The plaintiff's husband was shot and killed by James "Whitey" Bulger as he was driving someone whom Bulger had targeted.  In a split decision, the Court of Appeals for the First Circuit reversed a substantial award in favor of the widow and her family.  Donahue v. United States, 634 F.3d 615 (1st Cir. 2011) on the grounds that the widow knew or should have known of the government involvement with Mr. Bulger.  The deceased widow then brought a malpractice action against Sloane & Walsh and me as a result of dismissal, alleging that we were negligent in connection with the statute of limitations.  Sloane and Walsh settled its case on September 3, 2015; my case was mediated, settled and dismissed on September 17, 2017.

Kevin Perry v. Robert A. George
Suffolk Superior Court, No. 0584CV02882
Claim of Legal Malpractice.

I was defended by Morrison Mahoney LLP, who was retained by my insurer. I had initially represented Perry in a federal drug prosecution before withdrawing as his counsel in April 2003.  He was subsequently represented by counsel and was convicted in 2005.  After he brought this case against me, he was convicted again of drug trafficking and is presently serving a 14-year federal service.  In his malpractice case against me, he claimed that I had inadequately represented him.  His claim against me was that I had inadequately represented him.  After I represented him, he was convicted twice more and is presently serving a 14-year federal sentence.  The case against me was frivolous and was dismissed on January 25, 2008.

6

Kevin A. Perry, Jr.
Number 24521-038
FMC Devens
42 Patton Road
Ayer, MA 01432

> Beverly Plante v Robert A. George
> Suffolk Superior Court, No. 9884CV05205
> Claim of Legal Malpractice.

I defended this case pro se.  Beverly Plante was a Sister of Mercy from the
Diocese of Fall River.  I represented her in her claim that she had been wrongfully
terminated as the Associate Superintendent of Schools for the Fall River Diocese.
I terminated the representation because of difficulties with her and her insistence
that I take certain actions that I found troubling. I had taken her case at the request
of a friend. The case was dismissed on June 13, 2002.

Michaelinda Plante
Sisters of Mercy
582 Walnut Street
Fall River, MA 02720

> Kingsley v O'Neil v. Robert A. George, et al
> Suffolk Superior Court, No. 9984CV00961
> Claim of Legal Malpractice.

I was represented by Edward Hinchey, Sloane & Walsh, LLP. This case arose of a
bicycle accident case, which I referred to Richard Neumeier, who handled the
personal injury case.  My memory of Kingsley's claim is that he claimed that I
should have tried his case.  The case was tried and a jury found in my favor on
May 11, 2004.

Mr. Lawrence Kingsley
PO Box 391731
Cambridge, MA 02139

D.     List all claims paid by the Clients' Security Board as restitution on your account.
       As to each claim, list the name of the claimant, the CSB docket number, the
       amount of the award, the date of the award, and the date of your reimbursement to
       the Clients' Security Board. This information may be obtained by calling the
       Clients' Security Board at (617) 728-8700.

       <u>Answer:</u>        My misconduct did not result in any financial harm to any person.
                             No claims were filed.

7

E.  Describe all financial or other actions taken by you or on your behalf
to make restitution or provide other appropriate compensation or
payment to persons injured by your professional misconduct.  If you
have not made restitution, compensation, or payment, please set forth
your reasons for not doing so.

Answer:  My misconduct did not result in any financial harm to any person.
No restitution was involved. There were no victims.  No clients
were involved.

F.  Give the date(s) you took the MPRE and attach a certification that you
obtained a passing score to this Questionnaire.

Answer:  November 4, 2017.
Passed.

MPRE certification attached as Exhibit G.

G.  List all courses taken by you to acquire or maintain learning in the law
and knowledge of your ethical obligations.  As to each, list the name of the
course, the school or program sponsoring the course, the date or dates of
attendance, and, if applicable, the grade you received in the course.  Please attach
to the Questionnaire certificates of attendance.

Answer:  I have taken the following courses, among others, before and since
my release from federal custody.

I completed the curriculum degree requirements for a Master's Degree in
Business Management from California Coast University (Summa Cum Laude, Phi
Beta Phi Honors Society) (July 2014).

Ethics and Legal Compliance Certification following attendance at JM&A's
week-long Performance Training Institute in Deerfield Beach, Florida (April
2018).

Mediation Certification following a 40-hour classroom training program run by
Boston on Works Incorporated, Boston (September 2018)

Massachusetts Continuing Legal Education Coursework, including Webinars,
through MCLE One Pass (August 2019 to present).

Certificates of completion attached as Exhibit H.

H.  List by name and author, if applicable, all periodicals, newspapers,
and books to which you have regularly subscribed or which you have
read which you believe have assisted you in acquiring or maintaining

8

learning in the law and knowledge of your ethical obligations.

Answer:  I do not have subscriptions to the following authorities but I have remained abreast of developments in the law by free electronic access and the kindness of many attorneys who have an active subscription to Lawyers Weekly. I have been refreshed in my knowledge of criminal law by working as a paralegal.

> Massachusetts Lawyers Weekly.
> ABA Journal.
> Weekly Opinions of the Massachusetts Appeals and Supreme Courts.
> United Supreme Court Opinions.
> United States District Court Opinions.
> Online Sources such as Justia, Evidence Prof.
> Constitutional Law Prof, Fourth Amendment.com, and Gavel to Gavel.

I.   List every civil or administrative action commenced or pending in any jurisdiction in which you were a party or in which you had or claimed an interest, and for each such action list the date on which it was commenced, the case caption, court, and docket number.  Provide a summary of the allegations made in each such action, its final disposition if any, and its current status.  If judgment entered against you, state the amount of the judgment and whether or not you have paid the judgment.

Answer:      None.

### 4.  Criminal, administrative, or investigative proceedings.

(1)   List every matter involving your arrest or prosecution in any jurisdiction for any crime, whether felony or misdemeanor. Identify each charge brought, the disposition of the charge, if any, and its current status.

Answer:      My only arrest and conviction was on March 23, 2011, which is described in Paragraph 2(A).

(2)   State whether or not you have been a target of a Federal or State investigation into alleged criminal conduct and state whether or not you gave testimony or information to any such authority under a grant of immunity.  If so, please identify the authority conducting each investigation; the name, title, and address of the prosecutor conducting each investigation; and the date and the matter in which you testified.

Answer:      The only investigation in which I was a target resulted in my federal prosecution. I have never given testimony or information to any authority under a grant of immunity.

9

(3)     State whether you have made any application for reinstatement or original
        admission as an attorney at law in any jurisdiction, or any application for another
        license requiring proof of good character for its procurement. For each such
        application, please state the date of the application, the name and address of the
        authority to whom it was addressed, whether or not any hearing was held in
        connection with your application, and the disposition thereof.

        Answer:       I explored whether I could apply to the Rhode Island bar
                      notwithstanding my disbarment in Massachusetts. I had practiced
                      in the courts in Rhode Island for many years. After inquiry on my
                      behalf to the Massachusetts Board of Bar Overseers, I determined
                      that my filing an application in Rhode Island would not hinder my
                      eventual application to be readmitted in Massachusetts. On May 1,
                      2017, I filed a motion for a waiver to take the Rhode Island bar
                      examination as an Article II, Rule 1 candidate. I understood at the
                      time that my disbarment in Massachusetts was not a permanent bar
                      to my admission in Rhode Island, but I knew that, if I were to pass
                      the Rhode Island bar examination, I would be required to undergo
                      a rigorous character and fitness inquiry because of the disclosure of
                      my bar status in Massachusetts and my federal convictions. After
                      my application was filed, I was contacted by the clerk, Debra
                      Saunders, of the Rhode Island Supreme Court on June 28, 2017 to
                      discuss my application and the character and fitness issue that it
                      disclosed. I met with the clerk. I was told that the Board would
                      deny my motion for a waiver and that I would not be permitted to
                      sit for the bar examination until I was readmitted in Massachusetts.
                      I appealed on the issue of whether, consistent with the bar rules in
                      effect at the time, the Rhode Island Board of Bar Examiners
                      ("RBBE") was authorized to insist on a certificate of good standing
                      from another jurisdiction *prior* to taking the bar examination. The
                      Supreme Court of Rhode Island affirmed the RBBE's decision.

(4)     List all procedures or inquiries held concerning your standing as a member of
        any profession or organization, or holder of any license or office, which
        involved your censure, removal, suspension, revocation of license, or
        discipline; and as to each such procedure or inquiry, state the dates, facts, and
        the disposition thereof, and the name and address of the authority in
        possession of the record thereof.

        Answer:       None.

### 5. Practice after Reinstatement

A.      Describe your plans for practicing law if you are reinstated. Include
        the nature of the intended practice; the type and volume of cases
        you intend or expect to handle; the field or fields in which you intend

10

to concentrate, if any; whether you intend to be a sole practitioner o
to be associated with others; the intended location of your practice;
your intended procedures for docket control and office management;
and your intended procedures for maintaining client and other trust
funds.

<u>Answer:</u>   I have not made any decisions as to what my practice would be if I
am privileged to be reinstated. My current thinking is that I would
concentrate in criminal and constitutional law since they have been
my areas of practice for my entire career. Since I now reside on
Cape Cod, I likely would have an office on the Cape. I have had a
close professional relationship with attorneys Kelly and Bailey,
who have served as my supervisors pursuant to orders of the Single
Justice. I anticipate that even if my office is located on the Cape, I
would collaborate with them on cases, which would require me to
spend some time in Boston. Prior to my disbarment, I operated my
own office and used the then current systems for docket control,
office management; and handling and accounting for client funds.
I would investigate whether the policies and systems I previously
used are still available and whether they should be updated or
replaced.

B.   Identify by name and address all persons with whom you plan to associate as well
as those on whom you intend to rely as mentors, supervisors, monitors, or
accountants if you are reinstated. Explain how you expect each person so
identified to function or assist you in connection with your practice of law.

<u>Answer:</u>   Attorney Paul Kelly, a partner at Jackson Lewis PC, who is a
former federal prosecutor and now heads the firm's white collar
criminal practice, and attorney R. Bradford Bailey, a former
federal prosecutor, Assistant District Attorney, and Middlesex
County Sheriff, have supervised my recent work as a paralegal. I
had known and worked with both of these fine lawyers for many
years. Both attorneys are willing and able to continue to act in a
supervisory role and as mentors if I am reinstated. I am willing to
accept any suggestions or directions that Bar Counsel may have to
ensure that attorneys Kelly and Bailey perform their supervisory
responsibilities.

C.   Describe the efforts you have undertaken to be covered by professional liability
insurance if you are reinstated and state the results of those efforts.

<u>Answer:</u>   I plan on re-applying for legal malpractice insurance with First
Indemnity Insurance Group, 87 Oxford Street, Lynn, MA 01901
through my former agent Antonio Andretta, if I am reinstated.

D.   List names, address, and telephone numbers of three references, at least two of
     whom are members in good standing of the Massachusetts Bar, who would
     recommend your reinstatement to the Bar of this Commonwealth and who would
     attest to your character and conduct since disbarment or suspension.

     Answer:

     1.   Paul V. Kelly, Esquire
          75 Park Plaza
          4th Floor
          Boston, MA 02116
          P 617-367-0025

     2.   Edward T. Hinchey, Esquire
          Sloane and Walsh, LLP
          One Center Plaza, 8th floor
          Boston, MA 02108
          617-523-6010

     3.   William J. Weishaupt, Esquire
          Chief of Investigations
          Assistant District Attorney
          Ulster County District Attorney's Office
          275 Wall Street
          Kingston, NY 12401
          (845) 340-3280

## 6. Personal Statement

Provide a concise statement of facts to justify your reinstatement to the Bar of this
Commonwealth.

Answer:

On October 31, 2012, minutes before he sentenced me to federal prison,
U.S. District Judge Nathaniel Gorton said the following:

> There are extenuating circumstances, mitigating circumstances,
> forcefully argued by your counsel, for a variance from the guidelines
> sentencing range that otherwise applies in this case, the most important of
> those is the life you have lived, professionally and personally, before
> you so disgracefully and inexplicably fell off the straight and narrow
> path. Those people who are literally and figuratively behind you have
> vouched for your character, and their vouching has been heard.

12

But at the same time that I recognize and acknowledge your professional accomplishments and the good deeds that you have done in former days, I am appalled by the brazenness and stupidity of the flagrant crime that you committed. What were you thinking? The answer is that you weren't thinking. You, who knows better; you, who are trained in the law and took an oath to uphold the law and who knows that the very fabric of our society depends upon all of us living up to the law. That's the tragedy of this case.

Attorneys have to set a higher example, and when they commit crimes and betray their solemn undertaking to uphold the law, they must be punished not only for their criminal acts and deeds but also in order to send the clearest possible message of deterrence to other attorneys. The honor of the entire legal profession demands it, and today my unhappy task is to impose such a sentence.

Judge Gorton spoke those words as I stood before him in the well of the United States District Court almost eight years ago, a place where I had tried cases for years. I had been found guilty of a serious crime by a jury and I accept full responsibility for the conduct which resulted in my conviction. My offenses were money laundering and related offenses and structuring two (2) banking transactions to avoid federal currency laws. I violated my oath as a lawyer and the ethics rules that govern lawyers. My conduct destroyed my reputation, disgraced me, and exposed my family, friends, and supporters to embarrassment.

Since Judge Gorton spoke these words to me not a day has passed that I have not thought about what I had done and its effect on me and those close to me. I have also struggled to understand why I, the son of an Eastern Orthodox priest, a graduate of top schools, a former prosecutor, a good and decent family man, and a longstanding member of the bar who enjoyed an extraordinary reputation, placed himself in such a position where it was all blown away.

After all these years, I am still searching for the "why." I was financially secure then, I had (and still have) a wonderful and supportive family, I helped a lot of persons in need of representation and I had a successful practice. I lost my way and irreparably damaged my family and disappointed my friends. I deserved to be punished severely for my conduct, including my imprisonment and subsequent disbarment.

During the thirty-three months I spent in the Bureau of Prisons and throughout the years since my release in October 2015, I have worked diligently to restore the moral character which, but for my convictions, had characterized my life. I became a model prisoner. I remained closely connected to my family and circle of friends, whose love and support has bolstered me and I have tried to help others. During the four and a half years since I arrived home, I have successfully completed a year of probation, assisted in the care and treatment of

13

my late mother-in-law, and worked for a friend's commercial real estate office in Boston. I also became very involved with community service work, a commitment that took up a great deal of my time.

Over three decades, I represented innumerable people who were criminally accused. It did not matter who they were, what they were charged with, how much money they had, or where they came from. I rarely turned anyone away. I considered myself as someone who was doing a valuable service for people who needed it in the criminal courts. I found fulfillment and joy in putting the government to its burden and standing up to fight for those who were powerless to defend themselves.

I will always have great respect for the justice system because I was raised to know right from wrong. I grew up in West Roxbury, Massachusetts, and enjoyed a wonderful childhood. My mother was a long-time registered nurse, who practiced at the Veterans Medical Center and Deaconess Hospitals in Boston, Massachusetts. My father was an acclaimed Eastern Orthodox priest who served as the pastor at St. George's Orthodox Church in the South End of Boston and later in West Roxbury, Massachusetts. My family life revolved completely around the church.

I was educated in the Boston Public Schools in West Roxbury and Roslindale. I graduated from Boston Latin School with honors in 1973, and thereafter attended Colby College in Waterville, Maine and Northeastern University, graduating from Northeastern University College of Criminal Justice with a Bachelor of Science Degree in Criminal Justice, Summa Cum Laude, in 1977.

I attended Suffolk University Law School and graduated in 1980. Before and after my graduation from law school, I immersed myself in the law. After internships in the Attorney General's Office, the United States Attorney's Office and the Norfolk County District Attorney's Office, I was sworn in as a Norfolk County Assistant District Attorney in December 1980. While a member of now-retired Congressman William Delahunt's staff, I prosecuted cases in the District and Superior Courts, and represented the Commonwealth in the appellate courts as well.

After I entered private practice in 1982, I took on every client, no matter how politically or socially unpopular he or she was. My work contributed to the development of criminal law in Massachusetts. Some of my best-known cases involved court-appointed cases on both the state and federal level. For example, I represented Terrence Taylor in the Tiffany Moore murder case (1989); William Bennett in the Carol Stuart murder case (Commonwealth v. Bennett, 414 Mass. 269 (1993) ; Edward O'Brien (Commonwealth v. O'Brien, 423 Mass. 841 (1996) and Shon McHugh (1993) in homicide cases which changed juvenile law in Massachusetts; Robert Silva, whose criminal appeal expanded and clarified the

definition of perjury (Commonwealth v. Silva, 401 Mass 318 (1987) ; Christopher McCowen, in the so-called Christa Worthington murder case on Cape Cod, the seminal case dealing with racial bias and jury selection (Commonwealth v. McCowen, 458 Mass. 461 (2010) and David and Rebecca Corneau (2002) in the Attleboro Cult homicides. These cases are just a handful of the thousands of criminal matters I handled over my career. Many of these clients were unpopular but they deserved to be well-represented and defended.

My practice was a whirlwind of excitement as I thrived in the hustle and bustle of a busy criminal trial lawyer's life. Yet I always kept my private world separate from my work and I retreated to my home each evening with my wife and three children. It was a haven where, insulated from the rough and tumble of the criminal law, I was safe. Despite my fall, my family was always available and supportive, even at my lowest points, beginning with my arrest and continuing through my incarceration. They remain there for me today and have encouraged me to go back to the practice of law if I am granted a second chance.

I served my sentence for almost three years far from my home. I tried to be a "model" prisoner in federal custody, where I supervised a large culturally-diverse work staff in the compound garage and motor pool. The garage provided jobs, a commissary stipend, and invaluable training to close to a hundred inmates while I was there. While imprisoned, I also studied for and earned a master's degree in business management with highest honors from California Coast University, a nationally university accredited by the Distance Education Accrediting Commission (DEAC), a private non-profit organization and national accreditor of distance education institutions, recognized by the United States Department of Education and the Council for Higher Education Accreditation.

While in custody, I coached athletic teams and re-discovered my love of sports. I also taught weekly classes on Sunday mornings about current events, trends in the legal system, and job-interviewing techniques. I assisted fellow inmates in classroom instruction on a variety of subjects ranging from criminal justice to the economy, understanding institutional policies and procedures and dealing with personal issues at home. I passed this time in a world where race, ethnicity, and traditions were shared and accepted, where I tried my best to leave a positive mark on others. My institutional record was unblemished and, as a result, I earned early release directly home on October 6, 2015. While imprisonment had its challenges, in a strange way, I left the Bureau of Prisons feeling that I accomplished much and had emerged a better person.

After my release, I successfully completed a one-year probationary period during which I fully paid my fines. I also immersed myself in doing good things for others. I work with the Family Food Pantries of Cape Cod, where I supervise the weekly off-loading of tractor-trailer deliveries to the warehouse and operate mobile food pantries in three communities. I assist the Cape Cod Military Support Foundation with their outreach programs and new food pantry programs.

15

I volunteered at the Brewster Ladies Library by stocking shelves, moving books, loading trucks with books being distributed to other communities, and helping to set up their book fairs.  I have consulted for the Community Development Corporation of Boston on their CDL Program and became certified by the Cape Cod Literacy Council as a classroom tutor for their citizenship, reading and writing classes.  I also worked on a construction project for Habitats for Humanity, where the organization constructed six homes on Paul Hush Way in Brewster.  I have also worked with the Francis O'Bryant Mentorship Program in Boston, developing platforms and guidelines for their Life Skills, Road Mapping, Goal Setting, Business Leadership and Sports Programs.

However, because of my conduct, a large part of my financial security disappeared. Thankfully, my three children were grown, educated and successful in their chosen professions.  My wife, a registered nurse, had returned to work as a manager of hospice services for Cape Cod Healthcare, where she is still employed. For more than two years, I was employed at Central Motors Auto Group, where I worked my way up to Business Manager at the Group's flagship dealership.  The Business Manager's position is one of the most important and difficult jobs in the automotive field and carries with it many responsibilities.  Because my work at Central Motors involved handling many financial transactions, the job required a degree of integrity and trust.  I completed an intensive week of training to become certified in F&I Ethics and Legal Compliance before taking on the job in April 2018.

I left Central Motors to work at another large automobile dealership closer to home on Cape Cod.  In February 2020, I became a Business Director for Balise Automotive Group, one of the largest automobile dealerships in the United States. My responsibilities are similar to the ones I had at Central Motors, including having to understand and apply federal, state and local regulations that affect the new and used vehicles and the finance department.  As was the case with Central Motors, my job at Balise requires the utmost integrity and honesty.

Since my incarceration, I have also kept up with my legal learning. As part of my master's degree program, I studied Business Law, Negotiations, International Relations, Financial Management, Leadership, and Management Information Systems.  I regularly read legal publications such as Lawyers Weekly and the ABA Journal and follow legal news in the daily print and electronic media.  I have also completed many of Massachusetts Continuing Legal Education's online programs in ethics, trial practice, office management, criminal and constitutional law and legal trends.

In November 2017, I completed and passed the MPRE Ethics Examination.  I also became certified as a mediator after forty hours of instruction by Mediation Works  Incorporated's (MWI) faculty of full-time professional mediators in September 2018. This training met the requirements outlined in the Massachusetts Confidentiality Statute (MGL c. 233 §23C) and Rule 8(c) (i) of the

16

Massachusetts Supreme Judicial Court's Uniform Rules on Dispute Resolution. Finally, I sought, and was granted, permission to work as a paralegal under two experienced criminal law practitioners, Paul Kelly and R. Bradford Bailey. I am grateful for their support and for their mentorship and guidance.

I wish to share some final thoughts. I realize that my conduct has not only hurt the criminal justice system but also people I have grown up with, studied with, worked with and represented. Above all, a day does not go by without wrangling with the impact of this case on my family. My wife of 38 years has stood by my side. My children, an attorney, a nurse practitioner, and a businessman, have also stood by me. They each enjoy successful careers despite the ordeal that I put them through. I have been blessed by their loyalty and love because they, more than anyone else, know the kind of person I am.

During the better part of the last decade it has been hard to drive by the many courthouses in which I labored for so long. In those buildings, I had many friends, from custodians to judges. I disappointed those good people, and I hope to regain their respect. During my lifetime before my arrest, I tried to be an upstanding citizen, a devoted, faithful and loving husband and father, a loyal and dependable friend, and an ethical attorney dedicated to the best traditions of the legal profession. I am now a disbarred attorney, convicted of serious federal felonies, unable to work in the only profession I have ever known and loved.

Practicing law gave my life meaning. I was passionate about protecting those charged with crimes. Ensuring that their constitutional rights were protected was my mission. That high vocation has been missing from my existence for almost a decade. Losing it has hollowed out part of my soul. I have continued to try to make things right by making myself and my time available to attorneys representing Shawn Drumgold, Timothy White, and Raymond Champagne in their wrongful post-conviction efforts. Since I had been involved in these matters, I was contacted by various lawyers, including lawyers at the Committee for Public Counsel's Innocence Unit, to assist them. All three of them have been freed as a result of post-conviction motions in which I have been involved. Having been part of those trials, my memory of past events, as well as my testimony, has been essential in setting aside those criminal convictions.

I want to do everything I can to try to regain the privilege to practice law and have been focused on that goal since I was released. I will keep trying to become a person to be proud of, one who is measured by good character and how I treat others. I am a different person today than when I was arrested and intend to live a life worthy of consideration and forgiveness.

Thank you for your consideration.

17

I, Robert A. George Senior, being duly sworn, say that all of the information contained in the foregoing Reinstatement Questionnaire is true and correct to the best of my knowledge and that I am aware of my obligation to supplement responses as set forth in the filing and service instructions for the Questionnaire Part I; that I have fully abided by the terms of the order of discipline or disability inactive status; I have not practiced law, identified myself as "Esq." or "Esquire," or otherwise held myself out as an attorney during the term of my disbarment, resignation, suspension, or disability inactive status, except that until April 2019, when I removed it, my former website remained up on the internet but was inactive and fully disclosed my federal convictions and that I was unable to practice law; I have not listed myself as a lawyer on any sign, letterhead or stationery, or in any directory, or in any electronic or computer-accessed media; I have not engaged in paralegal work during the term of my disbarment, resignation, suspension, or disability inactive status; and I have not been employed by a lawyer in any capacity during said term, except as authorized by the Single Justice.

_____
Robert A. George, Senior

Sworn to and subscribed before me this _____ day of April, 2020

_____
Notary Public

My commission expires: _____

18

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

AFFIDAVIT OF RESIGNATION SUBMITTED BY
ROBERT ALBERT GEORGE
PURSUANT TO SUPREME JUDICIAL COURT RULE 4:01, § 15

I, Robert Albert George , who was duly admitted to practice in the Commonwealth on December 18, 1980, hereby state that I desire to resign from the practice of law pursuant to S.J.C. Rule 4:01, § 15.

I further aver and attest as follows:

1.  My resignation is freely and voluntarily rendered, I am not being subjected to coercion or duress, and I am fully aware of the implications of submitting my resignation. I understand that, by submitting this affidavit of resignation, I have waived evidentiary proceedings before a hearing committee, the Board of Bar Overseers, and the Supreme Judicial Court; my name will be stricken from the roll of attorneys; my resignation or disbarment will be made public and will be reported to courts and disciplinary authorities in this and other jurisdictions; a summary of the proceedings, including the identity of the lawyer and the factual and legal basis for the sanction, will be published by the Board of Bar Overseers, sent to media outlets, and posted on the Board's website; I will not be eligible to apply for reinstatement before eight years have passed from the effective date of the judgment of resignation or disbarment; and I may never be reinstated to the practice of law in the Commonwealth.

2.  I am aware that there is presently pending an investigation and proceedings into allegations that I have been guilty of misconduct. The nature of this misconduct is set forth in Petition for Discipline, attached hereto and incorporated herein as Exhibit One.

3.  I do not wish to contest any bar discipline now pending, and I understand that a judgment for my disbarment would likely result if the matters were litigated.

4.  I acknowledge freely and voluntarily that I was convicted of assisting an individual in money laundering who was a former client. I agree not to contest either the facts set forth in the Petition for Discipline or that my conduct violated Mass. R. Prof. C. 1.2(d) and 8.4(a), (b), (c), and (h). My agreement not to contest the facts or the violations

extends to this or any other bar discipline in this Commonwealth or in any other jurisdiction, to any reinstatement proceeding in this Commonwealth or in any other jurisdiction, and to any admission proceeding in any jurisdiction.

5.  I acknowledge that Bar Counsel will recommend that the affidavit of resignation ~~be accepted and that an order of disbarment enter~~ and that the effective date of the resignation or disbarment be retroactive to June 21, 2012, the date of my temporary suspension.  I understand that I may also make recommendations regarding these matters but that neither the Board of Bar Overseers nor the Supreme Judicial Court is bound to adopt such recommendations or my resignation, that the Board of Bar Overseers may recommend my disbarment, and that the Supreme Judicial Court may disbar me without any further proceedings.

6.  I understand and acknowledge that I have the right to be represented by counsel in these proceedings, and I acknowledge that I am represented by counsel in these proceedings.

7.  I understand and acknowledge that the Bar Counsel has made no representations or promises to me whatsoever regarding the effects of executing this affidavit other than what is stated in this affidavit.

8.  I understand and acknowledge that there have been no representations or promises made to me regarding any present or future criminal or civil proceedings against me or as to the effect of this affidavit on my privilege against self-incrimination.

9.  I am not now suffering from any physical disability or condition which would impair my understanding of the allegations and proceeding against me, the voluntariness of this action, or my full understanding of the consequences of the execution of this affidavit.

10.  I am currently admitted to practice before the following courts and tribunals: Massachusetts.

11. I filed my affidavit of compliance as required by the order of temporary suspension on July 13, 2012.

I hereby request that I be permitted to resign from the practice of law.  I understand that the affidavit of resignation and its attachment will not be impounded.

2

Signed and sworn to under the penalties of perjury this _9th_ day of
_January_____ , ~~2014~~ 2015,

Robert Albert George

3

# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

Suffolk, ss.                                                    No. BD-2012-050

```
                                    )
                                    )
In the Matter of                    )
                                    )
Robert Albert George                )
                                    )
```

## AFFIDAVIT OF COMPLIANCE

Pursuant to S.J.C. Rule 4:01, § 17(5), and Section 4.20 of the Rules of the Board of Bar Overseers, I hereby certify in connection with my temporary suspension by Order of the Supreme Judicial Court dated June 21,2012 ("the Order"), as follows:

1.      That I have fully complied with the provisions of the Order of the Supreme Judicial Court relative to temporary suspension, with S.J.C. Rule 4:01, and with the Rules of the Board of Bar Overseers; and

2.      That I have sent notice of my temporary suspension to each person who was my client, ward, heir, or beneficiary as of the entry date of the Order and to each attorney, court, and agency concerned with a case pending as of the entry date of the Order. I have attached hereto a copy of each form of notice, the names and addresses of the clients, wards, heirs, beneficiaries, attorneys, courts and agencies to which notices were sent, and all return receipts or returned mail received up to the date of this affidavits (supplemental affidavits will be filed covering subsequent return receipts and returned mail);

3.      That I have attached hereto:

        (a) a copy of each form of notice, the names and addresses of the clients, wards, heirs, beneficiaries, attorneys, courts and agencies to ·which notices were sent, and all return receipts or returned mail received up to the date of this affidavit (supplemental affidavits will

be filed covering subsequent return receipts and returned mail);

      (b)    a schedule showing the location, title and account number of every bank account designated as an IOLTA, client, trust, or other fiduciary account and of every account in which I hold or held any client, trust, or fiduciary funds on or after the entry date of the Order;

      (c)    a schedule describing the disposition of all client and fiduciary funds in my possession, custody, or control as of the entry date of the Order or thereafter;

      (d)    such proof of the proper distribution of such funds and the closing of such accounts as has been requested by the bar counsel, including copies of checks and other instruments; and

      (e)    a list of all other state, federal and administrative jurisdictions to which I am admitted to practice, whether active or inactive.

    The residence or other street address where communications may hereafter be directed to me is as follows. I understand that this information is public.

Name:    Robert A. George

Address:    111 Huntington Avenue

        Boston, Massachusetts 02199

Telephone:    617-438-5669

Signed and sworn to under the penalties of perjury this 12th day of July 2012.

Robert Albert George

**COMMONWEALTH OF MASSACHUSETTS**
**SUPREME JUDICIAL COURT**
**FOR SUFFOLK COUNTY**

Suffolk, ss.                                              No. BD-2012-050

_____ )
                                          )
**In the Matter of**                 )
                                          )
**Robert Albert George**        )
_____ )

LIST OF NAMES AND ADDRESSES OF THE CLIENTS, WARDS, HEIRS,
BENEFICIARIES, ATTORNEYS, UNREPRESENTED PARTIES, COURTS AND
AGENCIES TO WHICH NOTICES WERE SENT

I.        CLIENTS, WARDS, HEIRS, AND BENEFICIARIES

Gladys Ihenacho
45 Silver Glen Road
Stoughton, Massachusetts 02072

Adam Hart
421 Old Wharf Road
PO Box 9
Dennisport, Massachusetts 02639

Timothy Reardon
11 Captain Murphy's Way
PO Box 1152
Barnstable, Massachusetts 02630

Isao Tanaka
6 Claypit Hill Road
Wayland, Massachusetts 01778

Christopher M McCowen
Souza-Baranowski Correctional Center
P.O. Box 8000
Shirley, MA 01464

Manuel Cachopa
100 Columbus Avenue
Stoughton, Massachusetts 02072

Affidavit of Compliance                        Robert Albert George
                                               S.J.C No. 80-2012-050

Antonio Ledonne
2 Earle Avenue
Medford, Massachusetts 02155

Joseph Giallanella
134 Candlestick Road
North Andover, Massachusetts

George Saad
10 Pandy Lane
Methuen, Massachusetts 01844

Elias Saad
10 Pandy Lane
Methuen, Massachusetts 01844

Matthew Fink
1551 Central Street
Stoughton, Massachusetts 02072

Lindsay Fink
1551 Central Street
Stoughton, Massachusetts 02072

## II.      ATTORNEYS AND UNREPRESENTED PARTIES

Patrick Hanley
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts 02108

Fred Wyshak
United States Attorney's Office
Moakley Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts

Jeffrey Cohen
United States Attorney's Office
Moakley Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts

Affidavit of Compliance                                Robert Albert George
                                                       S.J.C No. 80-2012-050

Mary Murrane
United States Attorney's Office
Moakley Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts

Richard L. Banks, Jr., Prosecuting Counsel
Department of Public Health
Office of the General Counsel
239 Causeway Street, Fourth Floor
Boston, MA  02114

David D. McGowan
Suffolk County District Attorney's Office
1 Bulfinch Place
Number 300
Boston, Massachusetts 02114

Varsha Kukafka
Norfolk County District Attorney's Office
45 Shawmut Road
Canton, Massachusetts 02021

Michael O'Keefe
Barnstable County District Attorney's Office
3231 Main Street
PO Box 455
Barnstable, Massachusetts 02630

III.    COURTS AND AGENCIES

Board of Registration in Nursing
Department of Public Health
239 Causeway Street, Fifth Floor
Boston, Massachusetts  02114

United States District Court
Moakley Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts

Affidavit of Compliance

Robert Albert George
S.J.C No. 80-2012-050

United States Court of Appeals
Moakley Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts

Norfolk Superior Court
650 High Street
Dedham, Massachusetts 02026

Plymouth County Superior Court
72 Belmont Street
Brockton, Massachusetts 02301

Middlesex Superior Court
200 TradeCenter, 1st Floor
Woburn, Massachusetts 01801

Suffolk Superior Court
Three Pemberton Square
Boston, Massachusetts 02108

Appeals Court of the Commonwealth
John Adams Courthouse
One Pemberton Square, Suite 1200
Boston, Massachusetts 02108-1705

Barnstable Superior Court
3195 Main St.
P.O. Box 425
Barnstable, Massachusetts 02630

Brookline District Court
360 Washington Street
Brookline, Massachusetts 02445

Stoughton District Court
1288 Central Street
Stoughton, Massachusetts 02072

Essex Superior Court
J. Michael Ruane Judicial Center
56 Federal Street
Salem, Massachusetts 01970

Affidavit of Compliance

Robert Albert George
S.J.C No. 80-2012-050

## SCHEDULE OF BANK. ACCOUNTS

LOCATION | TITLE | ACCOUNT NUMBER
---|---|---
Bank of America | IOLTA | 511-42494

## SCHEDULE OF DISPOSITION OF CLIENT AND FIDUCIARY FUNDS

N/A

## LIST OF ALL OTHER STATE, FEDERAL AND ADMINISTRATIVE JURISDICTIONS TO WHICH THE LAWYER IS ADMITTED TO PRACTICE

United States District Court
United States Court of Appeals for the First Circuit
United States Supreme Court

# EXHIBIT C



The Commonwealth of Massachusetts

SUPREME JUDICIAL COURT

FOR SUFFOLK COUNTY

JOHN ADAMS COURTHOUSE

ONE PEMBERTON SQUARE, SUITE 1300

BOSTON, MASSACHUSETTS 02108-1707

WWW.SJCCOUNTYCLERK.COM

CASE INFORMATION (617) 557-1100
FACSIMILE (617) 557-1117

ATTORNEY SERVICES (617) 557-1050
FACSIMILE (617) 557-1055

**MAURA S. DOYLE**
CLERK

March 19, 2015

Robert A. George
c/o Thomas J. Butters, Esq
699 Boylston Street - 12th fl.
Boston, MA 02116

. RE:  No. BD-2012-050

IN RE: Robert A. George

NOTICE OF DOCKET ENTRY

You are hereby notified that on March 19, 2015, the following
was entered onto the docket of the above referenced case:

Judgment of Disbarment, effective retroactive to June 21, 2012 the
date of his temporary suspension, and Affidavit of Resignation
accepted. (Botsford, J.).

Maura S. Doyle, Clerk

To:  Constance Vecchione, Bar Counsel
     Michael Fredrickson, Board Counsel
     Thomas J. Butters, Esquire
     Robert A. George

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                           SUPREME JUDICIAL COURT
                                       FOR SUFFOLK COUNTY
                                       NO:  BD-2012-050

---

IN RE: Robert Albert George

### JUDGMENT OF DISBARMENT

This matter came before the Court, Botsford, J., on an
Affidavit of Resignation submitted by Robert Albert George pursuant
to S.J.C. Rule 4:01, § 15, a letter from assistant bar counsel to
general counsel of the Board of Bar Overseers (Board) dated
January 30, 2015, requesting a recommendation from the Board that
the Supreme Judicial Court accept Robert Albert George's affidavit of
resignation and that a judgment of disbarment enter, effective
June 21, 2012, and the Recommendation and Vote of the Board filed on
March 12, 2015.

Upon consideration thereof, it is ORDERED and ADJUDGED that:

The Affidavit of Resignation be accepted and ROBERT ALBERT
GEORGE is hereby disbarred from the practice of law in the
Commonwealth retroactive to June 21, 2012, the date of his

temporary suspension and the lawyer's name is forthwith stricken from the Roll of Attorneys.

By the Court, (Botsford, J.)

Assistant Clerk

Entered: March 19, 2015

### IN RE: ROBERT ALBERT GEORGE

#### NO. BD-2012-050

**S.J.C. Judgment of Disbarment entered by Justice Botsford on March 19, 2015.[1]**

#### SUMMARY[2]

On June 8, 2012, Robert Albert George, the respondent, was convicted after trial by jury in the United States District Court for the District of Massachusetts of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), five counts of money laundering in violation of 18 U.S.C. § 1956(a)(3), and structuring to evade reporting requirement in violation of 31 U.S.C. § 5324. The respondent was temporarily suspended from the practice of law pending sentencing on June 21, 2012. On October 31, 2012, the respondent was sentenced to a term of forty-two months of imprisonment on each count, to be served concurrently; twelve months of supervised release on each count, to be served concurrently; and a fine of $12,500, consisting of $2,000 on counts one through six and $500 on count seven.

On November 5, 2012, bar counsel filed with the Board of Bar Overseers a petition for discipline. Further proceedings were deferred pending the respondent's appeal of his conviction, which was affirmed by the United States Court of Appeals For the First Circuit on July 30, 2014. On January 30, 2015, the respondent submitted to the board an affidavit of resignation in which he acknowledged the conviction and that he was convicted of assisting an individual in money laundering who was a former client.

On February 23, 2015, the board voted to recommend to the Court that the respondent's resignation be accepted and that he be disbarred. On March 19, 2015, the Supreme Judicial Court for Suffolk County (Botsford, J.) so ordered, with the disbarment retroactive to June 21, 2012, the date of the respondent's temporary suspension.

---

[1] The complete Order of the Court is available by contacting the Clerk of the Supreme Judicial Court for Suffolk County.

[2] Compiled by the Board of Bar Overseers based on the record filed with the Supreme Judicial Court.

# EXHIBIT D

resided at the street address selected by the respondent. She maintained a post office box in that town because it was convenient to her employment. The Boston address was in fact the correct one.

In the course of the litigation, the respondent submitted various pleadings and affidavits representing that the debtor had been served. The debtor later learned of the lawsuit and judgment from correspondence sent by the respondent to her, which bore both her (correct) post office address and her (incorrect) street address. Her attorney appeared and filed a motion to vacate the default judgment against her, which was allowed because she was served at an address where she never lived. The entire action was subsequently dismissed because venue was improper.

Given that multiple addresses appeared on both of the search service results and particularly when (according to the respondent) no search linked the debtor to a driver's license, the respondent should have undertaken further investigation before filing suit and making service. He should not have arbitrarily assumed that the debtor lived in the town where he served her simply because she had a post office box there.

By failing to take adequate steps to insure that the defendant was properly served, and by negligently representing to the court on several occasions that the defendant had been properly served, the defendant failed to undertake the preparation reasonably necessary to the representation or to act with reasonable diligence, in violation of Mass. R. Prof. C. 1.1 and 1.3.

The respondent has been a member of the bar since 1981 and has no prior discipline. He received an admonition for the above conduct.

---

## ADMONITION NO. 07-08

**Order (admonition) entered by the Board January 8, 2007.**

### HEARING REPORT

On January 16, 2004, Bar Counsel filed a petition for discipline against the Respondent, Richard Roe. All three counts of the petition alleged some combination of failure to represent a client competently and zealously, failure to withdraw, and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, that is prejudicial to the administration of justice, and that adversely reflects on his fitness to practice law. The Respondent, represented by counsel, filed an answer on February 12, 2004. A hearing was held in this matter before a Hearing Committee on June 14, 16, 30, and July 6, 2004. Fifty-seven exhibits were admitted into evidence and seven witnesses testified at the hearing. On September 8, 2004, the parties filed their proposed findings of fact, conclusions of law and recommendations for discipline.

### I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The Respondent, Richard Roe, was admitted to the Massachusetts bar on December 18, 1980. (Ans. ¶2[1])
2. From 1990 to 1993, the Respondent's law office was located at Main Street, Boston. (Ans. ¶2) About May 1993, the Respondent moved his law office to Front Street, Boston, where it has remained to the present. (Ans. ¶2)
3. John Doe was admitted to the Massachusetts bar on November 19, 1968. (Ans. ¶3) He was disbarred on April 20, 1999, retroactive to September 29, 1995, the date of his temporary suspension. (Doe Tr. II:35-36; Ans. ¶3) From 1991 to 1995, Attorney Doe subleased office space from the Respondent and assisted the Respondent on some cases, but Attorney Doe was not an employee of the Respondent. (Roe Tr. III:89-91, 98-

99; Doe Tr. II:50-52, 149-50)

**Count One - Findings of Fact**

4. On May 14, 1992, Attorney John Smith filed suit in Middlesex Superior Court on behalf of James Jones, in a matter styled *Jones v. MK, et al.* (Ans. ¶5; Ex. 47, Ex. 48) In his suit, Mr. Jones alleged that two Boston area physicians committed medical malpractice when removing nasal polyps in February 1987. (Ans. ¶6; Ex. 47) Mr. Jones also alleged that the doctors' negligence caused a cerebrospinal fluid (CSF) leak and that the doctors had failed to inform him that a CSF leak was a risk when they obtained his consent to perform the surgery. (Ans. ¶6; Ex. 47) He further alleged that, as a result of the malpractice, he sustained brain damage, permanently lost his sense of smell, and sustained damage to other sensory functions. (Ans. ¶6; Ex. 47) Attorney Paul Poe represented the defendants in the lawsuit. (Ans. ¶6; Ex. 48)

5. On December 7, 1992, Attorney Smith filed an offer of proof with a medical tribunal supported by an affidavit of Dr. W asserting that the defendant doctors had committed malpractice. (Ans. ¶7; Ex. 45, Ex. 48)

6. On December 7, 1992, the medical tribunal issued a report finding that a legitimate question of liability existed in Mr. Jones' case. (Ans. ¶8; Ex. 48)

7. On or about March 15, 1993, Mr. Jones signed interrogatories that required him to identify his expert. (Ans. ¶9; Ex. 42) In his answers to interrogatories, Mr. Jones responded that no decision had been made about plaintiff's expert. (Ans. ¶9; Ex. 42)

8. On or about December 23, 1994, the court allowed the defendants' motion to compel further answers to interrogatories that called for the plaintiff to identify his expert by no later than January 10, 1995. (Ans. ¶10; Ex. 21, Ex. 48) Attorney Smith sought reconsideration of the order, which was denied on or about February 12, 1995. (Ans. ¶10; Ex. 38, Ex. 48)

9. On April 3, 1995, Attorney Smith sought permission to withdraw, citing substantive differences with his client. (Ans. ¶11; Ex. 37, Ex. 48) On May 1, 1995, Attorney Smith was allowed to withdraw and Mr. Jones was given 45 days to obtain successor counsel. (Ans. ¶12; Ex. 32, Ex. 33, Ex. 48)

10. In May 1995, Mr. Jones retained the Respondent as successor counsel in his medical malpractice action.[2] (Roe Tr. III:105-06) We credit the Respondent's testimony that he agreed to represent Mr. Jones because he wanted to help Mr. Jones and because Attorney Doe thought it was a good case. (Roe Tr. III:104-05) Mr. Jones initially met both the Respondent and Attorney Doe, but Mr. Jones understood that Attorney Doe principally would be handling his case. (Roe Tr. III:101-03; Doe Tr. II:58-59) During May through August 1995, Attorney Doe was primarily responsible for Mr. Jones' case, and Attorney Doe spoke frequently with Mr. Jones and periodically updated the Respondent on developments in the case. (Roe Tr. III:103, 106; Doe Tr. II:94-95)

11. Although Mr. Jones had stated that his predecessor counsel had an expert on board and that his case was ready for trial, Attorney Doe realized after his initial review of Mr. Jones' file and his telephone conferences with Attorney Smith and Dr. W that Mr. Jones did not have an expert for trial. (Roe Tr. III:103; Doe Tr. II:57-63) Although all discovery was essentially completed by this time, Attorney Doe also realized that Mr. Jones' answers to interrogatories regarding his expert were due on June 15, 1995 or the case would be dismissed. (Roe Tr. III:103-04; Doe Tr. II:64)

12. The Respondent obtained the name of a potential expert from a colleague and gave the name to Attorney Doe. (Roe Tr. III:108-09, 165; Doe Tr. II:65) In mid-May 1995, Attorney Doe then telephoned the potential expert, Dr. K, who agreed to review Jones' medical records and provide a written evaluation for $1,000. (Doe Tr. II:66) On or about May 30, 1995, Attorney Doe sent copies of Mr. Jones' medical records and a check for $1,000 to Dr. K, and requested his written report in two weeks, if possible. (Roe Tr. III:109; Doe Tr. II:67; Ex. 30, Ex. 30A)

13. On June 14, 1995, when he had not yet received a written report from Dr. K, Attorney Doe spoke with Dr. K by telephone and discussed the doctor's opinions and

observations concerning Mr. Jones' surgery. (Doe Tr. II:68-69, 98) As a result of the telephone conference with Dr. K, Attorney Doe drafted supplemental answers to interrogatories on behalf of Mr. Jones, identifying Dr. K as the plaintiff's proposed expert (Roe Tr. III:186; Doe Tr. II:78, 98), and asserting that

> "Dr. K's testimony will include, but not be limited to, the following opinions concerning this case:
> 1. that given the previous course of treatment undertaken by the plaintiff, the ethmoidectomy performed by the defendants was unnecessary and unwarranted.
> 2. the plaintiff was not sufficiently by [sic] informed of the consequences of the subject surgery and was not properly advised post surgery of the nature and extent of the complications which resulted from the perforation of his cribiform plate.
> 3. that perforation of the cribiform plate with subsequent cerebral spinal fluid leak during ethmoid surgery is a rare occurrence and constitutes negligence on the part of the defendants."

(Ex. 3)

14. On June 15, 1995, Mr. Jones came to the office and signed the supplemental answers to interrogatories. (Doe Tr. II:79-80) The same day, Attorney Doe appeared in court on Mr. Jones's behalf and filed notices of appearance for himself and the Respondent.[3] (Doe Tr. II:81, 84-85, 123; Ex. 1) At the hearing, the court revised the discovery deadlines, and as a result, Attorney Doe did not file Mr. Jones' supplemental answers to interrogatories at that time. (Roe Tr. III:183; Doe Tr. II:83-84)

15. On June 16, 1995, the court entered a procedural order scheduling a pretrial conference for September 21, 1995, and the commencement of trial on October 2, 1995. (Ans. ¶20; Ex. 2, Ex. 48)

16. On or about June 26, 1995, Attorney Doe received a letter dated June 22, 1995 from Dr. K. (Roe Tr. III:112-13; Doe Tr. II:85-86; Ex. 4) In his letter, Dr. K did not express an opinion that Mr. Jones' CSF leak was the result of malpractice. Instead, Dr. K stated that it was impossible to determine the cause of Mr. Jones' loss of smell and he did not specifically attribute the loss of smell to the CSF leak. (Ex. 4) In his letter, Dr. K also stated that there would be a breach of standard medical conduct if the serious consequences of ethmoid surgery were not discussed with a patient, but Dr. K merely noted the conflicting stories of the surgeon and Mr. Jones without stating an opinion. (Ex. 4)

17. We credit the Respondent's testimony that there was a "disconnect" between Dr. K's letter and the supplemental answers to interrogatories prepared by Attorney Doe, and that the Respondent instructed Attorney Doe to contact Dr. K in order to "straighten out why the letter was not fully consistent with what was in the answers." (Roe Tr. III:113, 185-86; Doe Tr. II:86) We credit the Respondent's testimony that Attorney Doe had a telephone conference with Dr. K on his speaker phone shortly thereafter while in the Respondent's presence.[4] (Roe Tr. III:113-14; Doe Tr. II:87-89) We credit the Respondent's and Attorney Doe's testimony that after their telephone conference with Dr. K by speaker phone, they both felt the supplemental answers to interrogatories were generally consistent with how Dr. K would testify at trial. (Roe Tr. III:121, 179-82; Doe Tr. III:89-91) We also credit the Respondent's testimony that he believed that Dr. K "was almost there" on the informed consent issue and needed to be "more supportive" on the standard of care issues, but that with a well developed record and proper questions, he was confident he "could bring [Dr. K] around to be 100 percent supportive or strongly supportive . . . on these issues." (Roe Tr. III:121, 179-82, 194-96)

18. On July 20, 1995, Attorney Doe sent the previously signed supplemental answers to Attorney Poe. (Doe Tr. II:92-94; Ans. ¶23; Ex. 5)

19. We do not credit the Respondent's testimony that he had a discussion with Mr. Jones

about how weak his case was and that he did not have an expert witness. (Roe Tr. III:144-45, 177-81) We do not credit the Respondent's testimony that after he reviewed Dr. K's report, he advised Mr. Jones that his only expert on liability and causation, critical to the success of a medical malpractice action, was not fully supportive of his case, at least on the standard of care issues. (Roe Tr. III:174-76, 178-81) We do not credit the testimony of the Respondent that Mr. Jones was given a copy of Dr. K's report prior to trial. (Roe Tr. III:174-76) We also do not credit the Respondent's testimony that he discussed with Mr. Jones the possibility of retaining a second expert to develop a stronger case for trial. (Roe Tr. III:180-81) Instead, we credit Mr. Jones' testimony that he had been told at the outset that he had a good case (Jones Tr. I:83, 86, 160, 163), and that he was never told, until just prior to trial in March 1996, that there were potentially any problems with Dr. K's anticipated testimony.[5] (Jones Tr. I:98-101, 103-04, 115-18, 121-22, 193-94, 202-03) We therefore find that the Respondent failed to fully disclose to Mr. Jones the details of Dr. K's opinions so that Mr. Jones could make an informed decision on whether to consult or retain an additional expert.

20. We further find that by late June 1995, the Respondent knew he would need to work with Dr. K (or "bring him around" to use the Respondent's vernacular) to make sure that indeed the doctor would support Mr. Jones' case. (Roe Tr. III:182, 193-96) The Respondent also knew an expert was critical to the success of that case. (*See* Roe Tr. III:140-41) Finally, the Respondent knew or should have known that a medical expert, especially one located a distance from the forum[6], would require significant advance notice of a trial date so he could make arrangements to be present. Nevertheless, we find that the Respondent did nothing, from July 1995 to March 1996, to work with Dr. K on developing his opinions, to meet with him or at least talk again with him by phone, and to make sure Dr. K would be available to testify at trial, or to record his testimony by deposition in the event there were problems with his appearing on the scheduled trial date. (Roe Tr. III:122, 132, 188) (*See also* ¶¶28 and 29 below.)

21. On September 20, 1995, Attorney Doe faxed to Attorney Poe a "Statement of Proposed Evidence of Plaintiff's Expert Witness," to be included in a joint pretrial memorandum. (Ans. ¶25; Ex. 6) The Respondent admits he did not review the statement of proposed evidence before it was sent to Attorney Poe. (Ans. ¶26)

22. On September 22, 1995, Attorney Poe and the Respondent signed a Joint Pre-Trial Memorandum, which incorporated the statement of proposed evidence by plaintiff's expert previously faxed by Attorney Doe to Attorney Poe. (Roe Tr. III:124-25; Ex. 7) We credit the Respondent's testimony that the statement attributed to Dr. K incorporated into the joint pretrial memorandum was generally consistent with his telephone conference by speaker phone with Dr. K in June 1995. (Roe Tr. III:126, 179-82) (*See also* ¶17 *supra*)

23. On September 26, 1995, the court issued an order scheduling a pretrial conference for January 4, 1996 and the trial for January 11, 1996.[7] (Ans. ¶30; Ex. 8) The notice was sent to Attorney Doe as attorney for the plaintiff, and Attorney Doe received the notice in due course. (Ans. ¶30)

24. On January 4, 1996, the Respondent did not appear for the pretrial conference in *Jones*. (Roe Tr. III:128; Ans. ¶31)

25. In a letter to the Respondent dated January 5, 1996, Attorney Poe reiterated that no one from the Respondent's office had appeared for the pretrial conference the previous day, and Attorney Poe informed the Respondent that "the court clerk told me that your office must prepare a written Motion for a Continuance to a date certain, no later than Monday, January 8, 1996 . . . ." (emphasis in original) (Ans. ¶32; Ex. 9) Attorney Poe requested that the Respondent contact him to schedule a new trial date. (Ans. ¶32; Ex. 9)

26. The Respondent admitted that he did not reply to Attorney Poe's January 5, 1996 letter, and that he did not file a motion to continue the trial. (Ans. ¶33) Even if we were to credit the Respondent's testimony that his office attempted to notify Attorney

Poe of the Respondent's unavailability for trial (*see* Roe Tr. III:129-30; Ex. 10), the fact remains that the Respondent admitted that he did not appear for trial on January 11, 1996 (Roe Tr. III:129-31; Ans. ¶34), and there is no evidence that the Respondent sought to notify the court or instruct someone from his office to notify the court of his unavailability.

27. On January 12, 1996, the court issued an order scheduling a pretrial conference for March 11, 1996 and a new trial date for March 26, 1996. (Ans. ¶35; Ex. 12, Ex 48) The court specifically ordered that "[n]o continuances will be granted. In the event that a party fails to appear for either event an appropriate dismissal/nonsuit will enter." (Ans. ¶35; Ex. 12, Ex. 48)

28. In January 1996, Attorney Charles Coe began renting an office from the Respondent and also working on some of the Respondent's cases, including the *Jones* medical malpractice matter.[8] (Roe Tr. III:127, 166; Coe Tr. III:8-9; Ex. 57, p. 36) We credit the Respondent's testimony that he instructed Attorney Coe in January 1996 to get the *Jones* matter ready for trial, which included contacting the witnesses. (Roe Tr. III:134, 166) We also credit Attorney Coe's testimony that he began working on the *Jones* matter shortly after he started at the Respondent's offices (Coe Tr. III:9), including reviewing the entire file and speaking to the doctors. (Coe Tr. III:9-10) We do not credit Attorney Coe's testimony denying any instruction from the Respondent to prepare the witnesses and instead claiming that he did not begin working on the *Jones* case until February 1996 and that he was only supposed to organize the pleadings for trial. (Coe Tr. III:10, 28-29; Ex. 57, pp. 56-57, 81-84, 95-96, 126-27)

29. On or about January 12, 1996 (*see* ¶27 *supra*), the Respondent knew of the March 26th trial date but did not, either directly or through Attorney Coe, contact Dr. K until mid-March. (Roe Tr. III:131-32, 134) To be sure, the Respondent delegated many pre-trial tasks to Attorney Coe (*see* ¶28 above), but in view of the importance of Dr. K's testimony, it was critical that the Respondent ensure his expert was prepared to testify on the scheduled trial date. We find that this needless delay deprived the Respondent, and therefore Mr. Jones, of any realistic opportunity to try to find a second expert or to file a meaningful motion for a continuance of trial.

30. On March 11, 1996, Attorney Coe attended the final pretrial conference in the *Jones* matter. (Roe Tr. III:132-33; Coe Tr. III:11) We do not accept Attorney Coe's recollection that the court was told, ostensibly by opposing counsel, at this final pretrial conference that Dr. K would not be testifying at trial on behalf of the plaintiff. (Roe Tr. III:133-34; Coe Tr. III:11) Nonetheless, we find that supplemental answers to expert interrogatories sought by opposing counsel prompted Attorney Coe to contact Dr. K after the final prehearing conference. (Roe Tr. III:134-35, 190-91; Coe Tr. III:12-13)

31. In a telephone conference with Dr. K prior to March 18, 1996, Attorney Coe learned that Dr. K would not appear to testify at the trial due to the lack of notice, and that his testimony in any event would not be favorable to Mr. Jones. (Roe Tr. III:134-35, 190; Coe Tr. III:12-13) We credit the Respondent's testimony that on or before March 21, 1996, he personally spoke with Dr. K, who told the Respondent that he did not appreciate the late notice because his schedule was so busy, and that he would not be a good witness for Mr. Jones because his testimony would not be supportive. (Roe Tr. III:135-36)

32. On March 21, 1996, a hearing was held on a motion before Judge McHugh; Attorney Coe did not appear for that hearing. (Ex. 52, p. 13, Ex. 57, p. 133) However, on or before March 22, 1996, the Respondent instructed Attorney Coe to notify Attorney Poe's office that Dr. K would not testify for the plaintiff at trial. (Roe Tr. III:136-37; Coe Tr. III:14; Ans. ¶37) By letters addressed to Attorney Coe dated March 22, 1996, Attorney Poe attempted to confirm that Dr. K would not testify. (Ans. ¶38; Ex. 13) We credit the Respondent's admission that he did not respond to these letters. (Ans. ¶38)

33. A status conference was held before Judge McHugh on Monday, March 25, 1996, which both Attorney Coe and the Respondent attended (Roe Tr. III:139; Coe Tr. III:34-35),

and Judge McHugh confirmed that all parties were prepared to proceed with trial on Wednesday, March 27, 1996. (Coe Tr. III:34-35; Ex. 52, pp. 13, 14) We credit Attorney Coe's testimony that he appeared before the court at the status conference and advised the judge that they had no expert. (Coe Tr. III:11) Nonetheless, neither the Respondent nor Attorney Coe sought to continue the trial as a result. (Coe Tr. III:34-35)

34. On March 27, 1996, the Respondent and Attorney Coe appeared for trial in the *Jones* matter. (Roe Tr. III:139; Ans. ¶39) At that time, Attorney Coe sought a continuance from the court to substitute another expert for Dr. K, claiming that Dr. K had changed his opinion. (Roe Tr. III:139; Coe Tr. III:36; Ans. ¶41; Ex. 52, pp. 11-12) In moving for a continuance, Attorney Coe informed the court that Dr. K's "report that we had prior to this indicated there was malpractice" and that he "was willing to testify to that fact", but now Dr. K was unwilling to participate in this matter.[9] (Roe Tr. III:192-93; Coe Tr. III:36-37; Ex. 52, p. 11) The court denied the Respondent's motion for a continuance, and the Respondent proceeded to trial on a theory of lack of informed consent. (Roe Tr. III:141; Ans. ¶41)

35. On April 1, 1996, the Respondent rested his case. (Ans. ¶42) The judge, upon motion by the defendants, directed a verdict in their favor based, in part, on the plaintiff's failure to introduce expert testimony. (Roe Tr. III:141; Ans. ¶42; Ex. 27)

36. A notice of appeal was filed in superior court on behalf of Mr. Jones on April 5, 1996 (Roe Tr. III:142; Ex. 48), and the record was assembled and sent to the Appeals Court on May 20, 1996. (Ex. 48) On July 5, 1996, the Respondent filed with the superior court his Notice of Withdrawal of Appearance. (Ex. 29) The superior court's judgment was affirmed by the Appeals Court in a rescript decision on November 13, 1997. (Ex. 48)

37. In September 1996, the Office of Bar Counsel received Mr. Jones' complaint about the Respondent and initiated an investigation. In August 1998, Mr. Jones filed a legal malpractice action against the Respondent, and in March 2003, Mr. Jones received the sum of $155,000 in full settlement of his legal malpractice claim. (Hinchey Tr. III:53) On January 16, 2004, Bar Counsel filed a petition for discipline against the Respondent. We credit the Respondent's testimony that he fully cooperated with the Office of Bar Counsel throughout its lengthy investigation. (Roe Tr. III:146-47)

**Count One - Conclusions of Law**

38. Bar Counsel charges that by accepting employment from Mr. Jones when he knew that he would delegate virtually all of his responsibility for the case to Attorney Doe without adequate supervision, and by failing to take any action of substance to investigate and prepare Mr. Jones's case, the Respondent violated Canon Two, DR 2-110(B)(2)[10], Canon Six, DR 6-101(A)(2)[11] and (3)[12], and Canon Seven, DR 7-101(A)(1), (2), and (3).[13]

39. Mr. Jones met initially with both the Respondent and Attorney Doe to discuss his medical malpractice case, and Mr. Jones understood that Attorney Doe would be primarily responsible for handling his case. The Respondent has not contested that he was ultimately responsible for Mr. Jones' case. Although Mr. Jones brought a case that he believed was ready for trial, in fact the Respondent and Attorney Doe were faced with the immediate task of finding a new expert after discovery was nearly completed. We find that the Respondent acted promptly and appropriately in retaining Dr. K. We therefore conclude that the Respondent did not violate these disciplinary provisions.

40. Bar Counsel charges that by failing to prepare for and to appear at the pretrial conference and for trial or to timely seek a continuance, all without adequate notice to opposing counsel, the Respondent violated Canon Six, DR 6-101(A)(2)[14] and (3)[15], Canon Seven, DR 7-101(A)(1), (2), and (3)[16], and DR 7-106(A)[17] and (C)(5).[18] The Respondent admitted that he failed to appear for the pretrial conference on January 4, 1996. Even if we were to credit the Respondent's testimony that he did not personally receive the court's notice of the pretrial conference, the fact remains that the notice was sent to his office, albeit addressed to Attorney Doe, and the Respondent had an

obligation to review all notices and correspondence relating to the *Jones* matter once Attorney Doe stopped working on the case following his suspension from practice in September 1995. In any event, the Respondent admitted he was notified by opposing counsel of the January 11, 1996 trial date, but he did not contact the court to seek a continuance. Because the Respondent admitted that he did not appear for trial on January 11, 1996, we conclude that the Respondent violated Canon Six, DR 6-101(A) (2)[19] and (3)[20] as charged. However, we conclude that the Respondent's failure to appear at the pretrial conference and for trial was not intentional and did not violate Canon Seven, DR 7-101(A)(1), (2) and (3)[21] or Canon Seven, DR 7-106(A).[22] We also conclude that by failing to appear for trial on January 11, 1996 with only last-minute notice to opposing counsel the preceding evening, the Respondent violated Canon Seven, DR-7-106(C)(5).[23]

41.  Bar Counsel charges that by failing to adequately supervise the work of Attorney Doe, by permitting false and misleading interrogatory answers to be signed by his client and served on opposing counsel, and by permitting false and misleading statements regarding Dr. K's expert opinion to be included in the joint pretrial statement of facts, the Respondent violated Canon Six, DR 6-101(A)(3)[24] and Canon Seven, DR 7-101(A)(1), (2), and (3).[25]

42.  Although Dr. K's written report did not specifically opine that Mr. Jones' CSF leak was the result of malpractice, we nonetheless credit the testimony of both the Respondent and Attorney Doe that after their speaker telephone conference with Dr. K, they both believed that Dr. K's testimony at trial would generally be consistent with the supplemental answers to interrogatories prepared by Attorney Doe and the statements attributed to Dr. K that were incorporated in the joint pretrial memorandum. (Roe Tr. III:193-96; Doe Tr. II:90-91) Because we do not find these supplemental answers and statements attributed to Dr. K to be false and misleading at the time they were prepared and in light of the circumstances as a whole, we conclude that the Respondent did not violate these disciplinary provisions.

43.  Bar Counsel charges that, in the alternative, by intentionally having the client sign false and misleading interrogatory answers and by intentionally including false and misleading statements as to Dr. K's opinion in the joint pretrial memorandum, the Respondent violated Canon One, DR 1-102(A)(4)[26], (5)[27] and (6)[28] and Canon Seven, DR 7-102(A)(3)[29] and (5).[30] In light of our findings above that the supplemental interrogatory answers and joint pretrial memorandum statements attributed to Dr. K were not false and misleading at the time they were prepared and in light of the circumstances as a whole, we conclude that the Respondent did not act intentionally and did not violate these disciplinary provisions.

44.  Bar Counsel charges that by failing to advise Mr. Jones that he had no expert to support the claim of negligence, the Respondent violated Canon Six, DR 6-101(A)(3)[31] and Canon Seven, DR 7-101(A)(1), (2), and (3).[32] The Respondent admitted that there was a "disconnect" between the supplemental interrogatory answers prepared by Attorney Doe on June 15, 1995 and the written report sent by Dr. K dated June 22, 1995, but we nonetheless credited his testimony that after his telephone conference with Dr. K, the Respondent felt the supplemental interrogatory answers were generally consistent with how Dr. K would testify at trial. (*See* ¶17 *supra*) However, we did not credit the Respondent's testimony that he provided a copy of Dr. K's report to Mr. Jones or that he adequately and fully advised Mr. Jones of the potential problems with Dr. K's opinions or the possibility of retaining a second expert to develop a stronger case at trial. Under these circumstances, we conclude that the Respondent owed to his client required the Respondent to fully disclose to Mr. Jones both Dr. K's report and his and Attorney Doe's conversation with the doctor, as well as the ramifications and advisability of consulting an additional expert, so that Mr. Jones would fully understand the potential weaknesses in his case if the Respondent were not able to produce completely supportive testimony from Dr. K, and so that Mr. Jones

could make an informed decision as to whether to consult, and incur the expense of consulting with, an additional expert.

45. In addition, because the Respondent was well aware that an expert was critical to the success of Mr. Jones' case, we find the Respondent's failure to directly follow-up with Dr. K or to adequately supervise Attorney Coe' pre-trial preparation of witnesses simply due to his heavy criminal workload constitutes neglect. We therefore conclude that the Respondent's failure to fully advise his client of the problems with the expert, both in June 1995 and continuing to trial in March 1996, and the Respondent's failure to ensure that an expert would be prepared to appear and testify at trial, violated Canon Six, DR 6-101(A)(3)[33], but were not intentional and did not violate Canon Seven, DR 7-101(A)(1), (2) and (3).[34]

46. Bar Counsel charges that by failing to advise opposing counsel and the tribunal that Attorney Doe had provided false and misleading information regarding Dr. K's opinion in the interrogatory answers and that this false and misleading information appeared in the joint pretrial memorandum, the Respondent violated Canon One, DR 1-102(A)(4)[35], (5)[36] and (6)[37] and Canon Seven, DR 7-102(B)(2).[38] In light of our previous findings above that the supplemental interrogatory answers and statements incorporated in the joint pretrial memorandum were not false and misleading at the time they were made and in consideration of the circumstances as a whole, we conclude that the Respondent did not violate these disciplinary provisions. In so deciding, we are not unmindful that we view the nature and scope of the disclosure the Respondent should have made to his client at the time as more encompassing than the disclosure the Respondent was required to make in the answers to expert interrogatories or in a joint pre-trial memorandum. In the former, we view the Respondent as having had an obligation to disclose fully to his client the substance of all communications with the expert. In the latter, the Respondent's disclosure obligations were defined by the literal language of the civil rules of procedure, namely the substance of what the Respondent in good faith reasonably expected the expert to testify.

47. Bar Counsel charges that by seeking a continuance on the ground that Dr. K was not available without withdrawing his statements regarding Dr. K's opinion, the Respondent violated Canon One, DR 1-102(A)(4)[39], (5)[40] and (6)[41] and Canon Seven, DR 7-102(A)(5).[42] We do not agree with Bar Counsel that the Respondent's failure to correct the record before the court regarding Attorney Coe's representation of Dr. K's expert opinion constituted a misrepresentation to the court in violation of the disciplinary provisions charged. The primary import of what Attorney Coe represented to the court was that the plaintiff's expert, Dr. K, would not appear to testify to malpractice on behalf of Mr. Jones. This was an accurate statement of the situation at that time for purposes of trial. In light of the Respondent's belief that Attorney Coe's reference to Dr. K's report encompassed all written and oral statements of Dr. K, which we credit, we do not find Attorney Coe's representation to the court about Dr. K's prior position or opinion about malpractice in the *Jones* matter to be a misrepresentation to the court in violation of the disciplinary provisions charged.

48. As the Board distinguished, and a single justice of the Supreme Judicial Court agreed, in *Matter of Long*, 16 Mass. Att'y Disc. R. 250, 256-57 (2000), attorneys who perpetrate a fraud on the court as to substantive matters are subject to more severe discipline than attorneys whose misrepresentations do not concern material matters in dispute. In *Long*, the attorney failed to inform his client that a pretrial conference had been scheduled until the evening before. The client was unable to obtain leave from work on such short notice so the attorney sought a continuance by claiming he was on trial in another court. In a subsequent conversation, in response to specific questions by the judge's staff, the attorney intentionally misrepresented the name of the other case, the name of the other court, and the name of the judge sitting on the other case. The Board found that "the respondent lied to get himself (and his client) out of a scheduling jam produced by his own neglect, but he did not seek to defraud the court on any substantive issue before it." *Id.* at 257. The single justice agreed that the

respondent's "misrepresentations did not concern material matters in dispute." *Id.*
*Compare, Matter of Shuman,* 437 Mass. 1006 (2002) (six-month suspension for attorney who submitted a pretrial memorandum to the court listing an expert witness and describing said expert's "expected testimony", as well as expanding on said "expected testimony" in a court-ordered supplemental answer to expert interrogatory, when attorney had in fact never contacted or retained said expert.)

49. Had Attorney Coe simply sought a continuance on the ground that Dr. K was not available, without disclosing that Dr. K was unwilling to testify to malpractice, and the Respondent failed to correct the record then, our analysis would likely be different because then the misrepresentation would concern a substantive issue in the case. In light of our previous findings that the Respondent had believed prior to March that Dr. K's opinion generally would be supportive of Mr. Jones at trial and that the reference to Dr. K's report encompassed both written and oral statements by Dr. K, we conclude that the Respondent did not fail to correct a misrepresentation to the court or engage in deceptive conduct in violation of the disciplinary provisions charged.

## Count Two – Findings of Fact

50. On or about August 12, 1998, Mr. Jones filed a lawsuit against the Respondent claiming, among other things, that the Respondent had committed legal malpractice in Mr. Jones's medical malpractice case. (Roe Tr. III:146; Ans. ¶51; Ex. 14)

51. In the course of the legal malpractice matter, on or about September 2, 1999, Mr. Jones' attorney, Thomas Toe, took the Respondent's deposition under oath. (Ans. ¶52) As part of his deposition, the Respondent was asked the following questions and gave the following answers under oath:

> Q: At the time you signed this document September 22nd, 1995, the joint pretrial memorandum, you have in fact reviewed the report from Doctor K, correct?
> A: Yes.
> Q: And you had reviewed it with the doctor, correct?
> A: Yes.

(Ans. ¶53)

## Count Two – Conclusions of Law

52. Bar Counsel charges that the Respondent's intentionally false statement in his deposition that he had consulted with Dr. K and reviewed his report prior to signing the joint pretrial memorandum violated Canon One, DR 1-102(A)(4)[43], (5)[44] and (6)[45] and Canon Six, DR 6-102(A).[46] In light of our findings above that the supplemental interrogatory answers and joint pretrial memorandum statements attributed to Dr. K were not false and misleading at the time they were prepared, and in consideration of the circumstances as a whole, we conclude that the Respondent did not act intentionally and did not violate these disciplinary provisions.

53. Bar Counsel charges, in the alternative, that by failing to amend, correct or withdraw the misleading and false interrogatory answers regarding Dr. K's opinion between June 20, 1995 and September 22, 1995 and by signing the Joint Pretrial Memorandum, the Respondent violated Canon One, DR 1-102(A)(4)[47], (5)[48] and (6)[49], and Canon Seven, DR 7-102(A)(3)[50] and (5)[51] and DR 7-106(C)(7).[52] In light of our findings above that the supplemental interrogatory answers and joint pretrial memorandum statements attributed to Dr. K were not false and misleading at the time they were prepared and in consideration of the circumstances as a whole, we conclude that the Respondent did not act intentionally and did not violate these disciplinary provisions.

## Count Three – Findings of Fact

54. From 1992 to September 1995, Attorney Doe was under investigation by federal authorities, including the U.S. Attorney, for criminal and fraudulent acts committed while he was a member of the board of directors of the ABC Credit Union. (Ans. ¶58) The Respondent represented Attorney Doe during the investigation by the U.S. Attorney's office. (Ans. ¶59)

55. About July 1992, the Office of Bar Counsel notified Attorney Doe that he was under investigation as a result of the criminal investigation. (Ans. ¶60) The Respondent represented Attorney Doe during Bar Counsel's investigation of Attorney Doe. (Ans. ¶61; Ex. 15)

56. In August 1995, Attorney Doe was charged in a federal information. (Ans. ¶63; Ex. 50)

57. On or about September 6, 1995, the Respondent notified Bar Counsel that Attorney Doe would assent to a temporary suspension of his license. (Ans. ¶64; Ex. 17)

58. On or about September 29, 1995, Attorney Doe waived indictment and pleaded guilty to the federal information. (Ans. ¶65; Ex. 50)

59. On September 29, 1995, the S.J.C. entered an order suspending Attorney Doe from the practice of law until further order. (Ans. ¶66; Ex. 18) The order required Attorney Doe to, *inter alia*, immediately withdraw his appearance as counsel for a party in any cases pending in any court and to supply a copy of each withdrawal to the Court and to Bar Counsel. (Ans. ¶66; Ex. 18) Within ten days of the order, Attorney Doe was required to file an affidavit of compliance with the Board of Bar Overseers and the Court. (Ans. ¶66; Ex. 18)

60. By no later than October 2, 1995, the Respondent received a copy of the suspension order, which was sent to him as Attorney Doe's lawyer in the bar discipline proceedings. (Ans. ¶67; Ex. 19)

61. On or about October 18, 1995, Attorney Doe filed an affidavit of compliance with Bar Counsel's office. (Ans. ¶68; Ex. 20) We credit Attorney Doe's testimony that he told the Respondent that he had filed all of the withdrawals in cases that he had entered appearances. (Doe Tr. II:96) We also credit his admission that he did not file a withdrawal of his appearance in the *Jones* matter because he considered it to be a limited or special appearance only. (Doe Tr. II:96) Therefore, we find that it was reasonable for the Respondent to rely upon Attorney Doe's representation that he had complied with the suspension order. We also credit the Respondent's testimony that he had no knowledge of any appearance filed by Attorney Doe in the *Jones* matter (Roe Tr. III:97-98), and that the Respondent simply transmitted the compliance forms to the Office of Bar Counsel as completed by Attorney Doe. (Roe Tr. III:97)

62. The Respondent admitted that he did not tell Mr. Jones that Attorney Doe was under investigation by federal and bar discipline authorities for possible criminal misconduct and that he was representing Attorney Doe in those matters. (Ans. ¶72; Roe Tr. III:145-46)

63. The Respondent admitted that he did not notify Mr. Jones, Attorney Poe, or the Middlesex Superior Court that Attorney Doe had been suspended from the practice of law. (Ans. ¶75)

## Count Three - Conclusions of Law

64. Bar Counsel charges that the Respondent's disclosure of confidences and secrets concerning Mr. Jones' case to Attorney Doe without Mr. Jones' informed consent violated Canon Four, DR 4-101(B)(1).[53] In light of our previous findings that Mr. Jones met initially with both the Respondent and Attorney Doe to discuss his medical malpractice case and disclosed personal and confidential information to them both, we conclude that the Respondent did not violate the disciplinary provision charged.

65. Bar Counsel charges that by failing to notify or to have Attorney Doe notify Mr. Jones, Attorney Poe and the Middlesex Superior Court of Attorney Doe's suspension, and by filing Attorney Doe's false affidavit of compliance with the Office of Bar Counsel, the Respondent violated Canon One, DR 1-102(A)(4)[54], (5)[55] and (6)[56] and Canon Seven, DR 7-101(A)(1), (2), and (3),[57] and DR 7-102(A)(3)[58], (5)[59] and (7)[60] and (B)(1).[61] In light

of our previous findings that the Respondent was not aware that Attorney Doe had filed an appearance in the *Jones* matter, and that the Respondent reasonably relied upon Attorney Doe's representation that he had complied with the suspension order when transmitting the documents to the Office of Bar Counsel, we conclude that the Respondent did not act intentionally and did not violate the disciplinary provisions charged.

66. Bar Counsel charges that by failing to withdraw from representing Mr. Jones and Attorney Doe when he knew or it was obvious that his continued representation would result in a disciplinary rule violation, and by representing both Attorney Doe and Mr. Jones when they had actual or potentially differing interests, when his independent professional judgment on behalf of Mr. Jones was or was likely to be adversely affected by his representation of Attorney Doe, and when the Respondent's personal or professional relationship with Attorney Doe did or might affect his professional judgment on behalf of Mr. Jones, without the informed consent of Mr. Jones, the Respondent violated Canon Two, DR 2-110(B)(2)[62] and Canon Five, DR 5-101(A)[63] and DR 5-105(A)[64], (B)[65], and (C).[66] Because we do not find that Bar Counsel has met his burden of showing a conflict of interest in the Respondent's simultaneous representation of Attorney Doe and Mr. Jones, we conclude that the Respondent did not violate these disciplinary provisions.

## II. FACTORS IN AGGRAVATION AND MITIGATION

67. In mitigation, the Respondent contends that he was extremely busy during 1995 and early 1996 with several complex criminal matters, and we credit this testimony. (Roe Tr. III:147-48, 152-53)

68. In mitigation, the Respondent claims that he collapsed due to exhaustion in April 1996, and we credit this testimony. (Roe Tr. III:149-50)

69. The Respondent also asserts that he no longer handles medical malpractice and product liability cases, and has reduced his caseload, and we also credit this testimony. (Roe Tr. III:84)

70. In mitigation, the Respondent also points to the nearly six years that have passed since the conduct complained of occurred and when the complaint against him was filed by Bar Counsel. In *Matter of Gross*, 435 Mass. 445, 450 (2001), the Supreme Judicial Court held that "[m]ere delay in the commencement of disciplinary proceedings does not result in dismissal of the proceedings", but recognized that "delay may be considered in mitigation. *See Matter of Kerlinsky*, 406 Mass. 67, 76 n.8 (1989), cert. denied, 498 U.S. 1027 (1991) . . . ." In *Matter of Cobb*, BD-2004-023, 20 Mass. Att'y Disc. R. (2004), Justice Greaney cited to *Gross, supra*, and found that "because the respondent did not make a sufficient showing of any prejudice . . ., I will not consider [delay] a mitigating factor in this case . . . ." Although this hearing committee finds the delay in this matter to be unacceptable and inexcusable, nonetheless, because the Respondent similarly has made no showing of any prejudice resulting from the delay in these proceedings, the delay shall not be considered a mitigating factor here.

## III. RECOMMENDATION FOR DISCIPLINE

Bar Counsel is seeking a three-year suspension, while the Respondent appears to seek a dismissal of the petition for discipline. As discussed above, this case boils down to one where the Respondent neglected Mr. Jones' medical malpractice claim. The standards for imposing sanctions for neglect are set forth in *Matter of Kane*, 13 Mass. Att'y Disc. R. 321 (1997) Although *Kane* is most significant for the Board's announcement of its adoption of new guidelines for discipline in cases going forward involving neglect or failure of zealous representation, the Board also summarized the standards applied up to that point. In *Kane*, the Board acknowledged that an attorney's neglect of a criminal matter for almost three years, including failing to respond to client inquiries, failing to diligently investigate, and failing to complete promised tasks in a timely manner, "absent the aggravating factors,

would warrant no greater sanction than an admonition under current precedent." 13 Mass. Att'y Disc. R. at 324. The Board also found "a phalanx of caselaw firmly establishing that the appropriate sanction for neglect, even with a disciplinary history for related misconduct is public reprimand. (citations omitted) Suspension has been imposed for neglect only in situations where the lawyer has added into the mix described above the added ingredients of misrepresentation and actual harm to the client, (citation omitted), or callous indifference to the plight of an incarcerated client; (citation omitted)." *Id.* at 325-26.

In the case at hand, the Respondent has no prior disciplinary history, we have found no intentional misconduct on the Respondent's part, and the remaining violations primarily concern the Respondent's neglect of the *Jones* matter, due in large part to his own busy criminal practice, his lack of experience in handling medical malpractice matters, and his failure to ensure that Dr. K was adequately notified of the trial date and prepared to testify as Mr. Jones' expert. Therefore, applying the pre-*Kane* standard for neglect, we recommend that Richard Roe receive an admonition.

## FOOTNOTES

[1] The transcript shall be referred to as "Tr.   :   " with the first number referring to the volume and the second number referring to the page(s); the Answer shall be referred to as "Ans. ¶  "; and the exhibits shall be referred to as "Ex.    ".

[2] A written contingency fee agreement was executed by Mr. Jones and the Respondent. (Ex. 31) We do not reach the issue of when this fee agreement was executed by the parties as it is not relevant to the violations charged in the petition.

[3] The Respondent does not deny responsibility for the *Jones* case and does not contest that he knew that Attorney Doe had filed an appearance for the Respondent in this case. (Roe Tr. III:98, 122, 148) We credit the Respondent's testimony and deem the Respondent to have entered an appearance in the *Jones* case for all purposes from and after June 15, 1995.

[4] Although Dr. K did not recall this telephone conference with the Respondent and Attorney Doe, we note that Dr. K admitted that he did not always note his telephone conferences on a person's file. (Ex. 56, pp. 14-17)

[5] More specifically, we credit Mr. Jones's testimony that he learned that Dr. K would not be testifying in his case first at the status conference in court before Judge McHugh, and then again in a late night telephone call from the Respondent the night before trial commenced. (Jones Tr. 103-04, 115-18, 121-22, 193-94, 202-03)

[6] Dr. K practiced in New York City (Roe Tr. III:109) while the *Jones* trial was being held in Cambridge, MA.

[7] We note that although the court did issue this notice, there is no corresponding entry on the court's docket for the issuance of the notice scheduling trial for January 11, 1996. (*See* Ex. 48).

[8] We note that there is no evidence that the Respondent formally introduced Attorney Coe to Mr. Jones, or sought Mr. Jones's consent to disclosing confidential or personal information and retaining Attorney Coe as his counsel in his medical malpractice case. However, we need not address the relationship between the Respondent and Attorney Coe as Bar Counsel has not charged any disciplinary violation here, and the Respondent does not contest that he was responsible for Attorney Coe's actions in the *Jones* matter. (*See* Roe Tr. III:148)

[9] The Respondent admitted that he did not advise the court any differently at the time. (Roe Tr. III:192-93) However, we credit the Respondent's testimony that he believed the

reference to Dr. K's report made by Attorney Coe to the court included all the written documents as well as the verbal conversations. (Roe Tr. III:197)

[10] Canon Two, DR 2-110 Withdrawal from Employment. Mandatory Withdrawal.

> B.  A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
>
> > 2.  He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.

[11] Canon Six, DR 6-101 Failing to Act Competently.

> A.  A lawyer shall not:
> > 2.  Handle a legal matter without preparation adequate in the circumstances.

[12] Canon Six, DR 6-101 Failing to Act Competently.

> A.  A lawyer shall not:
> > 3.  Neglect a legal matter entrusted to him.

[13] Canon Seven, DR 7-101 Representing a Client Zealously.

> A.  A lawyer shall not intentionally:
> > 1.  Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his clients, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
> > 2.  Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102 and DR 5-105.
> > 3.  Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

[14] See n.11 *supra*.

[15] See n.12 *supra*.

[16] See n.13 *supra*.

[17] Canon Seven, DR 7-106 Trial Conduct.

> A.  A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.

[18] Canon Seven, DR 7-106 Trial Conduct.

> C.  In appearing in his professional capacity before a tribunal, a lawyer shall not:

    5.  Fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of his intent not to comply.

[19] *See* n.11 *supra.*

[20] *See* n.12 *supra.*

[21] *See* n.13 *supra.*

[22] *See* n.17 *supra.*

[23] *See* n.18 *supra.*

[24] *See* n.12 *supra.*

[25] *See* n.13 *supra.*

[26] Canon One, DR 1-102 Misconduct.

    A.  A lawyer shall not:
        4.  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

[27] Canon One, DR 1-102 Misconduct.

    A.  A lawyer shall not:
        5.  Engage in conduct that is prejudicial to the administration of justice.

[28] Canon One, DR 1-102 Misconduct.

    A.  A lawyer shall not:
        6.  Engage in any other conduct that adversely reflects on his fitness to practice law.

[29] Canon Seven, DR 7-102 Representing a Client Within the Bounds of the Law.

    A.  In his representation of a client, a lawyer shall not:
        3.  Conceal or knowingly fail to disclose that which he is required by law to reveal.

[30] Canon Seven, DR 7-102 Representing a Client Within the Bounds of the Law.

    A.  In his representation of a client, a lawyer shall not:
        5.  Knowingly make a false statement of law or fact.

[31] *See* n.12 *supra.*

[32] *See* n.13 *supra.*

[33] *See* n.12 *supra.*

[34] *See* n.13 *supra.*

[35] *See* n.26 *supra.*

[36] *See* n.27 *supra.*

[37] *See* n.28 *supra.*

[38] Canon Seven, DR 7-102 Representing a Client Within the Bounds of the Law.

> B.  A lawyer who receives information clearly establishing that:
>> 2.  A person other than his client has perpetrated a fraud upon a tribunal shall promptly reveal the fraud to the tribunal.

[39] *See* n.26 *supra.*

[40] *See* n.27 *supra.*

[41] *See* n.28 *supra.*

[42] *See* n.30 *supra.*

[43] *See* n.26 *supra.*

[44] *See* n.27 *supra.*

[45] *See* n.28 *supra.*

[46] Canon Six, DR 6-102 Limiting Liability to Client.

> A.  A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice.

[47] *See* n.26 *supra.*

[48] *See* n.27 *supra.*

[49] *See* n.28 *supra.*

[50] *See* n.29 *supra.*

[51] *See* n.30 *supra.*

[52] Canon Seven, DR 7-106 Trial Conduct.

> C.  In appearing in his professional capacity before a tribunal, a lawyer shall not:
>> 7.  Intentionally or habitually violate any established rule of procedure or of evidence.

[53] Canon Four, DR 4-101 Preservation of Confidences and Secrets of a Client.

> B.  Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
>> 1.  Reveal a confidence or secret of his client.

[54] *See* n.26 *supra.*

[55] *See* n.27 *supra.*

[56] *See* n.28 *supra.*

[57] *See* n.13 *supra.*

[58] *See* n.29 *supra.*

[59] *See* n.30 *supra.*

[60] Canon Seven, DR 7-102 Representing a Client Within the Bounds of the Law.

> A.  In his representation of a client, a lawyer shall not:
> > 7.  Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

[61] Canon Seven, DR 7-102 Representing a Client Within the Bounds of the Law.

> B.  A lawyer who receives information clearly establishing that:
> > 1.  His client has, in the course of representation, perpetrated a fraud upon a person or tribunal shall promptly call upon his client to rectify the same, and if his client refuses or is unable to do so, he shall reveal the fraud to the affected person or tribunal, except when the information is protected as a privileged communication.

[62] *See* n.10 *supra.*

[63] Canon Five, DR 5-101 Refusing Employment When the Interest of the Lawyer May Impair His Independent Professional Judgment.

> A.  Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

[64] Canon Five, DR 5-105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Profession.Judgment of the Lawyer.

> A.  A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).

[65] Canon Five, DR 5-105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Profession.Judgment of the Lawyer.

> B.  A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5-105(C).

[66] Canon Five, DR 5-105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Profession.Judgment of the Lawyer.

> C.  In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

# EXHIBIT E

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
## District of Massachusetts

UNITED STATES OF AMERICA
### V.
### ROBERT A. GEORGE

**AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number: **1: 11 CR 10201 - 1 - NMG**

USM Number: 93787-038

Robert M. Goldstein, Esq.
Defendant's Attorney

☐ Additional documents attached

Date of Original/Amended Judgment:   11/5/12

☑ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.36)

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☑ was found guilty on count(s)   1-7
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

Additional Counts - See continuation page ☑

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §1956(h) | Money Laundering Conspiracy | 06/08/10 | 1 |
| 18 USC §1956(a)(3) (B) | Money Laundering | 12/16/09 | 2 |
| 18 USC §1956(a)(3) (B) | Money Laundering | 04/15/10 | 3 |

The defendant is sentenced as provided in pages 2 through   14   of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/31/12
Date of Imposition of Judgment

/s/ Nathaniel M. Gorton
Signature of Judge

The Honorable Nathaniel M. Gorton
U.S. District Judge
Name and Title of Judge

7/29/14
Date

✎AO 245B(05-MA)  (Rev. 06/05) Judgment in a Criminal Case
Sheet 1A - D. Massachusetts - 10/05

DEFENDANT: **ROBERT A. GEORGE**
CASE NUMBER: **1: 11 CR 10201 - 1 - NMG**

Judgment—Page _____2_____ of _____14_____

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC §1956(a)(3) (C) | Money Laundering | 03/04/11 | 4 |
| 18 USC §1956(a)(3) (C) | Money Laundering | 03/04/11 | 5 |
| 18 USC §1956(a)(3) (B) | Money Laundering | 03/18/11 | 6 |
| 31 USC §5324(a)(1) | Structuring Transactions to Evade Reporting Requirements | 03/04/11 | 7 |
| 18 USC §982(A)(1) | Criminal Forfeiture Allegation | | |

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 2 - D. Massachusetts - 10/05

| | | | Judgment — Page | 3 | of | 14 |

DEFENDANT: **ROBERT A. GEORGE**
CASE NUMBER: **1: 11 CR 10201  - 1  - NMG**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:     **42**     month(s)

This term consists of terms of 42 months on each Count, all to be served concurrently.

[✓] The court makes the following recommendations to the Bureau of Prisons:

See Page 4.

[ ] The defendant is remanded to the custody of the United States Marshal.

[ ] The defendant shall surrender to the United States Marshal for this district:

    [ ] at _____ [ ] a.m. [ ] p.m.   on _____ .

    [ ] as notified by the United States Marshal.

[✓] The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    [✓] before 2 p.m. on    01/15/13 _____ .

    [ ] as notified by the United States Marshal.

    [ ] as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
Sheet 2A - D. Massachusetts - 10/05

DEFENDANT:     **ROBERT A. GEORGE**
CASE NUMBER:   **1: 11  CR  10201  - 1   - NMG**

Judgment—Page ___4___ of ___14___

## ADDITIONAL IMPRISONMENT TERMS

The Court makes a judicial recommendation that Defendant be incarcerated at Satellite Prison Camp (SCP) Otisville, NY to facilitate family visitation or, in the event that Otisville is unavailable, then he be incarcerated at Satellite Prison Camp (SPC) Schuylkill, Pennsylvania for the same family reasons. Alternatively, in the event that the Bureau of Prisons determines that the defendant must be designated out-of-region, then incarceration at Federal Prison Camp (FPC) Pensacola, Florida.

AO 245B(05-MA)     (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

---

DEFENDANT: **ROBERT A. GEORGE**                                    Judgment—Page __5__ of __14__

CASE NUMBER: **1: 11 CR 10201 - 1 - NMG**

## SUPERVISED RELEASE

☑ See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :          **12**   month(s)

This term consists of terms of 12 months on each Count, all such terms to run concurrently.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed  50   tests per year, as directed by the probation officer.

☑ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation - 10/05

DEFENDANT:   **ROBERT A. GEORGE**                                     Judgment—Page ____6__ of ____14____
CASE NUMBER:   **1: 11 CR 10201   - 1   - NMG**

## ADDITIONAL ☑ SUPERVISED RELEASE ☐ PROBATION TERMS

1. The defendant is prohibited from possessing a firearm, destructive device, or other dangerous weapon.

### Continuation of Conditions of ☐ Supervised Release ☐ Probation

✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

| | Judgment — Page | 7 | of | 14 |

DEFENDANT: **ROBERT A. GEORGE**
CASE NUMBER: **1: 11  CR  10201   - 1   - NMG**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $          $700.00 | $          $12,500.00 | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

☐ See Continuation Page

| **TOTALS** | $          $0.00 | $          $0.00 | |

☐ Restitution amount ordered pursuant to plea agreement    $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

    ☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 5A - D. Massachusetts - 10/05

DEFENDANT:   **ROBERT A. GEORGE**                      Judgment—Page ___8___ of ___14___
CASE NUMBER:   **1: 11  CR  10201  -  1   - NMG**

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

The defendant shall pay to the United States a fine of $12,500, which shall be due immediately, as a lump sum payment. This consists of $2,000 on each of counts 1-6, and $500 on count 7.

Payment of the fine balance shall begin immediately according to the requirements of the Federal Bureau of Prisons' Inmate Financial Responsibility Program while the defendant is incarcerated and according to a court-ordered repayment schedule during the term of supervised release.

Any fine imposed is to be continued to be paid until the full amount, including any interest required by law, is paid. All fine payments shall be made to the Clerk, U.S. District Court. The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the fine remains unpaid.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 5A - D. Massachusetts - 10/05

DEFENDANT:       **ROBERT A. GEORGE**

CASE NUMBER:    **1: 11  CR  10201   - 1     - NMG**

Judgment—Page ___8___ of ___14___

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

The defendant shall pay to the United States a fine of $12,500, which shall be due immediately, as a lump sum
payment. This consists of $2,000 on each of counts 1-6, and $500 on count 7.
Payment of the fine balance shall begin immediately according to the requirements of the Federal Bureau of
Prisons' Inmate Financial Responsibility Program while the defendant is incarcerated and according to a
court-ordered repayment schedule during the term of supervised release.
Any fine imposed is to be continued to be paid until the full amount, including any interest required by law, is
paid. All fine payments shall be made to the Clerk, U.S. District Court. The defendant shall notify the United
States Attorney for this district within 30 days of any change of mailing or residence address that occurs while
any portion of the fine remains unpaid.

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6B - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **ROBERT A. GEORGE** | Judgment—Page __10__ of __14__ |
| CASE NUMBER: **1: 11  CR  10201  - 1   - NMG** | |

## ADDITIONAL FORFEITED PROPERTY

1. one 2008 Lexus GS350, Vehicle Identification Number JTHCE96S480020435, and Massachusetts Registration Number 785MY9 March 11, 2004 (the "2008 Lexus");

2. the sum of $39,500.00 in United States Currency.

AO 245B   (Rev. 06/05) Criminal Judgment
Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT: **ROBERT A. GEORGE**                                          Judgment — Page  11  of   14
CASE NUMBER: **1: 11 CR 10201  - 1   - NMG**
DISTRICT:           **MASSACHUSETTS**

# STATEMENT OF REASONS

**I      COURT FINDINGS ON PRESENCE INVESTIGATION REPORT**

A   ☑    **The court adopts the presence investigation report without change.**

B   ☐    **The court adopts the presence investigation report with the following changes.**
(Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
(Use Section VIII if necessary.)

1   ☐   Chapter Two of the U.S.S.G. Manual determinations by court (including changes to base offense level, or
specific offense characteristics):

2   ☐   Chapter Three of the U.S.S.G. Manual determinations by court (including changes to victim-related adjustments,
role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

3   ☐   Chapter Four of the U.S.S.G. Manual determinations by court (including changes to criminal history category or
scores, career offender, or criminal livelihood determinations):

4   ☐   Additional Comments or Findings (including comments or factual findings concerning certain information in the
presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation,
or programming decisions):

C   ☐    **The record establishes no need for a presence investigation report pursuant to Fed.R.Crim.P. 32.**

**II     COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A   ☑    No count of conviction carries a mandatory minimum sentence.

B   ☐    Mandatory minimum sentence imposed.

C   ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the
sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum
does not apply based on

☐   findings of fact in this case
☐   substantial assistance (18 U.S.C. § 3553(e))
☐   the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:          26
Criminal History Category:   1
Imprisonment Range:      63      to   78      months
Supervised Release Range:  1      to   3      years
Fine Range: $ 12.500      to  $   500.000
☐   Fine waived or below the guideline range because of inability to pay.

| | |
|---|---|
| DEFENDANT:  **ROBERT A. GEORGE** | Judgment — Page  12  of   14 |
| CASE NUMBER: **1: 11 CR 10201  - 1   - NMG** | |
| DISTRICT:       **MASSACHUSETTS** | |

## STATEMENT OF REASONS

**IV   ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A ☐ The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B ☐ The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
(Use Section VIII if necessary.)

C ☑ The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
(Also complete Section V.)

D ☐ The court imposed a sentence outside the advisory sentencing guideline system.  (Also complete Section VI.)

**V   DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A **The sentence imposed departs** (Check only one.):
  ☑ below the advisory guideline range
  ☐ above the advisory guideline range

B **Departure based on** (Check all that apply.):

1    **Plea Agreement** (Check all that apply and check reason(s) below.):
  ☐ 5K1.1 plea agreement based on the defendant's substantial assistance
  ☐ 5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
  ☐ binding plea agreement for departure accepted by the court
  ☐ plea agreement for departure, which the court finds to be reasonable
  ☐ plea agreement that states that the government will not oppose a defense departure motion.

2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
  ☐ 5K1.1 government motion based on the defendant's substantial assistance
  ☐ 5K3.1 government motion based on Early Disposition or "Fast-track" program
  ☐ government motion for departure
  ☐ defense motion for departure to which the government did not object
  ☐ defense motion for departure to which the government objected

3    **Other**
  ☑ Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 Violent Street Gang |
| ☑ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 Aberrant Behavior |
| | | | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 Dismissed and Uncharged Conduct |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 Discharged Terms of Imprisonment |
| | | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

D **Explain the facts justifying the departure.** (Use Section VIII if necessary.)

See VIII, page 14.

AO 245B ( 05-MA)   (Rev. 09/05) Criminal Judgment
Attachment (Page 3) — Statement of Reasons - D. Massachusetts 10/05

DEFENDANT:   **ROBERT A. GEORGE**                                      Judgment — Page  13  of   14
CASE NUMBER: **1: 11  CR  10201   - 1   - NMG**
DISTRICT:          **MASSACHUSETTS**

## STATEMENT OF REASONS

**VI   COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

    A   **The sentence imposed is** (Check only one.):
        ☐ below the advisory guideline range
        ☐ above the advisory guideline range

    B   **Sentence imposed pursuant to** (Check all that apply.):

        1      **Plea Agreement** (Check all that apply and check reason(s) below.):
                ☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
                ☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
                ☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline
                   system

        2      **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
                ☐ government motion for a sentence outside of the advisory guideline system
                ☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
                ☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

        3      **Other**
                ☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

    C   **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

        ☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)
        ☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))
        ☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))
        ☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))
        ☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
           (18 U.S.C. § 3553(a)(2)(D))
        ☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))
        ☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

    D   **Explain the facts justifying a sentence outside the advisory guideline system.  (Use Section VIII if necessary.)**

AO 245B ( 05-MA) (Rev. 06/05) Criminal Judgment
Attachment (Page 4) — Statement of Reasons - D. Massachusetts - 10/05

| | | |
|---|---|---|
| DEFENDANT: | **ROBERT A. GEORGE** | Judgment — Page  14  of    14 |
| CASE NUMBER: | **1: 11 CR 10201  - 1  - NMG** | |
| DISTRICT: | **MASSACHUSETTS** | |

## STATEMENT OF REASONS

**VII  COURT DETERMINATIONS OF RESTITUTION**

A   ☑  Restitution Not Applicable.

B   Total Amount of Restitution:   _____

C   Restitution not ordered (Check only one.):

    1   ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

    2   ☐   For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

    3   ☐   For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

    4   ☐   Restitution is not ordered for other reasons.  (Explain.)

D   ☐   Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

**VIII  ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE** (If applicable.)

V.D. The Defendant's remarkable and lengthy career as a respected criminal defense lawyer, unblemished before the instant offense, and as vouched for by the 62 persons who wrote letters in support of defendant, are grounds for a departure of 33% below the low end of the applicable guideline range and the resulting sentence of 42 months is sufficient, but not greater, than necessary.

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | |
|---|---|
| Defendant's Soc. Sec. No.: 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 | Date of Imposition of Judgment 10/31/12 |
| Defendant's Date of Birth: 00/00/1955 | /s/ Nathaniel M. Gorton |
| Defendant's Residence Address: East Dennis, MA | Signature of Judge |
| | The Honorable Nathaniel M. Gorton     U.S. District Judge |
| Defendant's Mailing Address: East Dennis, MA | Name and Title of Judge |
| | Date Signed  7/29/14 |

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## PROBATION AND PRETRIAL SERVICES OFFICE

**Christopher Maloney**
Chief U.S. Probation Officer

499 Essex Street, 2nd Floor
Lawrence, MA 01840-1269
Phone: (978) 689-3653
Fax: (978) 689-9067

01/30/2017

Robert George
P.O. Box 1477
South Dennis, MA 02660

### RE: TERMINATION OF SUPERVISION

Dear Robert George:

We are pleased to inform you that your supervision terminated on  01/28/2017.   It will
not be necessary to submit further reports to this office.

The Massachusetts Trial Court no longer maintains federal criminal history information on the
CARI system.  You may need this letter to demonstrate that you have successfully completed
federal supervision.

If at any time I, or any member of my staff, can be of help to you with any of your
personal problems or concerns, do not hesitate to call on us.  We shall be glad to render
whatever help we can.

Sincerely Yours,

/s/ Christopher Maloney

Christopher Maloney
Chief U.S. Probation Officer

Tracy J. Weisberg
U. S. Probation Officer

# EXHIBIT G

## MPRE Score

Name: ROBERT GEORGE
NCBE Number: N10369436
Date of Birth: ███████████

Your score on the Multistate Professional Responsibility Examination (MPRE) administered on 11/04/2017 is as follows:

Scaled Score: 92

The score shown above has been reported to MASSACHUSETTS as you requested when you registered for the MPRE.

**Your MPRE score will be available on your NCBE account only until the next MPRE test date. If you want to obtain your score after that, you will need to request a score transcript, and pay the required fee. Therefore, we recommend that you save this page and/or print it for your records.**

Each jurisdiction determines its own passing score on the MPRE. You may find a jurisdiction's passing score, as well as contact information for its bar admission agency, by selecting the jurisdiction from the interactive map. Any questions about admission requirements pertaining to MPRE scores should be directed to the bar admission agency in the jurisdiction to which you are applying.

The MPRE scaled score is a standard score. Standard scaled scores range from 50 (low) to 150 (high).

**MPRE Score Services: All MPRE score services listed below must be requested under the Score Services tab or from the File Cabinet of your NCBE account.**

- MPRE Score Report: If you would like to have your MPRE score sent to another jurisdiction, you must submit a request to NCBE for a score report. Score reports are sent to jurisdictions by secure transfer.
- MPRE Score Verification: If you would like to have the scoring of your MPRE answer sheet rechecked by hand, you must request a score verification. **Score verification requests must be submitted to NCBE within two months of the original test date.**
  Note: See link in File Cabinet to request a MPRE Score Verification. This link is only visible when the service is available.
- MPRE Unofficial Score Transcript: If you would like a replacement copy of your MPRE score after it is no longer available on this page, you must submit a request to NCBE for an MPRE Unofficial Score Transcript. The transcript will include all the MPRE scores you earned from 1999 to the present. All scores on the MPRE Unofficial Score Transcript are duplicative of score information provided following the exam. MPRE Unofficial Score Transcripts will be available in the File Cabinet of your NCBE account, and are not sent by mail.

# EXHIBIT H



ID: 63409 - Robert George

Home

My Messages

My Account

My Academic Plan

Rental Library

Term Calendar

New Student Orientation

Student Handbook

Petition for Graduation

Student Resources

Student Satisfaction Survey

Log Off



Home » My Academic Plan

## My Academic Plan

Select your program to view your academic plan:

DBA02 - Master of Business Administration

| | |
|---|---|
| Required Units: | 39 |
| Completed Units: | 39 |
| Transferred Units: | 0 |
| Remaining Units: | 0 |
| Active Units: | 0 |
| Accumulated Units: | 39 |
| Current GPA: | 3.85 |

Active Courses (0)     Remaining Courses (0)     Completed & Transferred Courses (13)     All Courses (13)

| Course Code ▲ | Course Name | Credit Code ▲ | Units | Grade | Sent | Completed | Revision | Proctored |
|---|---|---|---|---|---|---|---|---|
| BAM515 | ORGANIZATIONAL BEHAVIOR | CBX | 3 | A | 03/12/2014 | 04/07/2014 | 1/2009 | No |
| BAM509 | MANAGEMENT INFORMATION SYSTEMS | CBX | 3 | A | 06/21/2013 | 09/17/2013 | 12/2011 | Yes |
| BAM510 | HUMAN RESOURCE MANAGEMENT | CBX | 3 | A | 12/17/2013 | 03/11/2014 | 2/2010 | Yes |
| BAM511 | MARKETING MANAGEMENT | CBX | 3 | A | 09/09/2013 | 11/05/2013 | 12/2008 | Yes |
| BAM513 | FINANCIAL MANAGEMENT | CBX | 3 | B | 09/09/2013 | 01/31/2014 | 9/2009 | Yes |
| BAM514 | INTERNATIONAL BUSINESS MANAGEMENT | CBX | 3 | A | 09/09/2013 | 11/13/2013 | 11/2008 | Yes |
| BAM521 | BUSINESS LAW | CBX | 3 | A | 09/09/2013 | 01/14/2014 | 8/2009 | Yes |
| BAM540 | PROJECT MANAGEMENT | CBX | 3 | A | 03/12/2014 | 05/23/2014 | 8/2012 | Yes |
| BAM560 | STRATEGIC MANAGEMENT | CBX | 3 | A | 12/17/2013 | 04/01/2014 | 2/2009 | Yes |
| GRM697 | THE RESEARCH PROCESS | CBX | 3 | A | 12/17/2013 | 04/29/2014 | 12/2012 | Yes |
| BAM530 | BUSINESS ETHICS | CBX | 3 | A | 04/07/2014 | 06/10/2014 | 8/2011 | No |
| BAM550 | LEADERSHIP | CBX | 3 | B | 04/07/2014 | 07/22/2014 | 2/2014 | No |
| BAM570 | E-COMMERCE MANAGEMENT | CBX | 3 | A | 04/14/2014 | 06/27/2014 | 9/2011 | No |

**Course Credit Code Definition**
CE - Challenge Exam
SG - Study Guide
EXP - Experiential Learning Credit Request
CBE - Credit by Experience
CBT - Credit by Transfer
CBX - Credit by Exam

**Grade Code Definition**
P - Passed/Completed (No grade required)
I - Essay Exam received but not yet graded

To print unofficial transcript, click

My Account          Student Resources                    About California Coast

4/25/2019                                          Unofficial Transcript

RECORD OF:ROBERT GEORGE                                                                          GENDER:M
STUDENT ID:63409                           **California Coast University**                DATE OF BIRTH:01/24/1955
STUDENT ADDRESS:                                                                   DATE OF ENROLLMENT:06/20/2013
    P O BOX 1477                                                            PROGRAM:MASTER OF BUSINESS ADMINISTRATION
    DENNIS, MA 02660                                                                           ISSUED TO:
    United States

**Unofficial Transcript of Academic Records**

INSTITUTION CREDIT

| Course Number | Course Title | Credit Code | Units | Grade | Date Completed |
|---|---|---|---|---|---|
| | SUMMER 2013 | | | | |
| BAM509 | MANAGEMENT INFORMATION SYSTEMS | CBX | 3 | A | 09/17/2013 |
| SUMMER 2013 Semester Units/G.P.A.: | | | 3 | 4.00 | |
| Cumulative Semester Units/G.P.A.: | | | 3 | 4.00 | |
| Total Units: | | | 3 | 4.00 | |
| | FALL 2013 | | | | |
| BAM511 | MARKETING MANAGEMENT | CBX | 3 | A | 11/05/2013 |
| BAM514 | INTERNATIONAL BUSINESS MANAGEMENT | CBX | 3 | A | 11/13/2013 |
| FALL 2013 Semester Units/G.P.A.: | | | 6 | 4.00 | |
| Cumulative Semester Units/G.P.A.: | | | 9 | 4.00 | |
| Total Units: | | | 9 | 4.00 | |
| | WINTER 2014 | | | | |
| BAM521 | BUSINESS LAW | CBX | 3 | A | 01/14/2014 |
| BAM513 | FINANCIAL MANAGEMENT | CBX | 3 | B | 01/31/2014 |
| BAM510 | HUMAN RESOURCE MANAGEMENT | CBX | 3 | A | 03/11/2014 |
| WINTER 2014 Semester Units/G.P.A.: | | | 9 | 3.67 | |
| Cumulative Semester Units/G.P.A.: | | | 18 | 3.83 | |
| Total Units: | | | 18 | 3.83 | |
| | SPRING 2014 | | | | |
| BAM560 | STRATEGIC MANAGEMENT | CBX | 3 | A | 04/01/2014 |
| BAM515 | ORGANIZATIONAL BEHAVIOR | CBX | 3 | A | 04/07/2014 |
| GRM697 | THE RESEARCH PROCESS | CBX | 3 | A | 04/29/2014 |
| BAM540 | PROJECT MANAGEMENT | CBX | 3 | A | 05/23/2014 |
| BAM530 | BUSINESS ETHICS | CBX | 3 | A | 06/10/2014 |
| BAM570 | E-COMMERCE MANAGEMENT | CBX | 3 | A | 06/27/2014 |
| SPRING 2014 Semester Units/G.P.A.: | | | 18 | 4.00 | |
| Cumulative Semester Units/G.P.A.: | | | 36 | 3.92 | |
| Total Units: | | | 36 | 3.92 | |
| | SUMMER 2014 | | | | |
| BAM550 | LEADERSHIP | CBX | 3 | B | 07/22/2014 |
| SUMMER 2014 Semester Units/G.P.A.: | | | 3 | 3.00 | |
| Cumulative Semester Units/G.P.A.: | | | 39 | 3.85 | |
| Total Units: | | | 39 | 3.85 | |

********* END OF RECORD *********

_____        _____
Registrar's Signature                                    Date

# Massachusetts Continuing Legal Education CLE Credit History

Attendance certificates are available for MCLE's in-person programs from 9/1/2007 and for MCLE's live webcasts from 9/1/2009. For credits earned through West LegalEdcenter webcasts, visit West's website at www.westlegaledcenter.com

### Participant Information(edit)

Robert A. George, Sr.

PO Box 1477 3 Boulder Drive
South Dennis, MA 02660
(617) 438-5669
RGEORGESENIOR@GMAIL.COM

Show activities from 08/29/2019  to 02/29/2020          

## Live CLE Programs

**There are no Live CLE Programs between 08/29/2019 and 02/29/2020**

## On Demand CLE Programs

| Date | Description | Type | Substantive | Ethics | Attendance Certificate |
|------|-------------|------|-------------|--------|------------------------|
| 02/28/2020 | The Progressive Appellate Prosecutor | On Demand Webcast | 3 | 0 | Print |
| 01/29/2020 | Introducing & Excluding Evidence at Trial | On Demand Webcast | 4 | 0 | Print |
| 01/26/2020 | Cultivating Referrals & Developing Your Network | On Demand Webcast | 3 | 0 | Print |
| 01/13/2020 | How to Make Money & Stay Out of Trouble | On Demand Webcast | 6 | 6 | Print |
| 12/18/2019 | Criminal Responsibility, Competency & Diminished Capacity | On Demand Webcast | 3 | 0 | Print |
| 12/18/2019 | How to Make Money & Stay Out of Trouble | MP3 Download | 6 | 6 | Print |
| 12/17/2019 | Prosecuting & Defending Homicide Cases | On Demand Webcast | 6 | 0 | Print |
| 12/01/2019 | Cutting Edge Discovery Techniques in Criminal Cases | On Demand Webcast | 3 | 0 | Print |
| 12/01/2019 | 20th Annual Criminal Law Conference 2019 | On Demand Webcast | 6.5 | 0 | Print |
| 11/19/2019 | 19th Annual Criminal Law Conference 2018 | On Demand Webcast | 6.5 | 0 | Print |
| 11/18/2019 | Making the Expert Work for Your Criminal Case | On Demand | 3 | 0 | Print |

| Date | Title | Format | | | |
|---|---|---|---|---|---|
| 11/12/2019 | c. 211, §3 Petitions & Interlocutory Appeals for Criminal Law: The 60-Minute Lawyer | On Demand Webcast | 1 | 0 | Print |
| 11/11/2019 | Warrant & Warrantless Search & Seizure | On Demand Webcast | 3 | 0 | Print |
| 11/11/2019 | Massachusetts Auto Stops 2019 | On Demand Webcast | 3 | 0 | Print |
| 11/09/2019 | New Developments in Search & Seizure Law | On Demand Webcast | 3 | 0 | Print |
| 11/07/2019 | Hanging Your Shingle | On Demand Webcast | 14 | 0 | Print |
| 10/23/2019 | How New Attorneys Enter the Practice: Hanging Your Shingle | On Demand Webcast | 3 | 0 | Print |
| 10/10/2019 | When New Technology Becomes Evidence | On Demand Webcast | 3 | 0 | Print |
| 10/06/2019 | "1st Look" at the Massachusetts Criminal Justice Reform Bill | On Demand Webcast | 2 | 0 | Print |
| 10/01/2019 | 25 Critical Cases Every Criminal Lawyer Must Know | On Demand Webcast | 3 | 0 | Print |
| 09/28/2019 | 25 Critical Cases Every Criminal Lawyer Must Know | MP3 Download | 3 | 0 | Print |
| 09/25/2019 | When New Technology Becomes Evidence | MP3 Download | 3 | 0 | Print |
| 09/25/2019 | Crime Scene Investigation | On Demand Webcast | 3 | 0 | Print |
| 09/25/2019 | Crime Scene Investigation | MP3 Download | 3 | 0 | Print |
| 09/24/2019 | DNA & Criminal Forensics | On Demand Webcast | 4 | 0 | Print |
| 09/24/2019 | DNA & Criminal Forensics | MP3 Download | 4 | 0 | Print |
| 09/22/2019 | Criminal Law Forensic Summit 2018 | On Demand Webcast | 6 | 0 | Print |
| 09/21/2019 | Ethics from the Trenches for Law Firms | On Demand Webcast | 3 | 3 | Print |
| 09/21/2019 | 50 Points of Law—Criminal Law: Major Developments & Traps for the Unwary | On Demand Webcast | 1 | 0 | Print |
| 09/18/2019 | Criminal Law Ethical Landmines | On Demand Webcast | 3 | 3 | Print |
| 09/18/2019 | Criminal Law Ethical Landmines | MP3 Download | 3 | 3 | Print |



**Massachusetts Continuing Legal Education, Inc.**
Ten Winter Place, Boston, MA 02108-4751
800-966-6253 I Fax 617-482-9498 I www.mcle.org

# Certificate of CLE On-Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

| | |
|---|---|
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **The Progressive Appellate Prosecutor** |
| Program Number: | **2200265WBA** |
| Program Location: | **On Demand Webcast** |
| Original Program Date: | **1/23/2020** Start Time: **2:00PM** End Time: **5:00PM** |
| Date Viewed: | **02/29/2020** |

This program is eligible for a total of up to:     **3 CLE Credits**

Of this total:     **0 Ethics Credits**

Note: Business meetings, lunch breaks, receptions, etc., are not included in the computation of the credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched the on-demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

_____

Attorney Name                                    Membership, Registation or Supreme Court Number

_____

Attorney Signature                                Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically at the conclusion of the on-demand webcast program indicated above. If the attendee opted to answer proof of attendance prompts, a transcript of each prompt reply appears on the following page.

Danielle L. Simmons, Esq.
Director of Programs



**Massachusetts Continuing Legal Education, Inc.**
Ten Winter Place, Boston, MA 02108-4751
800-966-6253 I Fax 617-482-9498 I www.mcle.org

# Proof of Webcast Attendance

| | |
|---|---|
| Attendee Name: | **Robert George** |
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **The Progressive Appellate Prosecutor** |
| Program Number: | **2200265WBA** |
| Program Location: | **On Demand Webcast** |

Original Program Date: **1/23/2020**     Start Time: **2:00PM**     End Time: **5:00PM**

Date Viewed: **02/29/2020**

From the start of this on-demand webcast program, there were 3 total prompts to affirm continued attendance. The time at which each prompt was answered is recorded below.

| Action | Presentation | Video Time | Timestamp |
|---|---|---|---|
| Attendance prompt Answered | 1/23/2020 - The Progressive Appellate Prosecutor | 00:37:09 | February 16, 2020, 7:32 pm |
| Attendance prompt Answered | 1/23/2020 - The Progressive Appellate Prosecutor | 01:14:20 | February 16, 2020, 8:55 pm |
| Attendance prompt Answered | 1/23/2020 - The Progressive Appellate Prosecutor | 01:51:29 | February 29, 2020, 6:24 am |

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Criminal Law Ethical Landmines**

Program Number: **2180013WBA**

Program Location: **On Demand Webcast**

Original Program Date: **10/19/2017**   Start Time: **9:00 AM**   End Time: **12:00 PM**

Use date: **09/18/2019**

---

This program is eligible for up to a total of:   **3.0**   **CLE credits**

Of this total:   **3.0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

---

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.


Attorney Name                          Membership, Registration or Supreme Court Number


Attorney Signature                     Date


State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

---

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

| | |
|---|---|
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **50 Points of Law—Criminal Law: Major Developments & Traps for the Unwary** |
| Program Number: | **2190628WBA** |
| Program Location: | **On Demand Webcast** |
| Original Program Date: | **06/07/2019** Start Time: **2:00 PM** End Time: **3:00 PM** |
| Use date: | **09/21/2019** |

This program is eligible for up to a total of:   **1.0**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

**TO BE COMPLETED BY ATTORNEY:**

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

_____

Attorney Name

Membership, Registration or Supreme Court Number

_____

Attorney Signature

Date

_____

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Ethics from the Trenches for Law Firms**

Program Number: **2170136WBA**

Program Location: **On Demand Webcast**

Original Program Date: **02/08/2017**    Start Time: **2:00 PM**    End Time: **5:00 PM**

Use date: **09/21/2019**

This program is eligible for up to a total of:    **3.0**    **CLE credits**

Of this total:    **3.0**    **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

_____

Attorney Name

Membership, Registration or Supreme Court Number

_____

Attorney Signature

Date

_____

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **DNA & Criminal Forensics**

Program Number: **2190134WBA**

Program Location: **On Demand Webcast**

Original Program Date: **03/05/2019**  Start Time: **1:00 PM**  End Time: **5:00 PM**

Use date: **09/24/2019**

This program is eligible for up to a total of: **4.0** CLE credits

Of this total: **0** Ethics credits

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim _____ CLE credit hours, including _____ Ethics credits.

Attorney Name _____

Membership, Registration or Supreme Court Number _____

Attorney Signature _____

Date _____

State where credits are to be registered _____

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Crime Scene Investigation**

Program Number: **2190058WBA**

Program Location: **On Demand Webcast**

Original Program Date: **10/26/2018**   Start Time: **2:00 PM**   End Time: **5:00 PM**

Use date: **09/25/2019**

This program is eligible for up to a total of:   **3.0**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

Attorney Name          Membership, Registration or Supreme Court Number

Attorney Signature          Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **When New Technology Becomes Evidence**

Program Number: **2190274WBA**

Program Location: **On Demand Webcast**

Original Program Date: **07/29/2019**   Start Time: **2:00 PM**   End Time: **5:00 PM**

Use date: **10/10/2019**

---

This program is eligible for up to a total of: **3.0** **CLE credits**

Of this total: **0** **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

---

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.


Attorney Name                         Membership, Registration or Supreme Court Number


Attorney Signature                    Date


State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

---

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

| | |
|---|---|
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **New Developments in Search & Seizure Law** |
| Program Number: | **2190017WBA** |
| Program Location: | **On Demand Webcast** |

Original Program Date: **09/26/2018**   Start Time: **2:00 PM**   End Time: **5:00 PM**

Use date: **11/09/2019**

This program is eligible for up to a total of:   **3.0**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

Attorney Name

Membership, Registration or Supreme Court Number

Attorney Signature

Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

| | |
|---|---|
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **Massachusetts Auto Stops 2019** |
| Program Number: | **2190312WBA** |
| Program Location: | **On Demand Webcast** |

Original Program Date: **06/28/2019**   Start Time: **2:00 PM**   End Time: **5:00 PM**

Use date: **11/11/2019**

This program is eligible for up to a total of:    **3.0**    **CLE credits**

Of this total:    **0**    **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

| | |
|---|---|
| _____ | _____ |
| Attorney Name | Membership, Registration or Supreme Court Number |
| _____ | _____ |
| Attorney Signature | Date |

_____

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Warrant & Warrantless Search & Seizure**

Program Number: **2170010WBA**

Program Location: **On Demand Webcast**

Original Program Date: **09/20/2016**   Start Time: **2:00 PM**   End Time: **5:00 PM**

Use date: **11/11/2019**

This program is eligible for up to a total of:   **3.0**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

Attorney Name                     Membership, Registration or Supreme Court Number

Attorney Signature                Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

| | |
|---|---|
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **c. 211, §3 Petitions & Interlocutory Appeals for Criminal Law: The 60-Minute Lawyer** |
| Program Number: | **2190207WBA** |
| Program Location: | **On Demand Webcast** |
| Original Program Date: | **03/26/2019**   Start Time: **2:00 PM**   End Time: **3:00 PM** |
| Use date: | **11/12/2019** |

This program is eligible for up to a total of:   **1.0**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

_____
Attorney Name

Membership, Registration or Supreme Court Number

_____
Attorney Signature

Date

_____
State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **20th Annual Criminal Law Conference 2019**

Program Number: **2200008WBA**

Program Location: **On Demand Webcast**

Original Program Date: **10/04/2019**   Start Time: **8:30 AM**   End Time: **4:30 PM**

Use date: **12/01/2019**

This program is eligible for up to a total of:   **6.5**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

_____

Attorney Name

Membership, Registration or Supreme Court Number

_____

Attorney Signature                Date

_____

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Cutting Edge Discovery Techniques in Criminal Cases**

Program Number: **2170448WBA**

Program Location: **On Demand Webcast**

Original Program Date: **07/18/2017**  Start Time: **2:00 PM**  End Time: **5:00 PM**

Use date: **12/01/2019**

This program is eligible for up to a total of:  **3.0**  **CLE credits**

Of this total:  **0**  **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

Attorney Name

Membership, Registration or Supreme Court Number

Attorney Signature

Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Prosecuting & Defending Homicide Cases**

Program Number: **2190132WBA**

Program Location: **On Demand Webcast**

Original Program Date: **04/12/2019**   Start Time: **9:30 AM**   End Time: **4:30 PM**

Use date: **12/17/2019**

This program is eligible for up to a total of: **6.0** **CLE credits**

Of this total: **0** **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

Attorney Name

Membership, Registration or Supreme Court Number

Attorney Signature

Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **Criminal Responsibility, Competency & Diminished Capacity**

Program Number: **2180093WBA**

Program Location: **On Demand Webcast**

Original Program Date: **04/11/2018**   Start Time: **2:00 PM**   End Time: **5:00 PM**

Use date: **12/18/2019**

This program is eligible for up to a total of:   **3.0**   **CLE credits**

Of this total:   **0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

Attorney Name

Membership, Registration or Supreme Court Number

Attorney Signature

Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.

# Certificate of CLE On Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

Sponsor: **Massachusetts Continuing Legal Education, Inc.**

Program Title: **How to Make Money & Stay Out of Trouble**

Program Number: **2200027WBA**

Program Location: **On Demand Webcast**

Original Program Date: **12/16/2019**   Start Time: **9:30 AM**   End Time: **4:30 PM**

Use date: **01/10/2020**

This program is eligible for up to a total of:   **6.0**   **CLE credits**

Of this total:   **6.0**   **Ethics credits**

**Note:** Business meetings, lunch breaks, receptions, etc., are not included in the computation of credit.

## TO BE COMPLETED BY ATTORNEY:

By signing below, I certify that I watched/listened to the on demand program described above and am entitled to claim

_____ CLE credit hours, including _____ Ethics credits.

_____
Attorney Name

_____
Membership, Registration or Supreme Court Number

_____
Attorney Signature

_____
Date

_____
State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically through the MCLE website. Eligible credits are based on purchase and/or access records for the program listed above.



**MCLE**
NEW ENGLAND
Keep raising the bar.*

**Massachusetts Continuing Legal Education, Inc.**
Ten Winter Place, Boston, MA 02108-4751
800-966-6253 I Fax 617-482-9498 I www.mcle.org

# Certificate of CLE On-Demand Activity

This certificate should be filed with the appropriate MCLE Board(s) or Commission(s) within 30 days of activity.

| | |
|---|---|
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **Cultivating Referrals & Developing Your Network** |
| Program Number: | **2190172WBA** |
| Program Location: | **On Demand Webcast** |
| Original Program Date: | **4/9/2019**   Start Time: **1:30PM**   End Time: **4:30PM** |
| Date Viewed: | **01/26/2020** |

This program is eligible for a total of up to:      **3 CLE Credits**

Of this total:      **0 Ethics Credits**

Note: Business meetings, lunch breaks, receptions, etc., are not included in the computation of the credit.

**TO BE COMPLETED BY ATTORNEY:**

By signing below, I certify that I watched the on-demand program described above and am entitled to claim
_____ CLE credit hours, including _____ Ethics credits.

Attorney Name                                    Membership, Registation or Supreme Court Number

Attorney Signature                               Date

State where credits are to be registered

**Note:** Complete a certificate for each state in which you are required to file. Please confirm jurisdictional reporting requirements with your state regulator. Although MCLE does not pursue state-based credit, our programs are regularly approved in many jurisdictions. It is the responsibility of the individual attorney to submit the information and certifications to their respective state regulators.

This certificate was generated electronically at the conclusion of the on-demand webcast program indicated above. If the attendee opted to answer proof of attendance prompts, a transcript of each prompt reply appears on the following page.

*Danielle L. Simmons*

Danielle L. Simmons, Esq.



**Massachusetts Continuing Legal Education, Inc.**
Ten Winter Place, Boston, MA 02108-4751
800-966-6253 I Fax 617-482-9498 I www.mcle.org

# Proof of Webcast Attendance

| | |
|---|---|
| Attendee Name: | **Robert George** |
| Sponsor: | **Massachusetts Continuing Legal Education, Inc.** |
| Program Title: | **Cultivating Referrals & Developing Your Network** |
| Program Number: | **2190172WBA** |
| Program Location: | **On Demand Webcast** |
| Original Program Date: **4/9/2019** | Start Time: **1:30PM**     End Time: **4:30PM** |
| Date Viewed: | **01/26/2020** |

From the start of this on-demand webcast program, there were 3 total prompts to affirm continued attendance. The time at which each prompt was answered is recorded below.

| Action | Presentation | Video Time | Timestamp |
|---|---|---|---|
| Attendence prompt Answered | 4/9/2019 - Cultivating Referrals & Developing Your Network | 00:36:12 | January 26, 2020, 12:45 pm |
| Attendence prompt Answered | 4/9/2019 - Cultivating Referrals & Developing Your Network | 01:12:20 | January 26, 2020, 1:21 pm |
| Attendence prompt Answered | 4/9/2019 - Cultivating Referrals & Developing Your Network | 01:48:30 | January 26, 2020, 2:15 pm |



**MWI**
Find your solution

# CERTIFICATE OF COMPLETION

*Presented to:*

## Robert George

*has successfully completed*

**M W I's FORTY-HOUR MEDIATION TRAINING PROGRAM**

*September 17-21, 2018 - Boston, Massachusetts*

Charles P. Doran, *Executive Director*
*MWI*



F&I LEGAL & ETHICAL STANDARDS
CERTIFICATION

Robert George

HAS SATISFACTORILY COMPLETED ALL REQUIRED COURSE WORK FOR THE

F&I LEGAL AND ETHICAL STANDARDS CERTIFICATION

PRESENTED ON THIS DAY: 4/18/2018

JUSTINA DAVIS
ASSISTANT VICE PRESIDENT OF THE
PERFORMANCE DEVELOPMENT CENTER

PERFORMANCE
DEVELOPMENT
CENTER

JM&A
GROUP



**Certificate** *of* **TRAINING**

This hereby certifies that

**ROBERT GEORGE**

has completed the Cape Cod Literacy Council and
the Commonwealth Campaign's HiSET/ABE/
ESOL Volunteer Tutor Training.

10.4.17 — *Kathryn J. Carpenter*
Date

Kathryn Carpenter
Executive Director
Cape Cod Literacy Council

Cape Cod
Literacy
Council

P.O. Box 550
319 Main Street
Hyannis, MA 02601
508-771-0211

www.capecodliteracycouncil.org



# Achievement Award

R. George

Is Presented this Certificate of Achievement for Attaining Completion of the FPC Schuylkill Nutrition Course.

S. Manbeck, Recreation Specialist



**Certificate of Completion**

This certifies that

**ROBERT GEORGE**

Has satisfactorily completed

*Drug Abuse Education*

on the 18th day of March, 2014

A. Frederick

A. Frederick, Drug Treatment Specialist

FPC SCHUYLKILL

# Certificate of Completion

presented to:

## Robert George

For successful completion of the

## Horticulture Class

December 2013



L. Heiser, Instructor
FCI Schuylkill





# Certificate of Completion

## ROBERT A GEORGE

is to be commended for demonstrating knowledge and skill in the technical area of

Horticulture - Olericulture and Pomology

on December 09, 2013

John C. Foster Ph.D.
President/CEO
NOCTI




Association for Career
and Technical Education

ACTE
www.acteonline.org

*The following organization recognizes the value and credibility of third party assessment when measuring student competence. This individual is to be commended for their willingness to demonstrate newly acquired knowledge and skills.*

# VOCATIONAL TRAINING PROGRAM
# FCI SCHUYLKILL EDUCATION DEPT
# HORTICULTURE

## TRANSCRIPT

STUDENT NAME : Robert George

CLASS: Start - May 30, 2013          End - December 11, 2013

FINAL AVERAGE: 94 %

SCORING:

PRE-TEST: 50 %

POST-TEST: 98 %

INDIVIDUAL UNITS:

| | |
|---|---|
| Basic Botany | 81 % |
| Climate and the Garden | 100 % |
| Soils and Fertilizers | 82 % |
| Principles of Propagation | 92 % |
| Tools and Equipment | 100 % |
| Greenhouses and Frames | 96 % |
| Lawns | 95 % |
| Plant Problems | 100 % |
| The Vegetable Garden | 98 % |
| The Fruit Garden | 98 % |

EDUCATION DEPARTMENT
FCI SCHUYLKILL
PO BOX 700
MINERSVILLE, PA 17954 0700


Version: 1.4-1040

Task Linked
Individual Report

FCI - Schuykill

Interstate 81 & 901 West
Minersville, PA 17954

Site:  FCI - Schuykill - 5084
Test Date:  12/09/2013

Level:  Post-Secondary
Type:  Post-Test

Participant Name:  GEORGE ROBERT A

## Horticulture - Olericulture and Pomology 3249 v1

### Multiple Choice Assessment
### Items Correct

| Duty | | Task Description | # Items Possible per Task | Average Correct by Group | Number Correct |
|---|---|---|---|---|---|
| General Knowledge | 1 | Describe care of plants | 4 | 2.4 | 1 |
| | 2 | Identify parts of a plant and their purpose/friction | 5 | 3.8 | 3 |
| | 3 | List olericulture safety standards | 3 | 2.6 | 2 |
| | 4 | Demonstrate knowledge of plant classification | 5 | 4.7 | 4 |
| | 5 | Define olericulture and pomology terminology | 5 | 3.5 | 3 |
| | 6 | Describe career opportunities and development | 3 | 3.0 | 3 |
| Pest Management | 7 | Identify pests and diseases | 7 | 4.0 | 5 |
| | 8 | Demonstrate knowledge of pest management safety | 6 | 4.5 | 4 |
| | 9 | Identify characteristics and anatomy of insects and pests | 3 | 1.9 | 1 |
| | 10 | Identify and control weeds | 4 | 3.7 | 2 |
| | 11 | Control pests | 2 | 1.5 | 2 |
| Fundamentals of Irrigation | 12 | Describe characteristics of irrigation lines | 3 | 2.3 | 2 |
| | 13 | Describe the function of water control devices | 3 | 2.6 | 1 |
| | 14 | Identify types of watering techniques | 3 | 2.4 | 3 |
| Basic Greenhouse Skills | 15 | Describe methods of propagation | 9 | 6.4 | 5 |
| | 16 | Identify greenhouse structures | 4 | 1.5 | 1 |
| | 17 | Explain environmental management of greenhouse | 4 | 2.6 | 2 |
| Horticulture - Business and Retailing | 18 | Compute cost of product | 3 | 2.7 | 3 |
| | 19 | Determin mark-up and product | 3 | 2.0 | 3 |
| | 20 | Measure for quantity needed | 4 | 2.4 | 3 |
| | 21 | Identify market and marketing strategies | 3 | 1.3 | 1 |
| | 22 | Demonstrate salesmanship techniques | 3 | 2.5 | 3 |
| | 23 | Maintain business records | 3 | 2.8 | 3 |
| Vegetable and Fruit Production | 24 | Describe hydroponic growing and production techniques | 3 | 2.1 | 0 |
| | 25 | Describe organic and sustainable growing and production techniques | 6 | 3.1 | 2 |
| Soils | 26 | Identify pH soil regulation techniques | 4 | 1.6 | 1 |
| | 27 | Identify types of soils and fertilizers | 7 | 5.2 | 3 |
| | 28 | Explain soil environment factors | 3 | 2.5 | 2 |
| Seeds and propagation | 29 | Describe proper care of vegetable seeds | 3 | 2.2 | 2 |
| | 30 | Differentiate between sexual and asexual propagation | 4 | 2.2 | 2 |
| | 31 | Identify vegetable crop varieties | 2 | 1.4 | 1 |

# Certificate of Completion

presented to:

## Robert George

For successful completion of the

## Landscaping Class

February 2015





L. Heiser, Instructor
FPC Schuylkill



Al Wile
FCI - Schuylkill
Interstate 81 & 901 West
Minersville, PA 17954

## Individual Scores

Participant Name: GEORGE ROBERT A.

Site: FCI - Schuylkill  - 5084

Test Date: 02/23/2015

Participant ID: 012462313

Level: Post-Secondary

Type: Post-Test

| | Horticulture - Landscaping Option - 3149 v1 | | | | | | |
|---|---|---|---|---|---|---|---|

| | **Written - Cognitive** | | | | | | |
|---|---|---|---|---|---|---|---|
| Standard # | Standard Description | Post-Test | Group | Site (Cumulative) | State | Nation |
| 1 | General Knowledge | 79.5 | 84.6 | 75.2 | 74.8 | 77.1 |
| 2 | Pest Management | 68.4 | 75.4 | 72.7 | 73.1 | 76.4 |
| 3 | Fundamentals of Irrigation | 87.5 | 83.3 | 73.5 | 72.9 | 77.1 |
| 4 | Basic Nursery/Greenhouse Skills | 62.5 | 72.9 | 62.1 | 61.7 | 62.1 |
| 5 | Horticulture Business and Retailing | 68.8 | 81.3 | 72.7 | 71.7 | 72.5 |
| 6 | Landscape - Design | 80.0 | 85.0 | 77.4 | 77.5 | 80.0 |
| 7 | Landscape - Construction | 62.5 | 64.6 | 65.8 | 65.0 | 65.6 |
| 8 | Landscape and Turf - Maintenance | 61.5 | 66.7 | 70.0 | 69.7 | 72.3 |
| 9 | Arboriculture | 66.7 | 74.1 | 67.2 | 67.4 | 66.5 |
| | Total | 71.7 | 78.0 | 71.6 | 71.3 | 73.1 |





# NOCTI Certificate of Completion

## ROBERT A GEORGE

is to be commended for demonstrating knowledge and skill in the technical area of

Horticulture – Landscaping Option

on February 23, 2015

John O Foster Ph.D.
President/CEO
NOCTI

*The following organization recognizes the value and credibility of third party assessment when measuring student competence. This individual is to be commended for their willingness to demonstrate newly acquired knowledge and skills.*



Association for Career
and Technical Education
www.acteonline.org

PEED                                                                    Page 1 of 1

```
   SCHH6          *        INMATE EDUCATION DATA      *      04-02-2015
   PAGE 001       *               TRANSCRIPT          *      15:01:36

   REGISTER NO: 93787-038     NAME..: GEORGE          FUNC: DIS
   FORMAT.....: TRANSCRIPT    RSP OF: SCH-SCHUYLKILL FCI


   -------------------------  EDUCATION INFORMATION  -------------------------
   FACL ASSIGNMENT DESCRIPTION             START DATE/TIME STOP DATE/TIME
   SCH  ESL HAS    ENGLISH PROFICIENT      01-15-2013 1327 CURRENT
   SCH  GED HAS    COMPLETED GED OR HS DIPLOMA  01-15-2013 1327 CURRENT


   -------------------------  EDUCATION COURSES  -------------------------
   SUB-FACL    DESCRIPTION          START DATE  STOP DATE EVNT AC LV  HRS
   SCH SCP     CIVIL WAR            08-12-2014 09-30-2014  P   C  P     8
   SCH SCP     BASIC NUTRITION - RPP-1   12-04-2014 02-16-2015  P   C  P     8
   SCH SCP     LANDSCAPING - RPP-2  07-07-2014 02-11-2015  P   C  M   174
   SCH SCP     FPC INFO FAIR - RPP 4  12-01-2014 12-01-2014  P   C  P     2
   SCH SCP     DRUG EDUCATION       01-16-2014 03-19-2014  P   C  P    14
   SCH SCP     FPC JOB FAIR RPP-2   03-11-2014 03-14-2014  P   C  P     4
   SCH SCP     FPC-PARENTNG RPP-6   12-17-2013 02-04-2014  P   C  P    16
   SCH SCP     FINANCIAL EDUCATION RPP-3  11-20-2013 02-04-2014  P   C  P    16
   SCH SCP     HORTICULTURE  RPP-2  05-30-2013 12-11-2013  P   C  M   153

   G0002      MORE PAGES TO FOLLOW . . .
```

PEED                                                    Page 1 of 1

```
    SCHH6          *        INMATE EDUCATION DATA      *      04-02-2015
    PAGE 002 OF 002 *             TRANSCRIPT           *      15:01:36

    REGISTER NO: 93787-038    NAME..: GEORGE          FUNC: DIS
    FORMAT.....: TRANSCRIPT   RSP OF: SCH-SCHUYLKILL FCI

    ------------------------- EDUCATION COURSES ----------------------------
    SUB-FACL    DESCRIPTION              START DATE  STOP DATE EVNT AC LV  HRS
    SCH SCP     FPC INFOFAIR             11-19-2013 11-22-2013  P  C  P     2
    SCH SCP     FPC - LIVING WELL - RPP-6 09-25-2013 11-20-2013 P  C  P    16
    SCH SCP     JOB HUNTER RPP-2         09-25-2013 11-20-2013  P  C  P    16
    SCH SCP     VIETNAM WAR              02-12-2012 06-24-2013  P  C  P    12
    SCH SCP     FUNCTIONAL RESUME   RPP-2 03-13-2013 05-29-2013 P  C  P    16
    SCH SCP     PERSONAL FINANCE RPP-3   03-13-2013 05-29-2013  P  C  P    16
    SCH SCP     BUSINESS SKILLS          01-28-2013 04-15-2013  P  C  P     9
```

```
    G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

**4**

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LEBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS
ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

June 15, 2020
<u>Via email</u>

Richard M. Page, Jr.
Executive Director
Boston Bar Association
16 Beacon Street
Boston, MA 02108

RE:          In the Matter of Robert A. George Petition for Reinstatement
             <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Mr. Page:

The Supreme Judicial Court has referred to the Board of Bar Overseers for hearing and report the Petition of Robert A. George, for reinstatement as an attorney in this Commonwealth.  I have enclosed a copy of his Petition as well as other materials for your reference.

Under the provisions of Supreme Judicial Court Rule 4:01, Section 18(5), the Petitioner has the burden of demonstrating that he or she has the moral qualifications, competence, and learning in the law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest.

Please inform me or General Counsel Joseph S. Berman if you wish to be heard on this Petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
      Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LeBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS
ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

June 15, 2020

Juliana Rice, Esq. – **VIA E-MAIL**
General Counsel
Massachusetts Attorney General's Office
One Ashburton Place, 20th Floor
Boston, MA  02108

RE:   In the Matter of Robert A. George Petition for Reinstatement
      <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Attorney Rice:

The Supreme Judicial Court has referred to the Board of Bar Overseers for hearing and report the Petition of Robert A. George, for reinstatement as an attorney in this Commonwealth.  I have enclosed a copy of his Petition as well as other materials for your reference.

Under the provisions of Supreme Judicial Court Rule 4:01, Section 18(5), the Petitioner has the burden of demonstrating that he or she has the moral qualifications, competence, and learning in the law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest.

Please inform me or General Counsel Joseph S. Berman if you wish to be heard on this Petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
     Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LEBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS
ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

June 15, 2020
**VIA E-MAIL**

Peter Wittenborg, Esq.
REBA
295 Devonshire Street, Sixth Floor
Boston, MA   02110-1266

RE:        In the Matter of Robert A. George Petition for Reinstatement
           <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Mr. Wittenborg:

    The Supreme Judicial Court has referred to the Board of Bar Overseers for hearing and report the Petition of Robert A. George, for reinstatement as an attorney in this Commonwealth.  I have enclosed a copy of his Petition as well as other materials for your reference.

    Under the provisions of Supreme Judicial Court Rule 4:01, Section 18(5), the Petitioner has the burden of demonstrating that he or she has the moral qualifications, competence, and learning in the law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest.

    Please inform me or General Counsel Joseph S. Berman if you wish to be heard on this Petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
        Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LEBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS
ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

June 4, 2020
<u>Via email</u>

Barnstable County Bar Association
3180 Main Street
Barnstable, MA  02630

RE:   In the Matter of Robert A. George Petition for Reinstatement
      <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Bar Association:

The Supreme Judicial Court has referred to the Board of Bar Overseers for hearing and report the Petition of Robert A. George for reinstatement as an attorney in this Commonwealth.  I have enclosed a copy of his Petition as well as other materials for your reference.

Under the provisions of Supreme Judicial Court Rule 4:01, Section 18(5), the Petitioner has the burden of demonstrating that he or she has the moral qualifications, competence, and learning in the law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest.

Please inform me or General Counsel Joseph S. Berman if you wish to be heard on this petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
     Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LEBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN

FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS

ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

Martin W. Healy, Esq.
Chief Operating Officer
Massachusetts Bar Association
20 West Street
Boston, MA  02111

RE:   In the Matter of Robert A. George Petition for Reinstatement
      <u>Supreme Judicial Court No. BD-2011-050</u>

Dear Mr. Healy:

The Supreme Judicial Court has referred to the Board of Bar Overseers for hearing and report the Petition of Robert A. George, for reinstatement as an attorney in this Commonwealth.  I have enclosed a copy of his Petition for Reinstatement.

Under the provisions of Supreme Judicial Court Rule 4:01, Section 18(5), the Petitioner has the burden of demonstrating that he or she has the moral qualifications, competence, and learning in the law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest.

Please inform me or General Counsel Joseph S. Berman if you wish to be heard on this Petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
     Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS
*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

| | | |
|---|---|---|
| BOARD OF BAR OVERSEERS | 617-728-8700 | GENERAL COUNSEL |
| JEFFREY R. MARTIN, CHAIR | Fax: 617-482-8000 | JOSEPH S. BERMAN |
| MARIANNE C. LEBLANC, VICE CHAIR | | |
| PAULA M. BAGGER | massbbo.org | ASSISTANT GENERAL COUNSEL |
| ELISABETH O. daSILVA | | PAUL M. REZENDES |
| APRIL C. ENGLISH | | JEFFREY D. WOOLF |
| FRANK E. HILL, III | | MERLE R. HASS |
| MARSHA V. KAZAROSIAN | | |
| FRANCIS P. KEOUGH | | LEGAL PROGRAM MANAGER |
| DAVID B. KRIEGER, M.D. | | MICHELLE YU |
| ELIZABETH RODRIGUEZ-ROSS | | |
| ERNEST L. SARASON, JR. | | EXECUTIVE DIRECTOR |
| A. CLARISSA WRIGHT | | GREGORY J. WENGER |

June 15, 2020

Andrew E. Lelling, Esq.
United States Attorney
U.S. Courthouse, Suite 9200
One Courthouse Way
Boston, MA 02210

RE:        In the Matter of Robert A. George Petition for Reinstatement
                Supreme Judicial Court No. BD-2012-050

Dear Attorney Lelling:

The Supreme Judicial Court has referred to the Board of Bar Overseers for hearing and report the Petition of Robert A. George, for reinstatement as an attorney in this Commonwealth. I have enclosed a copy of his Petition as well as other materials for your reference.

Under the provisions of Supreme Judicial Court Rule 4:01, Section 18(5), the Petitioner has the burden of demonstrating that he or she has the moral qualifications, competence, and learning in the law required for admission to practice law in this Commonwealth, and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar, the administration of justice, or the public interest.

Please inform me or General Counsel Joseph S. Berman if you wish to be heard on this Petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc: Scott Garland, Esq., Assistant U.S. Attorney, Esq.
     Dorothy Anderson, Esq.
     Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

| BOARD OF BAR OVERSEERS | 617-728-8700 | GENERAL COUNSEL |
| JEFFREY R. MARTIN, CHAIR | Fax: 617-482-8000 | JOSEPH S. BERMAN |
| MARIANNE C. LEBLANC, VICE CHAIR | | |
| PAULA M. BAGGER | massbbo.org | ASSISTANT GENERAL COUNSEL |
| ELISABETH O. daSILVA | | PAUL M. REZENDES |
| APRIL C. ENGLISH | | JEFFREY D. WOOLF |
| FRANK E. HILL, III | | MERLE R. HASS |
| MARSHA V. KAZAROSIAN | | |
| FRANCIS P. KEOUGH | | LEGAL PROGRAM MANAGER |
| DAVID B. KRIEGER, M.D. | | MICHELLE YU |
| ELIZABETH RODRIGUEZ-ROSS | | |
| ERNEST L. SARASON, JR. | | EXECUTIVE DIRECTOR |
| A. CLARISSA WRIGHT | | GREGORY J. WENGER |

June 15, 2020
<u>Via email</u>

David Chenelle, Esq., Chair
Clients' Security Board
99 High Street
Boston, MA 02110

RE:        In the Matter of  Robert A. George
                Petition for Reinstatement
                <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Attorney Chenelle:

Enclosed please find a copy of the above-referenced Petition for Reinstatement which was recently filed with the Board of Bar Overseers.

Please advise me or General Counsel Joseph S. Berman if the Clients' Security Board wishes to be heard on this Petition.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
     Thomas F. Maffei, Esq.

# BOARD OF BAR OVERSEERS

*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

| | | |
|---|---|---|
| BOARD OF BAR OVERSEERS | 617-728-8700 | GENERAL COUNSEL |
| JEFFREY R. MARTIN, CHAIR | Fax: 617-482-8000 | JOSEPH S. BERMAN |
| MARIANNE C. LEBLANC, VICE CHAIR | | |
| PAULA M. BAGGER | massbbo.org | ASSISTANT GENERAL COUNSEL |
| ELISABETH O. daSILVA | | PAUL M. REZENDES |
| APRIL C. ENGLISH | | JEFFREY D. WOOLF |
| FRANK E. HILL, III | | MERLE R. HASS |
| MARSHA V. KAZAROSIAN | | |
| FRANCIS P. KEOUGH | | LEGAL PROGRAM MANAGER |
| DAVID B. KRIEGER, M.D. | | MICHELLE YU |
| ELIZABETH RODRIGUEZ-ROSS | | |
| ERNEST L. SARASON, JR. | | EXECUTIVE DIRECTOR |
| A. CLARISSA WRIGHT | | GREGORY J. WENGER |

June 15, 2020

<u>Via Email</u>
Ms. Henriette Campagne
Massachusetts Lawyers Weekly
10 Milk Street, Suite 1000
Boston, MA 02108-4649

RE:  In the Matter of Robert A. George
     Petition for Reinstatement
     <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Ms. Campagne:

Enclosed please find the Petition for Reinstatement under Supreme Judicial Court Rule 4:01, Section 18(4), as referenced above.

I would appreciate it if you would publish this Petition in the next issue of <u>Lawyers Weekly</u> and forward a copy of the proof sheets to my attention.

Sincerely yours,

*June Risk*

June D. Risk
Legal Administrative Assistant

/jdr
enclosures (addressee only)
cc:  Dorothy Anderson, Esq.
     Thomas A. Maffei, Esq.

**5**

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

SUFFOLK, SS.                                                    No. BD-2012-050

IN RE: ROBERT ALBERT GEORGE
Petitioner

**BAR COUNSEL'S MOTION TO CONTINUE
REINSTATEMENT HEARING**

Bar counsel requests a continuance of the hearing date in this matter from September 11 to any date later in September or October.  Assistant bar counsel has scheduled a family vacation for September 2 through 11 and has already rented a cottage for that time period.

RESPECTFULLY SUBMITTED,

Rodney S. Dowell
Bar Counsel

*Dorothy Anderson*
By _____
Dorothy Anderson
First Assistant Bar Counsel
99 High Street
Boston, MA 02110
(617) 728-8750
d.anderson@massbbo.org

Dated:  June 17, 2020

CERTIFICATE OF SERVICE: I hereby certify that I have this day caused to be served a copy of this motion by email to respondent's counsel, Thomas F. Maffei, Esq., tmaffei@sherin.com.

*Dorothy Anderson*
_____
Dorothy Anderson
First Assistant Bar Counsel

**6**

| | |
|---|---|
| **From:** | Thomas F. Maffei |
| **To:** | Jeffrey D. Woolf |
| **Cc:** | Dorothy Anderson; June Risk; Anne T. Brown |
| **Subject:** | Re: In Re: Robert Albert George (mtn to continue) |
| **Date:** | Wednesday, June 17, 2020 3:23:36 PM |

Counsel:

I have no objection to the continuance. Before a new date is set, does it make sense for counsel to provide a couple of dates when counsel and my client are available

Tom
617 930 0989 (cell)


On Jun 17, 2020, at 12:49 PM, Jeffrey D. Woolf <j.woolf@massbbo.org> wrote:


Dear counsel,
I hope you and your families are all well.
As you know, I am the assistant general counsel assigned to this matter.
If there is no opposition to bar counsel's motion, then it can be allowed right away.  Otherwise, we have to hold it for 7 days, per BBO Rules § 3.18(a)(4).
Please advise.
Thanks very much.
Regards,
Jeffrey

**_Jeffrey D. Woolf_**
**_Assistant General Counsel_**
**_Board of Bar Overseers_**
**_99 High Street, Second Floor_**
**_Boston, MA 02110_**
**_(617)728-8709_**
j.woolf@massbbo.org


_____

**From:** Anne T. Brown <at.brown@massbbo.org>
**Sent:** Wednesday, June 17, 2020 12:43 PM

**To:** June Risk <j.risk@massbbo.org>
**Cc:** Jeffrey D. Woolf <j.woolf@massbbo.org>; tfmaffei@sherin.com
**Subject:** In Re: Robert Albert George


Dear Ms. Risk:

Attached please find bar counsel's motion to continue the hearing scheduled in this matter.

Thank you.

<< File: Motion to Continue Hrg.pdf >>
*Anne T. Brown*
*Office of the Bar Counsel*
*99 High Street*
*Boston, MA 02110*
*617-728-8752 (Direct)*
*at.brown@massbbo.org*
*www.massbbo.org*




Your message is ready to be sent with the following file or link attachments:

Motion to Continue Hrg.pdf


Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file attachments.  Check your e-mail security settings to determine how attachments are handled.

This e-mail and any attachments thereto are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail by error, please immediately notify me by return e-mail and permanently delete the original and any copy of this e-mail message or attachment and any printout thereof.

PRIVILEGED AND CONFIDENTIAL: The information contained in this electronic message and any attachments are confidential property

**7**

# CLIENTS' SECURITY BOARD
### *of the Supreme Judicial Court*
**99 HIGH STREET**
**BOSTON, MASSACHUSETTS 02110-2320**
**(617) 728-8700**
FAX: (617) 482-8000

**CLIENTS' SECURITY BOARD**
DAVID R. CHENELLE, *Chair*
REGINA SNOW MANDL, *Vice Chair*
STEVEN B. STEIN, *Treasurer*
GARY M. WEINER, *Secretary*
DAVID R. KERRIGAN
BRIAN D. BIXBY
SALLY R. GAGLINI

**GENERAL COUNSEL AND**
**EXECUTIVE DIRECTOR**
LINDA G. BAUER

**DEPUTY GENERAL COUNSEL**
ADAM M. LUTYNSKI

June 18, 2020

Ms. June D. Risk
Board of Bar Overseers
99 High Street
Boston, MA 02110

> Re:  In the Matter of Robert A. George
>      Petition for Reinstatement
>      <u>Supreme Judicial Court No. BD-2012-050</u>

Dear Ms. Risk:

Thank you for informing the Clients' Security Board that Robert A. George has filed a petition for reinstatement.

Please be advised that our records indicate that there was one claim filed with the Clients' Security Board by former clients of Mr. George. On June 18, 2015, the Clients' Security Board found a defalcation and awarded $80,300.00 to the claimants John and Lisa DeSantis. To date, Mr. George has not made any payments to the Clients' Security Board and the full amount of this award remains outstanding. Accordingly, the Clients' Security Board opposes Mr. George's petition for reinstatement.

Sincerely,

*Linda G. Bauer (ba)*

Linda G. Bauer
General Counsel and Executive Director

LGB/ba
Cc: Dorothy Anderson, Esq.
    Thomas F. Maffei, Esq.

8

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY

SUFFOLK, SS.                                         No. BD-2012-050

IN RE: ROBERT ALBERT GEORGE
Petitioner

**BAR COUNSEL'S MOTION TO CONTINUE
REINSTATEMENT HEARING**

Bar counsel requests a continuance of the hearing date in this matter from September 11 to any date later in September or October.  Assistant bar counsel has scheduled a family vacation for September 2 through 11 and has already rented a cottage for that time period.

RESPECTFULLY SUBMITTED,

Rodney S. Dowell
Bar Counsel

*Dorothy Anderson*
By _____
Dorothy Anderson
First Assistant Bar Counsel
99 High Street
Boston, MA 02110
(617) 728-8750
d.anderson@massbbo.org

Allowed 6/23/2020

Dated:  June 17, 2020

<u>CERTIFICATE OF SERVICE</u>: I hereby certify that I have this day caused to be served a copy of this motion by email to respondent's counsel, Thomas F. Maffei, Esq., tmaffei@sherin.com.

*Dorothy Anderson*
_____
Dorothy Anderson
First Assistant Bar Counsel

9

| | |
|---|---|
| **From:** | Thomas F. Maffei |
| **To:** | June Risk |
| **Cc:** | Dorothy Anderson |
| **Subject:** | RE: Robert A George |
| **Date:** | Thursday, June 25, 2020 3:22:12 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |

The respondent learned on June 24, by letter from the Client Security Board, that in 2015 there was award made to one of his former clients. Neither counsel nor the respondent was aware of any CSB proceeding.  The Respondent respectfully requests a short  continuance of the pre-hearing conference in order to permit counsel to investigate the matter.  Counsel is informed that it will not be able to access the CSB case file until the earliest Wednesday, July 1, 2020.

Accordingly, counsel requests that the pre-hearing conference be continued to a date beginning the week of July 13.  Assistant Bar Counsel Anderson has assented to the continuance.

Thank you.



Thomas F. Maffei  617.646.2220 tmaffei@sherin.com

---

**From:** June Risk [mailto:j.risk@massbbo.org]
**Sent:** Thursday, June 25, 2020 3:15 PM
**To:** Thomas F. Maffei
**Cc:** Dorothy Anderson
**Subject:** RE: Robert A George

Tom,
Could you send another email indicating your reason for asking for the continuance?  The hearing panel will want to know.
Thank you.

June D. Risk
Legal Administrative Assistant
Board of Bar Overseers
99 High Street
Boston, MA  02110
617-728-8706
j.risk@massbbo.org

---

**From:** Thomas F. Maffei <TFMaffei@sherin.com>
**Sent:** Thursday, June 25, 2020 3:09 PM
**To:** June Risk <j.risk@massbbo.org>
**Cc:** Dorothy Anderson <d.anderson@massbbo.org>
**Subject:** Robert A George

June,

I did hear from Dorothy who assents to my request to move the pre-hearing conference to a later date.  We are both available the week of July 13, if that is convenient for the panel.  Thank you.  Tom

**Subject:**   FW: Robert A George
**Date:**   Thursday, June 25, 2020 at 3:58:55 PM Eastern Daylight Time
**From:**   June Risk
**To:**   Paula M. Bagger, Esq
**Attachments:** image001.png, image002.png, image003.png

June D. Risk
Legal Administrative Assistant
Board of Bar Overseers
99 High Street
Boston, MA   02110
617-728-8706
j.risk@massbbo.org

**From:** Thomas F. Maffei <TFMaffei@sherin.com>
**Sent:** Thursday, June 25, 2020 3:22 PM
**To:** June Risk <j.risk@massbbo.org>
**Cc:** Dorothy Anderson <d.anderson@massbbo.org>
**Subject:** RE: Robert A George

The respondent learned on June 24, by letter from the Client Security Board, that in 2015 there was award made to one of his former clients.  Neither counsel nor the respondent was aware of any CSB proceeding. The Respondent respectfully requests a short  continuance of the pre-hearing conference in order to permit counsel to investigate the matter.  Counsel is informed that it will not be able to access the CSB case file until the earliest Wednesday, July 1, 2020.

Accordingly, counsel requests that the pre-hearing conference be continued to a date beginning the week of July 13.  Assistant Bar Counsel Anderson has assented to the continuance.

Thank you.

_Allowed 6/25/2020 Paula Bagger_

Thomas F. Maffei  617.646.2220 tmaffei@sherin.com

**10**

**COMMONWEALTH OF MASSACHUSETTS**

**BOARD OF BAR OVERSEERS**
**OF THE SUPREME JUDICIAL COURT**

_____

| | |
|---|---|
| In Re Robert A. George. Sr. | In re Application for Reinstatement as an Attorney at Law S.J.C. No. 2012-050 |

_____

## AMENDMENT TO PART I OF REINSTATEMENT PETITION QUESTIONNAIRE

This amendment to Answer 1(D) of the Reinstatement Petition Questionnaire Part I, filed with the Board on May 19, 2020 is prompted by information I recently received.

A year ago, I made public my intention to apply for reinstatement when I filed a motion with the SJC seeking permission to work as a paralegal, a motion to which Bar Counsel assented. The Single Justice allowed the motion on July 23, 2020. On May 19, 2020, I filed my petition for reinstatement. On Saturday, June 27, 2020, I received a copy of an objection to my reinstatement filed by the Client Security Board ("CSB"). That objection was based on a June 18, 2015 award. That objection was the first notice I ever received of such a CSB award. It appears that the fee award was based on a finding that I had not returned an unused retainer of $80, 300.00, although the award implies that I had committed a defalcation. The award was made to John and Lisa DeSantis, the parents of a former client, Gia DeSantis Cox ("Gia").

Not only did I not receive notice of the filing of the CSB claim, but I also did not receive notice of the hearing that resulted in the award or the award itself. The CSB sent letters on three separate occasions to an undeliverable address. Each letter was returned to the CSB by the postal service marked "Insufficient Address." The United States Post Office in East Dennis and South Dennis advised me that the zip code used on the letters is for a Post Office Box Mailing District. As addressed, those letters were never delivered to the street address but were instead stamped "Insufficient Address" at the Post Office branch upon receipt and immediately returned to the CSB. Those receipts are in the CSB's file.

The DeSantises filed their claim with the CSB on September 12, 2012. The CSB's first letter, which was returned to the CSB, was not sent out until May 15, 2015, almost three years after the DeSantises' filing. When the CSB received this claim in 2012, my bar discipline case at the BBO was still pending. I was represented by attorney Thomas J. Butters, at the BBO. My criminal case was also was pending; I was represented by Kevin J. Reddington and Robert M. Goldstein in that case. My counsel was not notified of the CSB filing and it appears that no attempt was made to contact me or anyone on my behalf. By the time the CSB sent their first letter to me, I was already at a federal correctional facility in Pennsylvania. While I was in

federal custody, the CSB sent two other letters, one concerning the hearing and the other about the award. Those letters were addressed to the same address that the postal service previously had informed the CSB was insufficient and non-deliverable.  The subsequent letters and the return receipts, marked "Insufficient Address," were in the CSB file.

The DeSantises' CSB claim stated that I had done "nothing" for their family and disputed the amount of my fee.  I assume that they told the CSB that my fee was too high, or was unearned and stolen from them.  In the two years that I represented Gia, the DeSantises never contested my fee, which was a flat amount of $50,000.00, and they never asked for an accounting or a refund.  Since I was released on October 6, 2015, I have not received any communication from the CSB.

The CSB objection states that I have made no payments toward the award and that I owe the Board $80,300.00. However, until two weeks ago, I had not received any notice, claim letter or demand from the CSB regarding payment of $80,300.00.  Since I had no notice of the CSB matter and no opportunity to counter their charges, the CSB made an award of $80,300.00, apparently finding that my services over two years were worth $25,000.00.  I have no idea how the CSB arrived at the amount of the award.  For example, I do not know if the CSB was presented with the docket in the criminal case, which would have disclosed the extensive history of the case and the court events.  I also do not know whether the DeSantises gave the CSB my fee agreement, although I assume not, because it was not included in the papers the CSB provided to my counsel.

The DeSantises were not truthful when they swore under oath that there was no fee agreement with me. They wrote the CSB that I had "some papers drawn up explaining that representation without a clear explanation of cost, generalizations and estimates were made."  I do not know whether anyone asked the claimants to provide the "papers" referred to in the submission.  I did send the DeSantises a written fee agreement that clearly stated that I would handle Gia's case for a flat fee of $50,000.00, with provisions about fee disputes. Much of my work as a criminal defense lawyer was done on a flat fee basis.

I still have the email to them referencing our agreement, to which the fee document was attached. However, because twelve years have passed, I no longer have the paper files from the case. Therefore, I do not have the signed original copy of the agreement which was returned to me. I was initially paid $10,000.00 by check toward that flat fee and subsequent cash amounts totaling an additional $15,000.00 or $20,000.00. I was not paid the full $50,000.00, as the agreement provided. My fee was fair and reasonable.  At the request of my counsel, I reviewed my work in Gia's legal matter and determined that that I spent at least 160 hours on her case.

In addition to not providing the CSB with my fee agreement, the DeSantises withheld other critical information from the CSB, made untrue statements about their relationship with me and dismissed the work I did on Gia's behalf as worthless. The DeSantises were untruthful when

they told the CSB under oath that I "did nothing for [their] family and that "if [they] hired a public defender, [they] are certain a better job for all involved would have been done."   Gia, who had a prior criminal record and was a drug user, was charged with a serious crime involving a scheme, which she masterminded, to steal more than $500,000.00 in public funds from the City of Malden. She enlisted the participation of 12 other individuals in her criminal conspiracy, who were also involved in drugs.  Her indictments carried a serious long term sentence.

I vigorously defended Gia for two years, achieved an outstanding result for her and supported her even after she began her sentence.   After months of negotiations with the prosecutors and hours of discussions with Gia and her parents, Gia agreed to plead guilty. The government initially insisted on a seven-year prison term. However, through my efforts the government eventually reduced its recommendation to 3 years.  On March 3, 2010, after lengthy arguments before Superior Court Judge Elizabeth Fahey, the Court sentenced Gia to 2 years to 2 years plus one day at Framingham's State Correctional Facility for Women and ordered her to make restitution in the amount of $468,000.00.

Finally, a careful analysis of the papers the DeSantises filed with the CSB strongly suggests that they included, as cash payments they made to me, checks made payable to and cashed by family members and the five checks that were provided to the Superior Court at the sentencing hearing as partial restitution. The restitution checks were payable to me and were endorsed to the City of Malden on that day.  Since the CSB matter came to light, I have learned that the City of Malden has filed suit to recover the restitution that was never paid.  Summary judgment has entered and an assessment of damages hearing is pending.

I sincerely hope that the CSB's objection does not stand in the way of the chances of my reinstatement.

Signed under the pains and penalties of perjury, this 17th day of July 2020.

Robert A. George, Sr.

**COMMONWEALTH OF MASSACHUSETTS**

Suffolk S.S.                                              Supreme Judicial Court
                                                         For Suffolk County
                                                         Docket No. BD 2012-50


**IN RE: ROBERT A. GEORGE, SR.**

_____

**CERTIFICATE OF SERVICE**
_____


Pursuant to S.J.C. Rule 4:01 §18 and Section 3.62 of Subchapter F of the Rules of the

Board of Bar Overseers, I hereby certify that I served on Dorothy Anderson, First Assistant Bar

Counsel of the Commonwealth a copy of the Amendment To Reinstatement Petition

Questionnaire Part I filed with the Supreme Judicial Court for Suffolk County, by electronic

mail.

Signed under the pains and penalties of perjury, this 17th day of July, 2020.

*/s/ Thomas F. Maffei*
_____
Thomas F. Maffei

00984655.1

11

COMMONWEALTH OF MASSACHUSETTS

BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

| | |
|---|---|
| In Re Robert A. George. Sr. | In re Application for<br>Reinstatement as an<br>Attorney at Law<br>S.J.C. No. 2012-050 |

## AMENDMENT TO PART I OF REINSTATEMENT PETITION QUESTIONNAIRE

This amendment to Answer 1(D) of the Reinstatement Petition Questionnaire Part I, filed with the Board on May 19, 2020, is prompted by information I recently received.

A year ago, I made public my intention to apply for reinstatement when I filed a motion with the SJC seeking permission to work as a paralegal, to which Bar Counsel assented. The Single Justice allowed the motion on July 23, 2019. On May 19, 2020, I filed my petition for reinstatement. On Saturday, June 27, 2020, I received a copy of an objection to my reinstatement filed by the Client Security Board ("CSB"). That objection was based on a June 18, 2015 award. That objection was the first notice I ever received of a CSB award. It appears that the fee award was based on a finding that I had not returned an unused retainer of $80,300.00, although the award implies that I had committed a defalcation. The award was made to John and Lisa DeSantis, the parents of a former client, Gia DeSantis Cox ("Gia").

Not only did I not receive notice of the filing of the claim to the CSB, but I also did not receive notice of the hearing that resulted in the award or the award itself. The CSB sent letters on three separate occasions to an undeliverable address. Each letter was returned to the CSB by the postal service marked "Insufficient Address." The United States Post Office in East Dennis and South Dennis advised me that the zip code used on the letters is for a Post Office Box Mailing District. As addressed, those letters were never delivered to the street address but were stamped "Insufficient Address" at the Post Office branch upon receipt and immediately returned to the CSB. The receipts are in the CSB's file.

The DeSantises filed their claim with the CSB on September 12, 2012. The CSB's first letter, which was returned to the CSB, was not sent out until May 15, 2015, almost three years after the DeSantises' filing. When the CSB received this claim in 2012, my bar discipline case at the BBO was still pending. I was represented by attorney Thomas J. Butters at the BBO. My criminal case was also was pending; I was represented by Kevin J. Reddington and Robert M. Goldstein in that case. My counsel was not notified of the CSB filing and it appears that no attempt was made to contact me or anyone on my behalf about the filing at the CSB. By the time the CSB sent their first letter to me, I was already at a federal correctional facility in

Pennsylvania. While I was in federal custody, the CSB sent two other letters, one concerning the hearing and the other about the award. Those letters were addressed to the same address that the postal service previously had informed the CSB was insufficient and non-deliverable. The subsequent letters and the return receipts, marked "Insufficient Address," were in the CSB file.

The DeSantises' CSB claim stated that I had done "nothing" for their family and disputed the amount of my fee. I assume that they told the CSB that my fee was too high or was unearned and stolen from them. In the two years that I represented Gia, the DeSantises never contested my fee, which was a flat amount of $50,000.00, and they never asked for an accounting or a refund. Since the date I was released on October 6, 2015, I have not received any communication from the CSB.

The CSB objection states that I have made no payments toward the award and that I owe the Board $80,300.00. However, until two weeks ago, I had not received any notice, claim letter or demand from the CSB regarding payment of $80,300.00. Since I had no notice of the CSB matter and no opportunity to counter their charges, the CSB made an award of $80,300.00, apparently finding that my services over two years were worth $25,000.00. I have no idea how the CSB arrived at the amount of the award. For example, I do not know if the CSB was presented with the docket in the criminal case, which would have disclosed the extensive history of the case and the court events. I also do not know whether the DeSantises gave the CSB my fee agreement, although I assume not, because it was not included in the papers the CSB provided to my counsel.

The DeSantises were not truthful when they swore under oath that there was no fee agreement with me. They wrote the CSB that I had "some papers drawn up explaining that representation without a clear explanation of cost, generalizations and estimates were made." I do not know whether anyone asked the claimants to provide the "papers" referred to in the submission. I did send the DeSantises a written fee agreement that clearly stated that I would handle Gia's case for a flat fee of $50,000.00, with provisions about fee disputes. Much of my work as a criminal defense lawyer was done on a flat fee basis.

I have the email to them referencing the agreement, to which the fee document was attached. However, because twelve years have passed, I no longer have the paper files from the case. Therefore, I do not have the signed original copy of the agreement which was returned to me. I was initially paid $10,000.00 by check toward that flat fee and subsequent cash amounts totaling an additional $15,000.00 or $20,000.00. I was not paid the full $50,000.00 as the agreement provided. My fee was fair and reasonable. At the request of my counsel, I reviewed my work in Gia's legal matter and determined that that I spent at least 160 hours on her case.

In addition to not providing the CSB with my fee agreement, the DeSantises withheld other critical information from the CSB, made untrue statements about their relationship with me and dismissed the work I did on Gia's behalf as worthless. The DeSantises were untruthful when

they told the CSB under oath that I "did nothing for [their] family and that "if [they] hired a public defender, [they] are certain a better job for all involved would have been done."  Gia, who had a prior criminal record and was a drug user, was charged with a serious crime involving a scheme, which she masterminded, to steal more than $500,000.00 in public funds from the City of Malden. She enlisted the participation of 12 other individuals in her criminal conspiracy, who were also involved in drugs.  Her indictments carried a serious long-term sentence.

I vigorously defended Gia for two years, achieved an outstanding result for her and supported her even after she began her sentence.  After months of negotiations with the prosecutors and hours of discussions with Gia and her parents, Gia agreed to plead guilty. The government initially insisted on a seven-year prison term. However, through my efforts the government eventually reduced its recommendation to 3 years.  On March 3, 2010, after lengthy arguments before Superior Court Judge Elizabeth Fahey, the Court sentenced Gia to 2 years to 2 years plus one day at Framingham's State Correctional Facility for Women and ordered her to make restitution in the amount of $468,000.00.

Finally, a careful analysis of the papers the DeSantises filed with the CSB strongly suggests that they included, as cash payments they made to me, checks made payable to and cashed by family members and the five checks that were provided to the Superior Court at the sentencing hearing as partial restitution. The restitution checks were payable to me and were endorsed to the City of Malden on that day.  Since the CSB matter came to light, I have learned that the City of Malden has filed suit to recover the restitution that was never paid.  Summary judgment has entered and an assessment of damages hearing is pending.

I sincerely hope that the CSB's objection does not stand in the way of the chances of my reinstatement.

Signed under the pains and penalties of perjury, this 17th day of July 2020.

Robert A. George, Sr.

**12**

**COMMONWEALTH OF MASSACHUSETTS**
**BOARD OF BAR OVERSEERS**
**OF THE SUPREME JUDICIAL COURT**

_____
)
)
IN RE: ROBERT A. GEORGE, SR.   )      **SJC No. 2012-050**
     **Petitioner**        )
)      **PREHEARING ORDER**
_____)

      A prehearing conference in this matter was held on Monday, July 13, 2020, at 10:00 AM.  Present were First Assistant Bar Counsel Dorothy Anderson; bar counsel's investigator, Matthew Stewart; the petitioner's counsel, Thomas F. Maffei; the Chair of the Hearing Panel, Paula M. Bagger, Esq,; Hearing Panel Members Marianne C. LeBlanc, Esq. and Frank E. Hill, III; and Assistant General Counsel Jeffrey D. Woolf.  The petitioner did not attend.  As a result of the conference, the following orders are entered:

**A.**    **Amended Petition; Exchange and Filing of Exhibits and Lists of Witnesses and Exhibits**

      1.    On or before July 27, 2020, the petitioner may file an amended petitition and accompanying questionnaire responses.

      2.    By the close of business on August 19, 2020, the parties shall exchange preliminary written lists of all their expected witnesses (with names and addresses) and all proposed exhibits that they intend to offer in evidence on the merits, together with copies of all such proposed exhibits.  If a party proposes to introduce the testimony of any expert witness, that party shall also include in its witness list, for each such expert, a written disclosure of the qualifications of the expert, the subject matter upon which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each such opinion.  **Each party shall file a copy of its proposed witness list, with expert disclosures, if any, and its list of proposed exhibits (but not copies of the proposed exhibits themselves) with the board, by email to June D. Risk, at j.risk@massbbo.org, with copies to Assistant General Counsel Jeffrey D. Woolf, at j. woolf@massbbo.org.**

      3.    By the close of business on September 16, 2020, the parties shall file with the board, by email to Ms. Risk, a joint list of agreed-upon

exhibits; a set of agreed-upon exhibits, in a form more fully described below; and any written stipulations that they intend to offer.  Each party shall also file with the board, by email to Ms. Risk, and serve upon the opposing party that party's final witness list and separate list of contested exhibits.  Each list of contested exhibits shall include a concise statement of the other party's objection to each such exhibit with the ground(s) on which the objection is made.  The parties shall furnish copies of all the foregoing, by email, to Assistant General Counsel Woolf and each hearing panel member.

(a)  All exhibits, agreed-upon and contested, shall be in .pdf format and exchanged digitally.

(b)  Agreed-upon exhibits shall be pre-marked by number, sequentially, **with each exhibit having a colored numeric label (integers only) affixed to it.  The file name of each agreed-upon exhibit shall include the prefix "Ex.," the assigned number, and a short, descriptive title.** Agreed-upon exhibits shall be filed with the board, by email to Ms. Risk, with copies, by email to Assistant General Counsel Woolf and all hearing panel members.

(c)  Contested exhibits shall **not** be pre-marked by exhibit number. The file name of each agreed-upon exhibit shall include the Bates number range of the document and a short, descriptive title. Contested exhibits shall not be filed with the board or furnished to the assistant general counsel or the hearing panel members.  Each party shall have electronic copies of each disputed exhibit that that party intends to offer in evidence at the hearing.

(d)  All exhibits, both agreed-upon and contested, shall be Bates-numbered so that each page of each exhibit bears a unique identifying number that can be used to locate that specific page without delay during the hearing.  **Exhibits that are not Bates-numbered may be rejected and returned to the submitting party or parties**.

4.    All documents submitted to the hearing panel or filed with the board shall be redacted so no more than the following portions of personally identifying information is visible:  (1) the last four digits of any social security number, taxpayer identification number, credit or debit card number or other financial account number, driver's license number, state-issued ID card number, or passport number (a dash or X characters or the phrase "ending in" may be used in place of the omitted digits); (2) the first initial of a person's parent's birth name, if the document identifies it as such; (3) if an individual's date of birth must be

included, then only the year should be used; and (4) if a minor child must be mentioned, then only the initials of the child should be used. A pseudonym, identified as such, may also be used. Where there is a reason to submit an unredacted document to the hearing panel or the board, then, prior to filing the document, the party shall file a motion to impound with the board, and if and when such motion is allowed, shall file the document with the board. **Exhibits that are not properly redacted may be rejected and returned to the submitting party or parties**.

B.     **Motions in Limine or Other Prehearing Motions Concerning Conduct of the Hearing**

5.     **Motions.**  By the close of business on September 14, 2020, the parties shall file with the board and serve on the opposing party, with copies sent to each hearing panel member by email, any motions in limine or other prehearing motions concerning the conduct of the hearing, specifying the relief sought and the basis and authority therefor. The petitioner may file a motion and supporting memorandum concerning the Client Security Board's objection to the reinstatement petition. If he chooses to do so, that motion must be filed and served by the close of business on August 17, 2020, with copies sent by email to each hearing panel member.

6.     **Oppositions to Motions.**  Should the petitioner file a motion concerning the Client Security Board's objection to his reinstatement, bar counsel's opposition shall be filed and served, with copies by email to each hearing panel member, by the close of business on August 31, 2020. The parties shall file with the board and serve on the opposing party, with copies sent to each hearing panel member, any opposition to any other prehearing motion within seven days of service of the motion, but in no event later than the close of business on September 21, 2020.

C.     **Subpoena Requests**

7.     All requests for the issuance of hearing subpoenas shall be made, by email to the Board, addressed to Ms. Risk, and emailed copies to each hearing panel member, no later than 2:00 PM on September 14, 2020.

D.     **Hearing**

8.     The hearing in this matter will take place on October 21, 2020, commencing at **10:00 AM and concluding at approximately 4:00 PM,** and shall not be rescheduled except for good cause shown. **It is presently anticipated that the hearing will be conducted**

**remotely.**  A separate order will be issued by the hearing panel concerning the conduct of remote hearings.  If either party (or the parties jointly) wishes to request an in-person or partially in-person hearing, such request shall be made, in writing with an explanation of the reasons therefor, by the close of business on August 28, 2020.  If that request is made and granted, the hearing will be conducted at the office of the Board of Bar Overseers, 99 High Street, 2nd Floor, Boston, MA 02110.

9.    In anticipation of this hearing being conducted remotely, the parties and their counsel must sign and submit a "Remote Hearing Certification" by the close of business on September 16, 2020.

10.    **Please note that the law requires that all witnesses must present or display a form of state or federal photo identification prior to being sworn, whether in person or by remote notary procedure.**

Dated:  July 29,2020

Hearing Panel Chair

- 4 -

**13**

**COMMONWEALTH OF MASSACHUSETTS**
**BOARD OF BAR OVERSEERS**
**OF THE SUPREME JUDICIAL COURT**

| | |
|---|---|
| IN RE: ROBERT A. GEORGE, SR.<br>Petitioner | SJC No. 2012-050 |

**PREHEARING ORDER ON REMOTE PROCEEDINGS**

Pursuant to the Rules of the Board of Bar Overseers (BBO Rules) § 3.25, Supreme Judicial Court's "Supplemental Order Regarding Virtual Proceedings and Administration of Oaths and Affirmations," of July 7, 2020, and the Board's Temporary Emergency Order #1 of July 14, 2020, incorporated by reference herein, the following additional procedures will govern the disciplinary hearing in this matter. This order is intended to supplement the Prehearing Order issued on July 29, 2020 in this case, whose provisions control unless explicitly superseded. As used in this order, the terms "attend," "appear" and "present" shall mean virtual attendance via videoconference as set forth below. Unless otherwise ordered by the chair of the hearing committee or hearing panel, the proceedings will be conducted remotely.

1) The hearing shall be conducted using Microsoft Office Teams under the auspices of the Board of Bar Overseers. At least seven days prior to the first day of the scheduled hearing, the parties are required to provide (by email to the Board's legal administrative assistant, June D. Risk, and to the assistant general counsel assigned to the case) the names, addresses, email addresses, of all witnesses who are expected to testify, and the telephone number where each witness can be reached during their testimony if necessary.

2) Prior to the hearing, all parties, their counsel and their witnesses must download Microsoft Office Teams desktop application and test their ability to use the equipment's microphone, speaker controls and their internet connection. All parties and their counsel must use this downloaded desktop app version for the remote hearing.

3) Prior to the hearing, the Board will contact the parties to schedule a video conference test. This will allow for a sound check and a test of the online conference functions that will be helpful during the hearing.

4) At the beginning of each day of a hearing, everyone attending will be asked to mute themselves. Counsel and witnesses are reminded to make sure they are

unmuted before speaking.  In the interest of clarity and to avoid background noise, the meeting organizer may again mute someone if they appear to be finished speaking.

5) Remote witnesses will be asked to state who else is present in the room with them and to show each person on camera. Remote witnesses are required to have a government issued photo identification card, which must be both sent and shown to the stenographer, to verify their identity for the stenographer.

Requirement of Videoconference Capability:

6) Any witness appearing remotely must have stable, two-way audio and visual real time communication.  No remote witness will be permitted to testify who does not have stable, two-way audio and visual real time communication. In particular, telephonic testimony (as opposed to audio-visual testimony) will not be permitted except by order of the hearing committee chair for good cause shown.

7) Each party is responsible for making sure that its witnesses are able to appear via Microsoft Office Teams. The parties are required to test each witness's remote connection prior to the hearing.  If the witness is unable to appear from their own home with their own technology, the party must inform the witness of a location from which they can participate on the date of the remote proceeding.

Sequestration of Witnesses:

8) In light of the logistical difficulties of admitting and excluding witnesses and the general public, sequestration will only be allowed by order of the chair upon motion and for good cause shown with specificity.  A general request for sequestration will not be granted.

Unauthorized Communications Prohibited:

9) Unauthorized communications, including but not limited to private "chats" or other communications between any counsel and a witness while testifying, ex parte communications between one counsel and one or more hearing officers, or substantive communications with a sequestered witness who has not testified, constitute a violation of Mass. R. Prof. C. 3.5, and 8.4(c), (d) and (h), and are strictly prohibited.  The meeting organizer is authorized to take necessary steps to prevent unauthorized communications.

Publishing Exhibits; Reference to Exhibits:

10) When referring to any exhibit, any party or their counsel shall state the exhibit number and exact Bates page number to which they are referring.  When referring to any document not yet marked as an exhibit, the party or their

2

counsel shall identify the document by title or description, and refer to the exact Bates page number(s).

11)   At the discretion of the hearing committee, any testimony or argument about an exhibit or other document may be paused to have the document published by the "share screen" function of the remote platform.  At the discretion of the hearing committee, for any such document, only the meeting organizer may "share screen" regarding any document.

Impeachment and Rebuttal Exhibits:

12)   While exhibits offered solely for impeachment and/or rebuttal need not be disclosed in advance, the parties are reminded that a late-offered document that is actually part of a party's case in chief may be excluded.  Any party seeking to have a document, not an agreed exhibit, shown to the hearing committee and/or a witness, must give it to the meeting organizer by email or other electronic means so it can be published and, if appropriate, marked as a hearing exhibit.

Conduct of Impounded Proceedings:

13)   No document and no portion of the hearing shall be impounded except upon motion and for good cause shown.  See BBO Rules §§ 3.22(d) and 3.18(b), and ¶ 13(d) of the form prehearing order.

14)   If it becomes necessary to exclude certain persons from a remote bar disciplinary hearing, then the meeting organizer may take whatever means are necessary, including but not limited to leaving the hearing to conduct a separate impounded hearing by invitation only to all necessary participants.

Subpoenas for Witnesses Testifying Remotely:

15)   For any witness testifying remotely, the hearing subpoena shall say, for a place of appearance, to "testify remotely by videoconference."  The witness may choose a location (e.g., home or office) but all witnesses should be instructed to have secure two-way audio-visual communications with minimal background and noise distractions.  It is the obligation of counsel serving the subpoena to make arrangements for presenting the testimony.

General Guidance for Counsel and Witnesses for Remote BBO Hearings:

16)   Attached is a document entitled "General Guidance for Remote Hearings at the BBO" for counsel and their witnesses concerning remote BBO hearings.  You are required to advise your witnesses accordingly.  On or before the date set for the filing of stipulations, agreed exhibits and agreed witnesses, all counsel and all parties shall sign and file with the Board the Remote Proceeding Certification attached hereto.

Further Supplementation and Amendments

17)     The chair of the hearing committee or hearing panel may amend or supplement
        this order as appropriate in advance of or during the hearing.

Dated: July 29, 2020

Hearing Panel Chair

4

# BOARD OF BAR OVERSEERS
*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LEBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS
ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

July 29, 2020
<u>Via email</u>

Dorothy Anderson, Esq.
Office of Bar Counsel
99 High Street, 2nd Floor
Boston, MA  02110

Thomas F. Maffei, Esq.
Sherin & Lodgen
101 Federal Street
Boston, MA  02110

Re:     <u>In the Matter of Robert Albert George Petition for Reinstatement</u>
        BD-2012-050

Dear Attorneys Anderson and Maffei:

Please be advised that the hearing regarding the above matter will be held on Wednesday, October 21, 2020, at 10:00 AM.  The hearing will be held remotely.  A copy of the Board's Temporary Emergency Order #1 Regarding Remote Hearings is attached together with the Hearing Panel's Prehearing Order, the Prehearing Order on Remote Hearings, Remote Proceeding Certificate, and General Guidelines for Remote Hearings at the BBO.

Thank you for your attention to this matter.

Very truly yours,

*June D. Risk*

June D. Risk
Legal Administrative Assistant

cc:  Paula M. Bagger, Esq.
     Mr. Frank E. Hill, III
     Marianne C. LeBlanc, Esq.

14

# BOARD OF BAR OVERSEERS
*of the Supreme Judicial Court*
99 HIGH STREET
BOSTON, MASSACHUSETTS 02110

BOARD OF BAR OVERSEERS
JEFFREY R. MARTIN, CHAIR
MARIANNE C. LEBLANC, VICE CHAIR
PAULA M. BAGGER
ELISABETH O. daSILVA
APRIL C. ENGLISH
FRANK E. HILL, III
MARSHA V. KAZAROSIAN
FRANCIS P. KEOUGH
DAVID B. KRIEGER, M.D.
ELIZABETH RODRIGUEZ-ROSS
ERNEST L. SARASON, JR.
A. CLARISSA WRIGHT

617-728-8700
Fax: 617-482-8000

massbbo.org

GENERAL COUNSEL
JOSEPH S. BERMAN

ASSISTANT GENERAL COUNSEL
PAUL M. REZENDES
JEFFREY D. WOOLF
MERLE R. HASS

LEGAL PROGRAM MANAGER
MICHELLE YU

EXECUTIVE DIRECTOR
GREGORY J. WENGER

August 7, 2020
<u>Via email</u>

Dorothy Anderson, Esq.
Office of Bar Counsel
99 High Street, 2nd Floor
Boston, MA  02110

Thomas F. Maffei, Esq.
Sherin & Lodgen
101 Federal Street
Boston, MA   02110

Re:    <u>In the Matter of Petition for Reinstatement of Robert A. George</u>
        BD-2012-050

Dear Attorneys Anderson & Maffei:

This is to confirm that the hearings in the above matter will be held remotely as follows: Tuesday, October 20, 2020; Wednesday, October 21, 2020; Friday, October 23, 2020; and Monday, October 26, 2020, all at 10:00 AM.

Thank you for your attention to this matter.

Very truly yours,

*June D. Risk*

June D. Risk
Legal Administrative Assistant

/jdr
cc:    Paula M. Bagger, Esq.
        Marianne C. LeBlanc, Esq.
        Mr. Frank E. Hill, III

**15**

COMMONWEALTH OF MASSACHUSETTS

BOARD OF BAR OVERSEERS

OF THE SUPREME JUDICIAL COURT

_____

                                                    )
IN RE: ROBERT A. GEORGE, SR,        )

Petitioner                                        )        BBO File No. 2012-050

                                                    )
_____ )


### PETITIONER'S MOTION TO EXTEND DEADLINE FOR MOTIONS REGARDING OPPOSITION OF CLIENT SECURITY BOARD

The petitioner, Robert A. George, Sr., respectfully requests that the deadline for the filing

of any motions regarding the opposition of the Client Security Board to the petitioner's

reinstatement be extended from Monday, August 17, 2020 to Friday, August 21, 2020 on account

of a personal matter involving counsel for the petitioner.   The short delay will not result in any

disruption to the schedule since the hearing originally scheduled to begin on September 23, 2020

has been moved to Tuesday, October 21, 2020.

Bar Counsel has assented to this motion.

                                        Robert A. George, Sr.
                                        By his attorney,

                                        /s/ Thomas F. Maffei
August 7, 2010                          _____
                                        Thomas F. Maffei (BBO #313220)
                                        Sherin and Lodgen, LLP
                                        101 Federal Street
                                        Boston, MA  02110
                                        Tel:  (617) 646-2220
                                        tfmaffei@sherin.com


00990262.1

Certificate of Service

On this 7th day of August, 2020, I hereby certify that I send a copy of the attached motion, by email, to Dorothy Anderson, Fist Assistant Bar Counsel.

*/s/ Thomas F. Maffei*

**16**

COMMONWEALTH OF MASSACHUSETTS

BOARD OF BAR OVERSEERS

OF THE SUPREME JUDICIAL COURT

_____

IN RE: ROBERT A. GEORGE, SR,      )
                                  )
Petitioner                        )      BBO File No. 2012-050
                                  )
                                  )
_____   )

### PETITIONER'S MOTION TO EXTEND DEADLINE FOR MOTIONS
### REGARDING OPPOSITION OF CLIENT SECURITY BOARD

The petitioner, Robert A. George, Sr., respectfully requests that the deadline for the filing

of any motions regarding the opposition of the Client Security Board to the petitioner's

reinstatement be extended from Monday, August 17, 2020 to Friday, August 21, 2020 on account

of a personal matter involving counsel for the petitioner.   The short delay will not result in any

disruption to the schedule since the hearing originally scheduled to begin on September 23, 2020

has been moved to Tuesday, October 21, 2020.

Bar Counsel has assented to this motion.

                                        Robert A. George, Sr.
                                        By his attorney,

                                        /s/ *Thomas F. Maffei*

August 7, 2010                          _____
                                        Thomas F. Maffei (BBO #313220)
                                        Sherin and Lodgen, LLP
                                        101 Federal Street
                                        Boston, MA  02110
                                        Tel:  (617) 646-2220
                                        tfmaffei@sherin.com

*Allowed. Bar counsel's response to any such motions to be filed by September 4, 2020. /s/ Paula Bagger 8/10/2020*

00990262.1

**17**



Thomas F Maffei
617.646.2220
tfmaffei@sherin.com

August 20, 2020

**VIA ELECTRONIC MAIL AND FIRST CLASS MAIL**

Board Of Bar Overseers
99 High Street #2
Boston, MA  02110

Attn:  June Risk

        Re:    **Robert A. George, Sr.**
               **Docket No. BD 2012-50**

Dear Ms. Risk:

    In connection with the petition for reinstatement pending in the above matter, I enclose the following:

1. Preliminary List of Expected Witnesses;

2. Petitioner's Motion in Limine; and

3. Affidavit of Thomas F. Maffei in Support of Motion in Limine.

    The petitioner reserves the right to amend these preliminary lists.

    Copies of the above were served on Dorothy Anderson, First Assistant Bar Counsel and Jeffrey D. Woolf, Assistant General Counsel to the Board of Bar Overseers.



Board of Bar Overseers
August 20, 2020
Page - 2 -


      Thank you very much for your assistance.


                    Very truly yours,

                    */s/ Thomas F. Maffei*

                    Thomas F. Maffei


TFM:jv
Enclosures
cc:  Dorothy Anderson, Assistant Bar Counsel (w/encs.)
     Jeffrey D. Woolf, Assistant General Counsel (w/encs.)

COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS
OF THE SUPREME JUDICIAL COURT

_____
                                                    )
IN RE: ROBERT A. GEORGE, SR,            )
  Petitioner                              )
                                                    )  BBO File No. 2012-050
_____      )
                                                    )

## PETITIONER'S MOTION IN LIMINE REGARDING OPPOSITION OF THE CLIENT SECURITY BOARD

### (ORAL ARGUMENT REQUESTED)

The petitioner Robert A. George, Sr. ("Mr. George") respectfully requests that the June 18, 2020 Opposition filed with the Board of Bar Overseers ("BBO") by the Client Security Board ("CSB") be excluded from the record in this proceeding and not considered in connection with his petition for reinstatement.  As grounds for this motion, Mr. George states as follows.

### Statement of Facts[1]

Based on his Affidavit of Resignation, Mr. George was disbarred retroactively to June 21, 2012, by an order entered by the Single Justice (Botsford, J.) of the Supreme Judicial Court on March 19, 2015.  Previously, on January 15, 2013, he began serving his federal sentence at the Schuylkill Federal Correctional Camp located at Minersville, Pennsylvania.  Mr. George remained at the Schuylkill Camp until he was released and returned home on October 6, 2015.  During the pendency of his BBO proceedings, Mr. George was represented by attorney Thomas Butters, who maintained an office in Boston,

---

[1] The facts stated herein are taken from the record in this case, including the Petitioner's Reinstatement Questionnaire, Part I, including the Amendment to Part I of the Reinstatement Questionnaire (Affidavit of Thomas F. Maffei ("Maffei Aff."), Exh. 1) and papers provided by the CSB.   For ease of reference, the Maffei Aff., filed simultaneously herewith, contains certain additional facts and authenticates certain records, including papers from the CSB file.

Massachusetts.  Mr. George was also represented by Attorneys Kevin Reddington and

Robert Goldstein in his criminal case.  While Mr. George's bar discipline case was pending,

the parents of a former client, Gia DeSantis Cox ("Gia"), filed a claim with the CSB for

$105,300.00, on September 12, 2012.  Maffei Aff., Exh. 2.  Mr. George was neither given

notice nor was he aware of the DeSantis CSB filing and the proceedings which followed

until a month ago.

### Failed Notice of the CSB Proceeding

In their sworn 2012 claim to the CSB, Lisa and John DeSantis claimed that Mr.

George had done "nothing" for their daughter Gia and apparently claimed that he had not

earned any fee but had instead stolen their money despite representing her for over two

years.[2]  Mr. George's former client did not file the claim; her parents did.

The CSB reportedly made three attempts to notify Mr. George of the CSB claim and

the proceedings that followed.  The first attempt was not made until May 18, 2015, almost

three years after the DeSantises first filed their claim.  Maffei Aff., Exh. 4.  The explanation

for this delay was that the CSB does not notify a lawyer who is the subject of a CSB claim

as long as that lawyer's bar discipline case remains open.  Maffei Aff. ¶2.  The CSB rules do

not preclude notice to the lawyer or, where counsel has appeared at the BBO, to that lawyer,

when a claim is filed.  The rules permit the CSB to place a claim on "inactive status" while a

bar discipline case is pending, but also state that the CSB must "periodically determine from

the Board of Bar Overseers the status of the disciplinary proceedings." Rule 6. D, Rules of

the Client Security Board.  It should be noted that Mr. George's BBO proceeding was open

---

[2] As the Panel knows, under the rules of the CSB, any award by the CSB must be based on theft by a lawyer or
defalcation.   The CSB letter to the BBO opposing Mr. George's reinstatement states that the CSB "found a
defalcation."  Ltr. Linda Bauer to Board of Bar Overseers, dated June 18, 2020, Maffei Aff. Exh. 3. Petitioner's
counsel has been advised that there is no decision or finding on record at the CSB.

on September 12, 2012 when the DeSantises filed their claim because his disbarment order was not entered until March 19, 2015.  Throughout this time period, Mr. George was continuously represented by counsel, none of whom was notified of the CSB filing. Additionally, there is no information that the CSB ever communicated with the BBO to inquire as to Mr. George's whereabouts or to secure a proper address for him.

When the CSB sent its first notice letter on May 18, 2015, Mr. George was already serving his term in Pennsylvania.  That first letter was addressed to Mr. George's home on Cape Cod, rather than to the address appearing in his Affidavit of Compliance (Maffei Aff. Exh. 5) or the registration address on his bar card (Maffei Aff., Exh. 6).  Instead, the notice letter was sent to a street address in Dennis, Massachusetts.  That letter, sent certified mail, return receipt requested, was received at the Post Office in East Dennis and stamped as follows:

**RETURN TO SENDER**
**INSUFFICIENT ADDRESS**
**UNABLE TO FORWARD**

Maffei Aff. Exh. 4.

That letter was immediately returned to the CSB and placed in Mr. George's file. It was returned because the zip code used by the CSB is for a Post Office Box Mailing District which is an area where mail is not delivered to a street address.  Despite the fact that the CSB was notified the first letter was not delivered to the address it had used, no action was ever taken to correct the mistake or ascertain Mr. George's correct address.  Compounding the error, the CSB still sent two subsequent letters to the same incorrect address, the second of which was on June 8, 2015 in order to notify Mr. George of the claim's hearing date (Maffei Aff. Exh. 7).  The third and last letter, dated June 18, 2015, was meant to notify Mr. George that the CSB had, without opposition, awarded $88,300.00 to the DeSantises (Maffei

3

Aff. Exh. 8).  Those two misdirected letters were returned to the CSB by the Post Office and placed into Mr. George's file, where the correspondence remained, unread and undelivered, until a month ago.

Mr. George's intention to seek reinstatement was known at the BBO more than a year ago. His motion seeking permission to work as a paralegal was allowed by the Single Justice on July 23, 2019, with the assent of Bar Counsel.  His petition for reinstatement was filed on May 19, 2020.  Yet Mr. George did not receive notice of the CSB matter until shortly after June 18, 2020, the date on which the CSB filed its opposition in these proceedings. Maffei Aff. Exh. 3. It caught him, and his counsel, entirely by surprise, resulting in the necessity of the Amendment to his Questionnaire (Part I), which was filed on July 17, 2020. Maffei Aff., Exh. 1.

### Argument

### A.     Due Process and Fundamental Fairness Require that the CSB's Opposition Be Excluded.

The CSB's mission is salutary but narrow.  It reimburses clients for money stolen by lawyers, not for fee disputes or claims arising from malpractice.

> The purpose of the CSB is to discharge, as far as practicable and in a reasonable manner, the collective professional responsibility of the members of the Massachusetts bar for actual losses caused by the theft of client funds or property by attorneys, acting either as attorneys or as fiduciaries (except to the extent to which such losses are otherwise reimbursed).

Supreme Judicial Court Rule 4:04, §1 (Emphasis added.).

The CSB's website acknowledges its narrow focus.

> A defalcation occurs when a lawyer, while providing legal services within a lawyer-client relationship, steals, embezzles, or misappropriates money or other property that rightfully and legally belongs to the client. (Emphasis added.)

4

CSB Website

The CSB specifically recognizes that complaints and claims concerning excessive fees are outside the CSB's jurisdiction.

> There is no defalcation where a client disputes the fee charged by the lawyer or where a client alleges the legal services rendered by the lawyer were negligent, incompetent, or inadequate.

Id.

Mr. George had no idea that DeSantises had filed a claim with the CSB in 2012, or at any time, claiming that he had poorly represented their daughter and essentially that he stole their money.  The undelivered notices sent to him in 2015 were inadequate to give him notice of these allegations.  However, there was no known attempt to obtain Mr. George's publicly known whereabouts, either by reviewing the papers on file with the BBO, by contacting his attorneys of record in his bar discipline or criminal case, or by any other readily available means.  Despite that the CSB understood the address it had used on the first notice failed to reach Mr. George, the CSB sent two other letters using the same wrong address.  There was ample time to locate Mr. George, but the CSB took no steps to correct their mistake.

The DeSantises' claim addressed Mr. George's representation of their daughter Gia more than ten years before, beginning in November 2008 and continuing into early 2011.  It is fundamental that notice and an opportunity to be heard are essential to the fair adjudication of claims and are required by due process, including in bar discipline matters. The CSB's rules, which state that its awards are "discretionary" and not judicially reviewable do not, and cannot, override fundamental notions of fairness and due process, especially where its award is being used to prejudice the person whose conduct is now under

00989839.1

review.[3]  "[It] is a violation of due process for a judgment to be binding on a litigant who

was not a party or a privy and therefore has never had an opportunity to be heard."

Massachusetts Property Ins. Underwriting Assoc. v. Norrington, 395 Mass. 751, 754 (1985).

Related to the notions of fairness and due process is another bedrock principle of law,

An adverse finding from a prior case cannot be used against a person in a subsequent

proceeding if the person was not a party to the prior proceeding with an opportunity to be

heard.  In the Matter of Stanley Cohen, 435 Mass. 7 (2001).  Even in those situations where

a party seeks to use a finding in a prior proceeding against the participant in a subsequent

proceeding, i.e., "offensive collateral estoppel," the most important factor in allowing it is

fairness.  "[F]airness is the decisive consideration" in determining whether to apply

offensive collateral estoppel.  Id. At 16. In situations like the one in this case, where there

was no notice or opportunity to be heard, the unfairness is manifest.[4]

Counsel has been unable to find any case involving the preclusive effect of a CSB

award in a reinstatement proceeding where the petitioner was never given notice of the CSB

proceeding.  However, there is a recent bar discipline case involving an attempt by Bar

Counsel to use a bar sanction from another jurisdiction against a Massachusetts lawyer

where the foreign sanction was entered by default because the lawyer failed to appear.

Relying on the rule involving the imposition of reciprocal discipline (SJC Rule 4.01, §16),

the Single Justice (Lenk, J.) ruled that, without notice and an opportunity to be heard, the

foreign sanction could not be used.  There is no logical reason why the same notions of

---

[3] The CSB's funds are "trust funds." Awards made from CSB funds must be preceded by investigation to ascertain, among other things, whether the claim fits within the CSB's jurisdiction, i.e., whether it involves theft rather than malpractice or excessive billing, and whether, on its face, it raises questions regarding its validity.

[4] The CSB's undelivered letter to Mr. George, dated June 18, 2015, said "unless you make full restitution to the Clients' Security Fund, the Clients' Security Board will likely oppose your petition for reinstatement should you choose to file one."  Maffei Aff. Exh. 8.

fairness and due process should not be applied with equal force in this case even though the

prior adjudication is asserted by the CSB, not Bar Counsel, to oppose a lawyer's

reinstatement.

As a result of this manifest unfairness, the CSB award that is the basis for its

Opposition to Mr. George's reinstatement should be excluded from this proceeding and not

taken into consideration in determining Mr. George's eligibility for reinstatement.

### B. On its Face, the DeSantises' Claim Involved, At Most, a Fee Dispute or a Malpractice Claim.

It is obvious from the face of the DeSantises' claim that their complaint was either

that Mr. George charged them too much or that he did, in their words, "nothing" for their

daughter.  Those facts are demonstrably not true and could have been determined either from

the claim documents themselves or from a review of the public record involving Gia's

criminal case.  The CSB's opposition letter states that the CSB's award was based on a

"finding" that Mr. George stole the DeSantises' money.  Maffei Aff. Exh. 3.

There was no such "finding" in the adjudicatory sense.  The CSB award itself

suggests that the Board viewed the DeSantis claim as one involving an excessive fee

because when faced with a claim for $105,300.00, the CSB awarded the DeSantises

$88,300.00, presumably determining on some basis that the value of Mr. George's services

was only $17,000.00.  The DeSantis claim was a fee dispute and nothing more, clearly

outside of the CSB's jurisdiction.  Of course, since Mr. George was not notified and

therefore not present, no one appeared to say so.[5]

 Regarding the amount of the fee, the DeSantises' submission referred to "some

papers drawn up [by Mr. George] explaining that representation without a clear explanation

---

[5] To the extent that the DeSantises' claim is a malpractice claim, that claim would belong to Gia, not her parents, and would, in any event, be beyond the jurisdiction of the CSB.